UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAMIAN TRAPANI,

                              Plaintiff,

                                                    9:14-CV-00556
v.                                                  (TJM/TWD)

BRIAN PULLEN, et al.,

                              Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

DAMIAN TRAPANI
32911
Plaintiff *pro se*
Schenectady County Jail
320 Veeder Avenue
Schenectady, New York 12307

HON. ERIC T. SCHNEIDERMAN                            HELENA LYNCH, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

This *pro se* action commenced under 42 U.S.C. § 1983 and the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000, *et seq.*, has been referred

to this Court for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  The matter

is now before the Court on Defendants' motion to dismiss Plaintiff's Complaint pursuant to

Federal Rule of Civil Procedure 41(b) and Local Rule 10.1, or in the alternative, to dismiss certain claims in Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 23.) Plaintiff has opposed the motion. (Dkt. No. 32.) For the reasons explained herein, the Court recommends that Defendants' Rule 41(b) motion to dismiss be denied as moot, and that Defendants' Rule 12(b)(6) motion to dismiss be granted in part and denied in part.

## I.      PROCEDURAL HISTORY

At all times relevant to this action, Plaintiff was a prisoner in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 1 at 11.[1]) On May 12, 2014, Plaintiff commenced this action naming forty-nine employees of DOCCS as Defendants, alleging violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments, and RLUIPA. *Id.* at 6-11. Plaintiff's claims arise from events that occurred between October 2013 and December 2013 at Coxsackie Correctional Facility ("Coxsackie"), Elmira Correctional Facility ("Elmira"), and Upstate Correctional Facility ("Upstate"). *Id.* at 11-43.

On January 21, 2015, Judge McAvoy granted Plaintiff's application to proceed *in forma pauperis* and issued a Decision and Order severing and transferring the claims against eleven of the Defendants relating to Elmira to the Western District of New York. (Dkt. No. 12.) The following claims allegedly occurring at Coxsackie and Upstate survived the Court's *sua sponte* review pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b): (1) Eighth Amendment excessive force claims against Defendants James G. McKeown ("McKeown"), John

---

[1] Unless otherwise noted, page references to documents identified by docket number are to the original page number, not the page number assigned by the Court's CM/ECF electronic docketing system.

P. Bonafede ("Bonafede"), S. Ranze ("Ranze"), S. Lamare[2] ("LaMare"), John Does ## 16-20, and Daniel F. Martusello, Jr.,[3] ("Martuscello"); (2) Eighth Amendment failure to intervene claim against Defendant D. Dixon ("Dixon"); (3) First Amendment retaliation claim against Defendants Brian Pullen ("Pullen") and Megan McGlynn ("McGlynn"); (4) First Amendment free exercise against claim against Defendants C. King ("King"), S. Syed ("Syed"), and Jane Doe #5; and (5) RLUIPA claim against King, Syed, and Jane Doe #5. (Dkt. No. 12 at 35-37.)

On March 23, 2015, Defendants moved to dismiss Plaintiff's Complaint with prejudice pursuant to Rule 41(b) and Local Rule 10.1 based on Plaintiff's failure to notify the Court of his change of address. (Dkt. No. 23-3 at 2-4.) In the alternative, Defendants moved to dismiss certain claims in Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6). *Id.* at 5-12. Specifically, Defendants move to dismiss (1) all claims stated against Martuscello, Pullen, McGlynn, King, Syed, LaMare, John Does ## 16-20, and Jane Doe # 5; and (2) all claims seeking declaratory and injunctive relief. *Id.* On March 25, 2015, McKeown, Bonafede, Ranze, and Dixon timely answered Plaintiff's Complaint. (Dkt. No. 24.)

On April 14, 2015, Judge McAvoy issued an Order instructing Plaintiff to provide the Clerk with his current address. (Dkt. No. 26.) Plaintiff has since complied with that Order (Dkt. No. 28) and in light of his *pro se* status, this Court granted Plaintiff an extension of time to file a response to Defendants' Rule 12(b)(6) motion. (Dkt. No. 29.) Plaintiff timely opposed the motion. (Dkt. No. 32.) Defendants have filed a reply. (Dkt. No. 34.)

---

[2] This Defendant's name is spelled "Lamare" in the caption. The Court will use Defendants' spelling and refer to this Defendant as "LaMare". (Dkt. No. 23.)

[3] This Defendant's name is spelled "Martusello" in the caption. The Court will use Defendants' spelling and refer to this Defendant as "Martuscello". (Dkt. No. 23.)

## II.     BACKGROUND

The following relevant facts are derived from the face of Plaintiff's Complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On October 29, 2013, Plaintiff arrived at Coxsackie and "made known to staff that he is from the same county where the facility was situated in, and ha[s] family and past associations with staff that worked or still work at the facility." (Dkt. No. 1 at 11-12.) Despite providing DOCCS with this information, Plaintiff was placed in general population housing. *Id*. at 12.

On November 10, 2013, Plaintiff was issued a false misbehavior report for "openly engaging in the solitary act." *Id*. The next day, Plaintiff was threatened by DOCCS staff. *Id*. On November 12, 2013, Plaintiff was placed on keeplock. *Id*. at 13. That same day, McKeown, Bonafede, and Ranze escorted Plaintiff to the primary care unit, where they proceeded to "mercilessly and savagely beat" Plaintiff without provocation. *Id*. at 14, 47. McKeown, Bonafede, and Ranze continued to punch Plaintiff even after Sergeant Dixon, who was "responsible for overseeing the security of the primary care unit," made his presence known. *Id*. at 14-15. After this incident, Plaintiff was examined by a nurse. *Id*. at 15. To prevent possible false criminal charges from being lodged against him, Plaintiff lied and stated that he "reamed" his head against a wall himself. *Id*. Later that evening, Plaintiff was transferred to Elmira. *Id*. at 15-16.

On November 19, 2013, Plaintiff was transferred back to Coxsackie and was placed in the special housing unit ("SHU"). *Id*. at 23. Thereafter, Plaintiff was issued three misbehavior reports. *Id*. Two of the reports related to Plaintiff "openly masturbating" on November 11, 2013. *Id*. at 24. The third report was issued by McKeown to justify the November 12, 2013,

assault. *Id*. On December 2, 2013, Plaintiff pleaded "not guilty" to all charges. *Id*. at 24, 27.

The Superintendent's hearings were adjourned and resumed on December 9, 2013. *Id*. at 27. At

that time, Plaintiff changed his plea of "not guilty" to "guilty" in order to retain his good time

credits. *Id*. at 27-28. Plaintiff was found guilty of the charges issued in all three November

misbehavior reports. *Id*. at 38. Plaintiff appealed the decisions, which were reversed by Albert

Prack, Director of Special Housing/Disciplinary Program of DOCCS. *Id*.

On December 2, 2013, Plaintiff was verbally "accosted" by King at his SHU cell

window. *Id*. at 25. On December 3, 2013, McGlynn notarized an "Affidavit of Service" for

Plaintiff. *Id*. at 26. Plaintiff claims that "attached" to the Affidavit of Service were "several

handwritten Inmate Grievance Complaints" that Plaintiff "intended to send" to Coxsackie's

Inmate Grievance Resolution Committee, one of which "could have indirectly implicated"

McGlynn as the Offender Rehabilitation Coordinator assigned to the SHU. *Id*. Later that

evening, Plaintiff mailed the notarized Affidavit of Service and grievances.[4] *Id*.

Three days later, on December 6, 2013, Pullen approached Plaintiff's cell "unannounced

and without notice" to deliver documents that Plaintiff had requested. *Id*. Thereafter, Pullen

"wrote [Plaintiff] up" for "lewdly exposing himself." *Id*. at 26-27. McGlynn, who was with

Pullen when the alleged misconduct occurred, signed as a witness to a November 6, 2013,

misbehavior report even though she "did not witness the incident per se." *Id*. at 27. At the

Superintendent's hearing involving this misbehavior report, Plaintiff was permitted to view the

video surveillance of the "so called incident" and Pullen and McGlynn were called as witnesses.

*Id*. at 33. Even though there was "absolutely no evidence adduced" during this hearing, Plaintiff

---

[4] Plaintiff avers that on December 3, 2013, he used the prisoner grievance system available at Coxsackie to grieve
the issues that occurred between November 10, 2013, and November 19, 2013. (Dkt. No. 1 at 44.) At every level
these grievances were denied, either directly or through lack of timely response or no response. *Id*.

was found guilty of the charges. *Id*. at 33. The decision was affirmed on January 2, 2014, by D. Venettozzi, Acting Director of Special Housing/Inmate Disciplinary Program of DOCCS. *Id*. at 8, 38.

While at Coxsackie, Plaintiff, "a professed adherent to the Jewish religion" was deprived of Kosher meals from December 6, 2013, until December 20, 2013. *Id*. at 27, 49.

Plaintiff tried using the prisoner grievance system at Coxsackie to resolve the problems that arose subsequent to December 3, 2013, but was held "incommunicado by the corrections staff he was trying to complain of." *Id*. at 44.

On December 20, 2013, Plaintiff was transferred to Upstate. *Id*. at 38-39. Upon his arrival, Plaintiff was "mercilessly beat" by LaMare and John Does ## 16-20. *Id*. at 39-40. Plaintiff was kicked, punched with closed fists, and repeatedly struck in the groin area with a nightstick. *Id*. at 40. John Doe #16 choked Plaintiff and threatened further physical harm, including strangling Plaintiff to death, if he did "any of the acts he was accused of doing at his former facility" while housed at Upstate. *Id*.

Plaintiff claims that within twenty-one days of his arrival at Upstate, he "resubmitted" grievances to Upstate because the grievance procedure was "unavailable" to him at Coxsackie. *Id*. at 44. Plaintiff's grievances were dismissed as untimely, and his appeals for late consideration were denied "even though the grievance procedure at Coxsackie was unavailable to him." *Id*. Plaintiff further argued that the grievances contained "several related incidents," including the December 20, 2013, use of excessive force incident, which "were by themselves timely," and therefore should have been considered on the merits. *Id*. at 44-45. However, Plaintiff also states that he was "unable to make a separate grievance for review, without fear of retaliation, for the excessive use of force incident occurring upon his arrival at Upstate." *Id*. at

45. Finally, Plaintiff claims that he "exhausted all available administrative appeals for each and every disciplinary action taken against him." *Id.*

## III.    LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6).  The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972).  Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570.  While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). "The mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 and n.41, 2008 U.S. Dist. LEXIS 110029, at *26-27 and n.41 (N.D.N.Y. Oct. 22, 2008)[5] (collecting cases); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint"), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss).

---

[5] The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* at 112 (citation omitted).

## IV.    ANALYSIS

Defendants moved to dismiss Plaintiff's Complaint with prejudice pursuant to Rule 41(b) and Local Rule 10.1 based on Plaintiff's failure to notify the Court of his change of address. (Dkt. No. 23-3 at 2-4.) Because Plaintiff has since notified the Clerk of his current address, the Court recommends denying Defendants' Rule 41(b) motion to dismiss as moot.

Defendants moved in the alternative pursuant to Rule 12(b)(6) to dismiss certain claims in Plaintiff's Complaint for failure to state a claim. *Id*. at 5-12. Specifically, Defendants argue that (1) all claims against Pullen, McGlynn, King, Syed, LaMare, John Does ## 16-20, and Jane Doe #5 should be dismissed based on Plaintiff's failure to exhaust his administrative remedies; (2) the Eighth Amendment supervisory claim against Martuscello should be dismissed for failure to state a claim; (3) the First Amendment retaliation claim against Pullen and McGlynn should be dismissed for failure to state a claim; (4) the RLUIPA claim should be dismissed as moot; and (5) Plaintiff's claims for declaratory and injunctive relief should be dismissed as moot. *Id*.

### A.    Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2015). "[T]he PLRA's exhaustion requirement applies to all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York State prisons, DOCCS has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2016).

First, the prison inmate must submit a grievance to the clerk within twenty-one days of the alleged action. *Id*. § 701.5(a)(1). The Inmate Grievance Program Committee ("IGPC") must hold a hearing within sixteen days and issue a written decision within two days of the hearing. *Id*. §§ 701.5(b)(2)(i), (ii). Second, the prison inmate may appeal the IGPC's decision, within seven days of receipt, to the facility superintendent. *Id*. § 701.5(c)(1). Third and finally, the prison inmate may appeal the facility superintendent's decision to the Central Office Review Committee ("CORC") within seven days of receipt. *Id*. §§ 701.5(d)(i), (ii). CORC has thirty days to review the appeal and issue a decision. *Id*. § 701.5(d)(2)(ii). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

Significantly, even if Plaintiff failed to exhaust available administrative remedies before commencing this action, that failure might be excusable. The Second Circuit has held that a three-part inquiry is appropriate where a plaintiff has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).[6]

---

[6] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amado v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Id.* (citation omitted). Second, if administrative remedies were available,

> the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Id.* (citations omitted).

Third, if the remedies were available and defendant did not forfeit and was not estopped from raising the non-exhaustion defense, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted). Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Thus, a prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available remedies in order to state an actionable civil rights claim. *Jones*, 549 U.S. at 211-17. However, this "is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id.* at 215-16. "Simply stated, if a prisoner says nothing or little about

exhaustion in his pro se civil rights complaint, he is likely protected from a [Rule] 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may 'plead himself out of court,' as the saying goes." *McCloud v. Tureglio*, No. 9:07-CV-0650, 2008 WL 1772305, at *11, 2008 U.S. Dist. LEXIS 124388, at *40 (N.D.N.Y. Apr. 15, 2008). This is what has happened here, according to Defendants.

Defendants argue that Plaintiff "conceded" that he failed to exhaust (1) the First Amendment retaliation claim against Pullen and McGlynn; (2) the First Amendment free exercise claim against King, Syed and Jane Doe #5; and (3) the Eighth Amendment excessive force claim against LaMare and John Does ## 16-20, and therefore the claims must be dismissed. (Dkt. No. 23-3 at 5-8.) The Court disagrees.

Typically, "the exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred." *Lewis v. Havernack*, No. 9:12-CV-0031(GLS/DEP), 2013 WL 1294606, at *4, 2013 U.S. Dist. LEXIS 48471, at *12-13 (N.D.N.Y. Mar. 28, 2013); *Laporte v. Fisher*, No. 11-CV-9458 (PKK)(HBP), 2012 WL 5278543, at *5, 2012 U.S. Dist. LEXIS 154203, at *13 (S.D.N.Y. Oct. 24, 2012) ("Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint.") (citing *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).

Here, Defendants argue that Plaintiff conceded that he failed to exhaust his administrative remedies for incidents arising at Coxsackie subsequent to December 3, 2013. (Dkt. No. 23-3 at 7.) Moreover, despite Plaintiff's allegations that he was "held incommunicado by the corrections staff he was trying to complain of," Defendants argue that Plaintiff fails to identify an affirmative

act by an official that prevented him from using Coxsackie's grievance procedure. *Id.* "However, it is Defendants' burden to demonstrate nonexhaustion, not Plaintiff's burden to plead exhaustion with particularity." *Barnes v. County of Monroe*, 85 F. Supp. 3d 696 (W.D.N.Y. 2015); *see also Bailey v. Fortier*, No. 9:09-CV-0742 (GLS/DEP), 2012 WL 6935254, at*6, 2012 U.S. Dist. LEXIS 190646, at *15 (N.D.N.Y. Oct. 4, 2012) (the "ultimate burden of proof with respect to the exhaustion defense, remains, at all times, with the defendant"); *see also Garvin v. Rivera*, No. 13-cv-7054 (RJS), 2015 WL 876464, at *5, 2015 U.S. Dist. LEXIS 24616, at *13 (S.D.N.Y. Feb. 28, 2015) ("[I]t is unrealistic to expect a pro se plaintiff to know that the inclusion of facts reflecting his failure to exhaust administrative remedies triggers an affirmative duty to plead additional facts concerning the relevant *Hemphill* factors that would excuse his failure to exhaust.") Because nonexhaustion is thus not apparent from the face of Plaintiff's Complaint, including whether a *Hemphill* exception applies, dismissal is not appropriate.

With respect to the Eighth Amendment excessive force claim occurring at Upstate, Plaintiff alleges that he was "mercilessly beat" by LaMare and John Does ## 16-20. *Id.* at 39-40. Plaintiff states that he was unable to make a "separate grievance for review, without fear of retaliation, for the excessive use of force incident occurring upon his arrival at Upstate." *Id.* at 45. By isolating this statement, Defendants argue that Plaintiff conceded that he failed to exhaust his administrative remedies, and therefore this claim should be dismissed. (Dkt. No. 23-2 at 6.) However, Plaintiff further alleges that while John Doe #16 was strangling him, John Doe #16 "threatened" Plaintiff with further physical harm, including strangling Plaintiff to death if Plaintiff engaged in lewd conduct or any assaults on staff. (Dkt. No. 1 at 40.) Plaintiff alleges he was repeatedly struck by John Doe #16 and was told that if "he goes along with the program and [does] not make an issue of the incident it will all end." *Id.*

Here, Plaintiff's Eighth Amendment excessive force claim against LaMare and John Does ## 16-20 cannot be dismissed for failure to exhaust administrative remedies. *See Hemphill*, 380 F.3d at 690 (petitioner's allegations of threats may estop defendants from asserting exhaustion defense); *Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004) (exhaustion defense may be estopped where *inter alia*, defendants allegedly beat and threatened petitioner).

In his opposition, Plaintiff attempts to "clarify" the record and declares that he submitted grievances to Coxsackie and Upstate, which were returned to Plaintiff as "untimely" even though mitigating circumstances warranted an exception to the time period. (Dkt. No. 32 at 7-8.[7]) He further claims that he believes "at least one" grievance was "reinstated for response." *Id*. at 8. Finally, Plaintiff alleges that he sustained "severe injuries that left him somewhat incapable of participating in the grievance program." *Id*.

Notwithstanding the inconsistencies between Plaintiff's Complaint and opposition brief, liberally construing Plaintiff's Complaint and affording him the benefit of every reasonable inference, the Court concludes that it would be inappropriate at this stage in the litigation to dismiss Plaintiff's Eighth Amendment excessive force claim for failure to exhaust administrative remedies. *See, e.g.*, *Roland v. Wenz*, No. 10-CV-0089 (GLS/DEP), 2010 WL 2834828, at *4, 2010 U.S. Dist. LEXIS 72009, at *16 (N.D.N.Y. May 24, 2010) (plaintiff's claim that he exhausted administrative remedies should be "fully probed" before his complaint can be dismissed) (citing *Gayle v. Benware*, No. 08 Civ. 8017, 2009 WL 2223910, at *5-6, 2009 U.S. Dist. LEXIS 131369, at *8-12 (S.D.N.Y. Jul. 27, 2009) (denying motion to dismiss where plaintiff conceded in his complaint that he had not filed a grievance but in response to

---

[7] Page references to Plaintiff's opposition brief (Dkt. No. 32) are to the automatic pages assigned by the Court's CM/ECF electronic system.

defendant's motion alleged for the first time that he had attempted to file a grievance, but staff prevented him from doing so)).

Accordingly, the Court recommends denying Defendants' Rule 12(b)(6) motion to dismiss (1) the First Amendment retaliation claim against Pullen and McGlynn; (2) the First Amendment free exercise claim against King, Syed and Jane Doe #5; and (3) the Eighth Amendment excessive force claim against LaMare and John Does ## 16-20 based upon Plaintiff's failure to exhaust his administrative remedies under the PLRA. The Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion for summary judgment.

B.    Eighth Amendment Excessive Force Claim Against Defendant Martuscello

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 67 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22-23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim")

(quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).  Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."  *Colon*, 58 F.3d at 873.[8]

On November 12, 2013, McKeown, Bonafede, and Ranze "mercilessly and savagely beat" Plaintiff without provocation.  (Dkt. No. 1 at 14, 46-47.)  Plaintiff brings a supervisory liability claim against, Martuscello, the Superintendent of Coxsackie.  *Id*. at 7, 46-47.  Plaintiff alleges that Martuscello "was deliberately indifferent" to Plaintiff's safety by failing to respond to concerns that Plaintiff expressed about his safety prior to the date he was subjected to the excessive force.  *Id*. at 46-47.  Plaintiff alleges that on October, 29, 2013, he "made known to staff that he is from the same county where the facility was located in, and ha[s] family and past associations with staff that worked or still worked at the facility.  *Id*. at 11-12.  Despite providing staff with this information, Plaintiff was placed in general population.  *Id*.  Plaintiff alleges that Martuscello allowed staff under his control to repeatedly abuse him "even after receiving a letter" that informed Martuscello that Plaintiff "possibly" knew several of the staff members, his

---

[8]  The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability.  *See Grullon*, 720 F.3d at 139.

family worked at Coxsackie and that his Inmate I.D. card was confiscated.  *Id.* at 46-47.  Finally, Plaintiff argues that by "acknowledging receipt of Inmate Grievance Complaints and responding thereto," Martuscello showed "deliberate indifference by not protecting him against these abuses."  *Id.* at 47.

Plaintiff's arguments do not establish Martuscello's personal involvement under any of the *Colon* categories.  A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference . . . by failing to act on information indicating that the violation was occurring."  *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000); *see also Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.").

Moreover, Plaintiff's allegation the he submitted grievance complaints to Martuscello after the alleged incident of excessive force does not support an inference that Martuscello was personally involved in that incident.  *Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011); *see also Harnett v. Barr*, 538 F. Supp. 2d 511, 524-25 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation.").

Furthermore, conclusory claims that a supervisory official has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon*.  *See Bridgewater*, 832 F. Supp. 2d at 348; *White v. Fischer*, No. 9:09–CV–240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb. 18, 2010) ("Vague and

conclusory allegations that a supervisor failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) (vague and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (dismissal of a § 1983 claim is proper where plaintiff does no more than allege defendant was in charge of the prison).

The only factual allegations showing direct participation by Martuscello is that after receiving Plaintiff's letter, Martuscello "knew or should have known the potential threat of having Plaintiff at Coxsackie." (Dkt. No. 32 at 9.) Plaintiff avers that Martuscello "spoke" with Plaintiff about his family on at least two occasions. *Id.* However, it is well-settled that a prisoner has no constitutional right to serve his sentence in any particular institution or to be transferred from one facility to another. *See Olim v. Wakinekona*, 461 U.S. 238, 249-50 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Prins v. Coughlin*, 76 F.3d 504, 507 (2d Cir. 1997); *see also Taylor v. Levesque*, 246 Fed. App'x 772, 774 (2d Cir. 2007) (a prisoner has no constitutional rights to a security classification of his choosing). The Supreme Court recognized in *Turner v. Safley*, that the placement and transfer of inmates are examples of "inordinately difficult" undertakings as to which the courts "accord deference to the appropriate prison authorities." 482 U.S. 78, 84-85 (1987). Therefore, "prison officials have broad discretion to transfer prisoners." *Meriwether v. Coughlin*, 879 F.2d 1037, 1045 (2d Cir. 1989). Because Plaintiff has no constitutional right to be transferred to a particular correctional facility or security classification of his choosing, Martuscello cannot be held liable to Plaintiff for violation of § 1983 under any of the *Colon* factors. *See Colon*, 58 F.3d at 873.

Given the conclusory nature of Plaintiff's Eighth Amendment supervisory liability claim against Martuscello, the Court recommends dismissal for failure to state a claim, with leave to amend granted in deference to Plaintiff's *pro se* status.

C.      <u>First Amendment Retaliation Claim Against Defendants Pullen and McGlynn</u>

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *Id*. at 381-83. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a plausible First Amendment retaliation claim, an inmate must advance non-conclusory allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz*, 534 U.S. at 508); *see Pidlypchak*, 389 F.3d at 380. "An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983. *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002).

For a retaliation claim to survive a motion to dismiss, it must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Friedl v. City of New York*, 210 F.3d 79, 86 (2d. Cir. 2000) (citation and quotation marks omitted). An "unsupported,

speculative, and conclusory" allegation of retaliatory conduct may be dismissed on the pleadings. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citations and quotation marks omitted).

An inmate bears the burden of showing that "the protected conduct was a substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). In evaluating whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, "a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 873). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id*. A showing of temporal proximity, without more, has been found insufficient to survive summary judgment. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (citations omitted).

Plaintiff claims that on December 6, 2013, he was issued a false misbehavior report in retaliation for filing grievances on December 3, 2013. (Dkt. No. 1 at 26.) On December 6, 2013, Pullen charged Plaintiff with "lewdly exposing himself." *Id*. at 26-27. McGlynn, "who did not witness the incident per se," signed as a witness to the December 6, 2013, misbehavior report. *Id*. Plaintiff further alleges that on December 3, 2013, McGlynn notarized an "Affidavit of Service" at Plaintiff's SHU cell window. *Id*. Attached to the Affidavit of Service were several handwritten grievances that Plaintiff intended to send to Coxsackie's Inmate Grievance

Committee, "one of which . . . could have indirectly implicated" McGlynn. *Id.* Later that evening, Plaintiff mailed the notarized Affidavit of Service and grievances.[9] *Id.*

Other than the temporal proximity, Plaintiff does not allege any facts plausibly suggesting a causal connection between the protected activity and the adverse conduct. In this case, Pullen authored the December 6, 2013, misbehavior report. *Id.* Plaintiff fails to allege any facts that the grievances mailed on December 3, 2013, implicated Pullen, or that Pullen was even aware of the grievances. "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden*, No. 09 Civ. 3135(RWS), 2011 WL 1453789, at *4, 2011 U.S. Dist. LEXIS 40683, at *12-13, (S.D.N.Y. Apr. 14, 2011) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claims against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another corrections officer)); *see also Roseboro*, 791 F. Supp. 2d at 369 (the plaintiff failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in).

Moreover, there is no indication other than Plaintiff's conclusory allegation to this effect, that Plaintiff's grievances implicated McGlynn or that she was even aware that the grievances were attached to the Affidavit of Service. (Dkt. No. 1 at 26.) In his opposition, Plaintiff pleads no additional facts suggesting a causal connection. Rather, Plaintiff posits the following question: "if the grievance was annexed to the affidavit of service, then shouldn't it been read, or at least cursory so in order to verify its contents for the sake of the notary public being administered[?]" (Dkt. No. 32 at 10.)

---

[9] As discussed above, on December 3, 2013, Plaintiff used Coxsackie's grievance program to grieve the issues that occurred between November 10, 2013, and November 19, 2013. (Dtk. No. 1 at 44.)

With respect to the other factors that may be considered, Plaintiff admits that he was found guilty of the charges set forth in the December 6, 2013, misbehavior report at his disciplinary hearing.  *Id*. at 33.  The guilty finding was affirmed on appeal.  *Id*. at 38.  Plaintiff's Complaint is void of any statements allegedly made by Pullen or McGlynn concerning their motivation.  Finally, Plaintiff pleads no facts suggesting that his prior good disciplinary records would weigh in his favor.

Given the conclusory nature of Plaintiff's First Amendment retaliation claim against Pullen and McGlynn, the Court recommends dismissal for failure to state a claim, with leave to amend granted in deference to Plaintiff's *pro se* status.

D.     RLUIPA Claim Against King, Syed, and Jane Doe #5

Plaintiff alleges that King, Syed, and Jane Doe #5 deprived Plaintiff of his Kosher meals at Coxsackie for two weeks in violation of his rights under RLUIPA.  (Dkt. No. 1 at 27, 49.) Defendants argue that this claim must be dismissed because money damages are not available under RLUIPA, and that Plaintiff's claims for declaratory and injunctive relief are moot because Plaintiff is no longer housed at Coxsackie.  *Id*. at 14.  Defendants are correct, and Plaintiff concedes as much.  (Dkt. No. 32 at 11.)

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government shows that the burden imposed "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest.  42 U.S.C. § 2000cc-1(a).  RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities.  *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014); *see also Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam) (citing *Sossamon* v. Texas, 563 U.S. 277, 280

(2011)).  Plaintiff's RLUIPA claim for injunctive and declaratory relief is subject to dismissal because Plaintiff is no longer housed at Coxsackie, where the alleged violations occurred.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility).  Therefore, the Court recommends dismissing Plaintiff's RLUIPA claim against King, Syed, and Jane Doe #5 without leave to amend.

E.      Declaratory and Injunctive Relief

As discussed above, all of Plaintiff's surviving claims in this action arose of out occurrences while he was housed at Coxsackie and Upstate.  (Dkt. No. 1.)  "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."  *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (quoting *Salahuddin*, 467 F.3d at 272); *see also Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996).  After filing his Complaint, Plaintiff notified the Court that he was transferred from Upstate to Clinton Correctional Facility.  (Dkt. No. 8.)  Plaintiff was released from DOCCS custody on February 10, 2015.  (Dkt. No. 23-3 at 3.)  Plaintiff is currently confined at the Schenectady County Jail.  (Dkt. No. 36.)  Because Plaintiff is no longer housed at Coxsackie or Upstate, Plaintiff's claims for injunctive and declaratory relief are moot.  Therefore, the Court recommends dismissing Plaintiff's claim for injunctive and declaratory relief without leave to amend.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' Rule 41(b) motion (Dkt. No. 23) to dismiss Plaintiff's Complaint (Dkt. No. 1) be **DENIED** as moot; and it is further

**RECOMMENDED** that Defendants Rule 12(b)(6) motion (Dkt. No. 23) to dismiss certain claims in Plaintiff's Complaint (Dkt. No. 1) be **GRANTED** in part and **DENIED** in part; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion be **DENIED** as to the following claims: (1) Eighth Amendment excessive force claim against Defendant LaMare and Defendants John Does ## 16-20; and (2) First Amendment free exercise claim against Defendant King, Defendant Syed, and Defendant Jane Doe #5; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion be **GRANTED WITH LEAVE TO AMEND** as to the following claims: (1) Eighth Amendment excessive force claim against Defendant Martuscello; and (2) First Amendment retaliation claim against Defendant Pullen and Defendant McGlynn; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion be **GRANTED WITHOUT LEAVE TO AMEND** as to the following claims: (1) RLUIPA claim against Defendant King, Defendant Syed, and Defendant Jane Doe #5; and (2) all claims seeking declaratory and injunctive relief; and it is further

**RECOMMENDED** that the case be **DISMISSED** against Defendant Martuscello, Defendant Pullen, and Defendant McGlynn; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: February 17, 2016
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2012 WL 6935254
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Everton BAILEY, Plaintiff,

v.

M. FORTIER, Defendant.

Civ. Action No. 9:09–CV–0742 (GLS/DEP).

|

Oct. 4, 2012.

**Attorneys and Law Firms**

Hancock Estabrook LLP, Michael J. Sciotti, Esq., Robert Thorpe, Esq., of Counsel, Syracuse, NY, for Plaintiff.

Hon. Richard S. Hartunian, United States Attorney, Charles E. Roberts, Esq., Assistant U.S. Attorney, of counsel, Syracuse, NY, for Defendant.

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** Plaintiff Everton Bailey, a federal prison inmate, has commenced this *Bivens* [1] action against defendant Michelle Fortier, a corrections officer stationed at the prison facility in which Bailey was confined at the relevant times, alleging deprivation of his civil rights. Bailey's claims are based upon Fortier's alleged failure to protect him from an assault by a cellmate, despite having registered prior complaints expressing fear for his safety.

Currently at the forefront of the action is the threshold question of whether Bailey, who admits that he did not file a grievance following the procedures in place at Bureau of Prisons ("BOP") facilities, should be excused from the requirement of exhausting administrative remedies before commencing suit due to the alleged refusal of prison officials to provide him with the forms necessary to file a grievance. Because I find, based upon an evidentiary hearing conducted, that Bailey was not prevented by the actions of prison officials from filing a grievance regarding his claim against Fortier, and that he has offered no special circumstances providing a basis to excuse his failure to exhaust administrative

remedies, I recommend that his complaint be dismissed on this procedural basis, without addressing its merits.

### I. *BACKGROUND*

Bailey is a federal prison inmate currently being held in the custody of the BOP as a result of a 2007 criminal conviction entered in the United States District Court for the Eastern District of Pennsylvania. *See generally* Complaint (Dkt. No. 1);*see also* VanWeelden Decl. (Dkt. No. 10–4) ¶ 5; June 20, 2012 Hearing Transcript (Dkt. No. 44) at p. 84. [2] While he is presently housed in another BOP facility, at times relevant to this litigation Bailey was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York.*Id.*

On the morning of February 23, 2009, while housed in a six-person cell in the Mohawk Housing Unit at FCI Ray Brook, Bailey was confronted and physically assaulted by one of his cellmates after being accused of stealing that inmate's prayer oil. Complaint (Dkt. No. 1) ¶¶ 8–9; *see also* VanWeelden Decl. (Dkt. No. 10–4) Exh. D. Bailey reported the incident to Fortier, and requested that he be moved to another cell. Complaint (Dkt. No. 1) ¶ 10. That request was denied, and Bailey was directed by Fortier to return to his cell in light of an impending inmate count. *Id.* at ¶ 11.

Following the inmate count, Bailey again was accosted by the same inmate, who on this occasion threw hot oil from a ceramic mug onto his face. [3] Complaint (Dkt. No. 1) ¶ 13; VanWeelden Decl. (Dkt. No. 10–4) Exh. D; Tr. 100, 145. Bailey suffered second degree burns to his face resulting in his being hospitalized at an outside medical facility for a period of fourteen days. Complaint (Dkt. No. 1) ¶¶ 13–14; Tr. 32, 84–85. Upon his return to FCI Ray Brook, Bailey was placed in a special housing unit ("SHU") cell, where he remained until he was transferred to another BOP facility. Tr. 59–60, 85.

**\*2** The BOP has established an Administrative Remedy Program ("ARP"), comprised of a four-step administrative process through which inmates can seek formal internal review of any complaint regarding any aspect of their imprisonment. Tr. 10; 28 C.F.R. § 542.10 *et seq.; see also Macias v. Zenk,* 495 F.3d 37, 42 (2d Cir.2007). In accordance with the established ARP protocol, an inmate must first attempt informal resolution of his or her complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue. 28 C.F.R. § 542.13(a); *see also Johnson v. Testman,* 380 F.3d 691, 693 (2d Cir.2004). This

informal, initial procedure typically begins with the filing of a "cop-out," which can be submitted either on a BP–8 form available to inmates through several sources, including their assigned counselors, or on paper of any other description. Tr. 10, 22, 27, 66–67, 129, 142.

If the complaint cannot be resolved informally, the inmate may next submit a formal written Administrative Remedy Request ("ARR") to the warden of the facility, utilizing a BP–9 form, within twenty calendar days of the event that generated the inmate's complaint. [4] Tr. 22, 32, 44; 28 C.F.R. § 542.14(a); *see also Johnson,* 380 F.3d at 693. That twenty-day period, however, can be extended in appropriate circumstances. [5] Tr. 33, 54, 144. If that formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director, utilizing a BP–10 form, within twenty calendar days of the date the grievance is denied by the facility warden. Tr. 22; 28 C.F.R. § 542.15(a); *see also Johnson,* 380 F.3d at 693. An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office, utilizing a BP–11 form, within twenty calendar days of the date of the Regional Director's response. Tr. 22; 28 C.F.R. § 542.15(a).

Despite the existence of the ARP, Bailey did not avail himself of that process by filing a grievance regarding the assault or the defendant's alleged failure to protect him from it. Tr. 101–02, 106. Bailey claims that he requested the appropriate forms for commencing the grievance process from several prison workers, including Hawley Snyder, Barbara Darrah, and the warden at FCI Ray Brook. Tr. 86–88, 91, 93–95, 107–09. Employees at FCI Ray Brook, however, uniformly testified that Bailey never requested the appropriate grievance forms from them. *See* Tr. 72, 131, 146–47, 153, 155, 168; *see also* Tr. 49 (Robin Van Weelden); 161 (Jean Marie Diehl); 166 (Michelle Gonyea). I credit the testimony of defendant's witnesses and find that Bailey failed to ask his corrections counselor, or any other BOP employee at FCI Ray Brook, for the necessary forms to commence the grievance process.

The record also reflects that Bailey had abundant opportunity to secure the necessary grievance forms. In February and March of 2009, he was assigned a unit team that included Barbara Darrah, his unit manager; Michelle Gonyea, a case worker; Hawley Snyder, his assigned corrections counselor; and one other corrections counselor. [6] Tr. 46, 86, 140–41. Members of Bailey's unit team, particularly his corrections counselor, were in frequent contact with him. *See, e.g.,* Tr. 126, 129–30, 140–41, 165.

**\*3** Various other BOP officials were also in regular contact with Bailey, making periodic rounds of the FCI Ray Brook SHU. Tr. 35. For example, at the times relevant to this litigation, the facility's warden typically visited the SHU every Wednesday morning, normally accompanied by Robin Van Weelden, who in February 2009 served as a legal assistant, as well as one or two associate wardens, a corrections captain, and unit team members. Tr. 35, 55. When making those rounds the group would proceed from cell to cell, knocking on doors and asking whether an inmate in a particular cell wished to voice any needs. Tr. 57. In addition, Barbara Darrah, as a unit manager, was required to visit inmates in the SHU twice weekly, although she testified that she was in that portion of the facility "pretty much daily." Tr. 126. When visiting the SHU, Darrah generally carried with her a folder of various forms, including BP–8, BP–9, BP–10, BP–11 and cop-out forms, earning her the nickname "the form lady." Tr. 70–71, 120, 124–27, 131. Like the warden and the warden's group, when visiting the SHU facility Darrah normally would proceed from cell-to-cell. Tr. 128. Similarly Michelle Gonyea, as plaintiff's case manager during February and March of 2009, was required to visit the SHU at least once weekly. Tr. 165.

Despite all of those visits and requests as to whether he needed anything, Bailey did not ask any of those individuals for the forms necessary to grieve Fortier's alleged failure to protect him from harm. Tr. 161–62, 166, 49–50, 72, 132, 144, 154–55, 161, 166.

As previously indicated, plaintiff was absent from FCI Ray Brook receiving outside treatment for his injuries during the fourteen-day period immediately following the inmate assault. In accordance with FCI Ray Brook policy requiring visits by prison officials to any inmate hospitalized for more than five days, Darrah, as plaintiff's unit manager, visited him in or about March of 2009, while he was a patient at the Adirondack Medical Center in Saranac Lake, in order to insure that his needs were being met. Tr. 133. When asked on that occasion whether he needed anything, Bailey replied, "No." [7] *Id.*

## II. *PROCEDURAL HISTORY*

Bailey commenced this action on June 29, 2009. Dkt. No. 1. His complaint identifies Corrections Officer M. Fortier as the sole named defendant, and alleges that she violated his

constitutional rights by failing to protect him from foreseeable harm. *Id.*

On January 8, 2010, prior to answering, Fortier moved to dismiss Bailey's complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56. Dkt. No. 10.The sole basis for Fortier's motion was her contention that Bailey's complaint is subject to dismissal based upon his failure to exhaust available administrative remedies before commencing suit, as required under 42 U.S.C. § 1997e(a). That motion resulted in my issuance of a report on August 30, 2010, recommending that the motion be denied, based upon the existence of genuine disputes of material fact to be resolved before addressing whether a proper basis for excusing the governing exhaustion requirement had been demonstrated.Dkt. No. 19.That recommendation was adopted by Chief District Judge Gary L. Sharpe on October 12, 2010. Dkt. No. 21.

**\*4** Following the issuance and acceptance of my report and recommendation, the parties were afforded the opportunity to engage in discovery, and a scheduling order was entered requiring, *inter alia,* that any additional dispositive motions be filed on or before October 3, 2011. *See*Dkt. No. 23.All deadlines under that scheduling order have passed, without the filing of any additional motions, and the case is now trial-ready. In light of the existence of a threshold procedural issue regarding exhaustion, the matter was referred to me for the purpose of conducting an evidentiary hearing, pursuant to *Messa v. Goord,* 652 F.3d 305 (2d Cir.2011), in order to develop the record concerning Bailey's efforts to satisfy his exhaustion requirement. *See* Text Entry 11/02/11. That hearing was conducted on June 20, 2012, *see* Text Entry 6/20/12, and, following the close of the hearing, decision was reserved pending briefing by the parties.[8],[9]

### III. *DISCUSSION*

#### A. *Governing Legal Principles*

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42

U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at \*5–6 (E.D.N.Y. Jan.31, 2007)."[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at \*1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94–95, 126 S.Ct. at 2387–88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."*Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388;*see also Macias,* 495 F.3d at 43 (citing *Woodford* ). Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken. *Macias,* 495 F.3d at 44;*see also Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Strong v. Lapin,* No. 90–CV–3522, 2010 WL 276206, at \*4 (E.D.N.Y. Jan.15, 2010) ("Until the BOP'S Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

**\*5** In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted in the event of a failure to satisfy the PLRA's exhaustion requirement. *Macias,* 495 F.3d at 41;*see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed rubric, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendant should be deemed to have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through the defendant's own actions preventing the plaintiff from exhausting otherwise available remedies, he or she should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the proffered defense survives these first two levels of scrutiny, the court must determine whether the plaintiff has established the existence of special circumstances sufficient "to justify the failure to comply with applicable administrative procedural requirements.[10],[11] *Id.*

**B.** *Burden of Proof*

Before applying the foregoing legal principles, I must first consider who bears the burden of proof, and whether that burden shifts throughout the analysis prescribed under *Hemphill*.

As an affirmative defense, *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), exhaustion is a claim upon which the party asserting it typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *Soria v. Girdich,* No. 9:04–CV–727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 2007) (DiBianco, M.J.) (citing *McCoy v. Goord,* 255 F.Supp.2d 233, 247 (S.D.N.Y.2003)); *McEachin v. Selsky,* No. 9:04–CV–83(FJS/RFT), 2005 WL 2128851, at *4 (N.D.N.Y. Aug.30, 2005) (Scullin, C.J.) (citing *Howard v. Goord,* No. 98–CV–7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part,*225 F. App'x 36 (2d Cir.2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by *Hemphill* and related cases because that line of cases incorporates concepts—such as estoppel, for example—that typically require the party asserting them to bear the ultimate burden of proof. *See e.g., Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel ...."); *In re Heflin,* 464 B.R. 545, 554 (D.Conn.2011) ("The burden of providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Comm'r v. Union Pac. R.R. Co.,* 86 F.2d 637, 640 (2d Cir.1936)).

 *6 Also complicating matters is the fact that several courts have held that once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray v. Palmer,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at *4 and n. 17 (N.D.N.Y. Mar.31, 2010) (Suddaby, J.); *see also Calloway v. Grimshaw,* No. 9:09–CV–1354, 2011 WL 4345299, at *5 and n. 5 (N.D.N.Y. Aug.10, 2011) (Lowe, M.J.) (citing cases); *report and recommendation adopted,*2011 WL 4345296 (N.D.N.Y. Sep.15, 2011) (McAvoy, S.J.); *Cohn v. KeySpan Corp.,* 713 F.Supp.2d 143, 155 (E.D.N.Y.2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense.). Those decisions, while referencing the burden of proof on an affirmative defense, seem to primarily address an inmate's burden of *production,* or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or a finding of special circumstances, rather than speaking to the ultimate burden of *persuasion.*

I have been unable to uncover any cases squarely holding that the defendant bears the ultimate burden of proof with regard to all elements of a *Hemphill* analysis. In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an exhaustion defense. *See Macias,* 495 F.3d at 41 ("In *Hemphill* we "read together" [a series of cases] and formulated a three-part *test*....") (emphasis added). Therefore, I recommend a finding that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant. *See Soria,* 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies.").

**C.** *Application of Governing Legal Principles*

**1.** *Availability of Administrative Remedy*

In this instance, the question of whether the ARP was available to Bailey is at the heart of the exhaustion analysis. The hearing testimony confirmed, and Bailey admitted, that at all times relevant to this litigation, there was an inmate grievance procedure in place at FCI Ray Brook. This, however, does not necessarily mean that it was "available" to the plaintiff.

Bailey contends that the grievance process was not available to him in light of the alleged refusal of prison officials to provide him with the forms necessary to file an ARR and pursue the grievance to culmination. Having considered the competing testimony, however, I conclude that Fortier has established, by a preponderance of the evidence, that the forms necessary to pursue a grievance in accordance with the ARP in place at FCI Ray Brook were available to Bailey through several sources, but were not requested. As such, Fortier has satisfied the first *Hemphill* factor.

**2.** *Presentation of Defense/Estoppel*

**\*7** The focus of the second prong of the *Hemphill* analysis is upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."*Hemphill,* 380 F.3d at 686 (citations omitted). In her answer, Fortier raised exhaustion as a defense in a timely fashion. *See* Answer (Dkt. No. 22) Second Defense ("Plaintiff clearly failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)."). Bailey argues, however, that his failure to follow the prescribed grievance process was a direct result of the refusal of prison officials to cooperate in his efforts to grieve the matter.

" 'Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.' "*Atkins v. Menard,* No. 9:11–CV–9366, 2012 WL 4026840, at \*3 (N.D.N.Y. Sept.12, 2012) (Suddaby, J.) (citing *Murray,* 2010 WL 1235591, at \*5 and n. 26 (collecting cases)). Put differently, a plaintiff must allege that a defendant named in the lawsuit acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense. *Calloway,* 2011 WL 4345299, at \*4 (citing *Bennett v. James,* 737 F.Supp.2d 219, 226 (S.D.N.Y.2010), *aff'd,*441 F. App'x 816 (2d Cir.2011)) (other citations omitted).

The question of whether, in this instance, prison officials should be estopped from asserting failure to exhaust as an affirmative defense as a result of their conduct is inextricably intertwined with the question of availability of the remedy. Assuming, however, that this presents a distinct inquiry, the court must examine whether, through her conduct, Fortier has provided a basis to estop her from asserting an exhaustion defense.

In this instance, Bailey does not allege that Fortier engaged in a campaign to preclude him from filing a grievance regarding her actions. Instead, his focus is upon the alleged refusal of other officials at FCI Ray Brook to provide him with necessary forms and cooperate in his efforts to present his grievance against Fortier. Accordingly, Bailey has failed to present any evidence that would support an estoppel against that defendant from raising the issue of exhaustion. *Atkins,* 2012 WL 4026840, at \* 3. Therefore, I conclude that Fortier has proven, by a preponderance of the evidence, that she did

not, through her own actions, preclude Bailey from taking advantage of the ARP and therefore should not be estopped from asserting the defense.

### 3. *Special Circumstances*
The third, catchall factor that must be considered under the Second Circuit's prescribed exhaustion rubric centers upon whether special circumstances sufficient to justify excusing the plaintiff's failure to exhaust administrative remedies have been demonstrated. *Hemphill,* 380 F.3d at 689;*see also Giano,* 380 F.3d at 676–77; *Hargrove,* 2007 WL 389003, at \*10. Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable.*Giano,* 380 F.3d at 676–77;*see also Hargrove,* 2007 WL 389003, at \*10 (quoting and citing *Giano* ). Special circumstances may also exist when a facility's "[f]ailure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance process unavailable to him."*Murray,* 2010 WL 1235591, at \*6 (quoting *Sandlin v. Poole,* 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendant's are estopped from relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

**\*8** During the evidentiary hearing, Bailey testified to his awareness of the existence of the ARP at FCI Ray Brook. *See, e.g.,* Tr. 102. Bailey's testimony regarding his alleged efforts to secure the forms necessary to pursue the grievance plainly evidences his knowledge of the requirement that he exhaust available administrative remedies, and negates a finding of any reasonable belief on his part that the dispute in issue was not grievable and could not have been presented through the BOP's internal grievance process. Accordingly, again allocating the ultimate burden of proof on the issue of special circumstances to the defendant, I nonetheless conclude that she has demonstrated, by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse plaintiff's failure to exhaust administrative remedies.

### IV. *SUMMARY AND RECOMMENDATION*
The credible testimony and evidence adduced at the recent hearing, held to address the merits of defendant's exhaustion defense, establishes that (1) Bailey failed to avail himself of the BOP grievance process, which was available to

him, before commencing this action; (2) Fortier did not, through her actions, preclude Bailey from filing a grievance regarding the claims set forth in his complaint, or otherwise engage in conduct for which she should be estopped from asserting failure to exhaust as an affirmative defense; and (3) Bailey has offered no special circumstances warranting that he is excused from the PLRA's exhaustion requirement. Accordingly, it is therefore hereby respectfully

RECOMMENDED, that plaintiff's complaint in this action be DISMISSED, based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 6935254

## Footnotes

1    Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2    The June 20, 2012 Hearing Transcript (Dkt. No. 44) will hereinafter be cited as "Tr. _____".

3    According to Bailey, there were no corrections officers present in his cell unit at the time of the assault. Complaint (Dkt. No. 1) ¶ 13.

4    Plaintiff was aware of the twenty-day limitation for filing a BP–9 form to initiate the formal grievance process. Tr. 103.

5    Here, the record demonstrates that in light of his circumstances, including the fourteen-day period of hospitalization following the incident, Bailey almost certainly would have been granted relief from that requirement had such a request been made. See Tr. 43, 144. I note, parenthetically, that the handbook provided to inmates at FCI Ray Brook does not address the possibility of requesting an extension of the twenty-day time limit for filing a BP–9. See Tr. 34, 43.

6    Jean Marie Diehl took over as plaintiff's correction counselor in or about September 2009, shortly before Snyder's retirement from the BOP. Tr. 140, 163.

7    During the hearing Bailey testified that he did not recall Darrah visiting him. See Tr. 114. Once again, I credit the testimony of Darrah over that of the Bailey with respect to this issue.

8    The hearing was conducted by video conference, with Bailey participating and testifying from the Kentucky federal correctional facility in which he is currently being held, pursuant to Rule 43(a) of the Federal Rules of Civil Procedure. See Rivera v. Santirocco, 814 F.2d 859, 862 (2d Cir.1987). At the outset of the hearing I placed upon the record the factors which I considered in declining to exercise my discretion to require that Bailey be produced in person for the evidentiary hearing. See Tr. 3.

9    Attorney Michael J. Sciotti, Esq., of the firm of Hancock & Estabrook, LLP, was appointed in January 2012 to represent the plaintiff in this action, pro bono, at the hearing. The court wishes to express its thanks to Attorney Sciotti and his co-counsel, Robert Thorpe, Esq., for their energetic and diligent efforts on behalf of the plaintiff.

10    In Macias, which, like this action, involved an Eighth Amendment claim under Bivens, as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 et seq., defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon his failure to exhaust available administrative remedies. Macias, 495 F.3d at 40. Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that, while a prisoner may have substantively exhausted remedies by making informal complaints regarding the conditions at issue, the PLRA, as illuminated by Woodford, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368, requires proper procedural exhaustion through the available grievance channels. Id. at 41.The court left open, however, the possibility that, notwithstanding the Supreme Court's decision in Woodford, a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred compliance with the PLRA exhaustion requirements, including under Hemphill. Id. at 44–45.The court in Macias also noted that the plaintiff in that case did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, Woodford would

have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an inmate's failure to follow the procedural rules. *See Amador v. Superintendents of Dep't of Correctional Serv.,* No. 03 CIV. 0650 (KTD/CWG), 2007 WL 4326747, at *6 (S.D.N.Y. Dec.4, 2007). It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry. *Id.* at *7.

11      In practicality, these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap. *See Hargrove,* 2007 WL 389003, at *8 n. 14;*see also Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

85 F.Supp.3d 696
United States District Court,
W.D. New York.

Jessie J. BARNES, 09–B–2707, Plaintiff,

v.

COUNTY OF MONROE, et al., Defendants.

No. 10–CV–6164 EAW.
|
Signed Feb. 10, 2015.

**Synopsis**

**Background:** State inmate brought § 1983 action against county, county officials, and correctional officers, alleging that officers used excessive force against him and that he was subjected to unconstitutional conditions of confinement during his pretrial detention. Defendants moved for judgment on the pleadings.

**Holdings:** The District Court, Elizabeth A. Wolford, J., held that:

[1] fact that judge reached unfavorable decision in another, unrelated matter provided no basis for recusal;

[2] inmate failed to state municipal liability claim;

[3] county executive was not subject to liability;

[4] inmate stated excessive force claim;

[5] inmate stated conspiracy claim;

[6] inmate stated failure-to-protect claim; and

[7] inmate stated conditions-of-confinement claim.

Motion granted in part and denied in part.

West Headnotes (118)

**[1]** **Federal Civil Procedure**
🔑 Judgment on the Pleadings

Motions for judgment on the pleadings are evaluated by the same **standard** applicable to **motions** to **dismiss** for failure to state a claim. Fed.Rules Civ.Proc. 12(b)(6), (c), 28 U.S.C.A.

Cases that cite this headnote

**[2]** **Federal Civil Procedure**
🔑 Time for motion

Motions for judgment on the pleadings must be made after the close of the pleadings, but early enough not to delay trial. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.

Cases that cite this headnote

**[3]** **Federal Civil Procedure**
🔑 Matters considered in general

In considering a **motion** to **dismiss** for failure to state a claim, district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[4]** **Federal Civil Procedure**
🔑 Matters considered in general

On **motion** to **dismiss** for failure to state a claim, complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are "integral" to the complaint. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[5]** **Federal Civil Procedure**
🔑 Pro Se or Lay Pleadings

On **motions** to **dismiss** for failure to state claim, pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[6]** **Federal Civil Procedure**
 Insufficiency in general

**Federal Civil Procedure**
 Matters deemed admitted; acceptance as true of allegations in complaint

Although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to overcome **motion** to **dismiss** for failure to state a claim, even in a pro se case. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[7]** **Federal Civil Procedure**
 Construction of pleadings

In ruling on **motion** to **dismiss** for failure to state claim, district court may not invent factual allegations plaintiff has not pled. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[8]** **Judges**
 Determination of objections

Recusal motions are committed to the sound discretion of the district court. 28 U.S.C.A. § 455(a).

Cases that cite this headnote

**[9]** **Judges**
 Bias and Prejudice

In cases where a judge's impartiality might reasonably be questioned, the issue for consideration on motion for recusal is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality. 28 U.S.C.A. § 455(a).

Cases that cite this headnote

**[10]** **Judges**
 Bias and Prejudice

Fact that district court judge reached unfavorable decision in another, unrelated matter provided no basis for recusal on ground that judge was racially biased, in African-American inmate's § 1983 action alleging that he was subjected to unconstitutional conditions of confinement during his pretrial detention. 28 U.S.C.A. § 455(a); 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[11]** **Counties**
 Acts of officers or agents

County did not assume liability, pursuant to local law, for alleged acts of county sheriff or his deputies in placing racial minorities incarcerated in county jail in unsafe and unsanitary conditions, and thus county was not subject to liability, under respondeat superior theory, for alleged violations of New York law by sheriff and deputies.

Cases that cite this headnote

**[12]** **Civil Rights**
 Governmental Ordinance, Policy, Practice, or Custom

Municipality can be held liable under § 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[13]** **Civil Rights**
 Governmental Ordinance, Policy, Practice, or Custom

To assert a claim of municipal liability under § 1983, a plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[14] Civil Rights**

🔑 Acts of officers and employees in general; vicarious liability and respondeat superior in general

Absent custom, policy, or usage that caused injury, a municipality cannot be held liable under § 1983 on a respondeat superior basis for the tort of its employee. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[15] Civil Rights**

🔑 Governmental Ordinance, Policy, Practice, or Custom

To prevail on a § 1983 claim against a municipal entity, a plaintiff must show: (1) actions taken under color of law, (2) deprivation of a constitutional or statutory right, (3) causation, (4) damages, and (5) that an official policy of the municipality caused the constitutional injury. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[16] Civil Rights**

🔑 Governmental Ordinance, Policy, Practice, or Custom

**Civil Rights**

🔑 Lack of Control, Training, or Supervision; Knowledge and Inaction

Municipal policy that could subject municipality to liability under § 1983 may be pronounced or tacit and reflected in either action or inaction. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[17] Civil Rights**

🔑 Governmental Ordinance, Policy, Practice, or Custom

Official municipal policy that could subject municipality to liability under § 1983 includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices

so persistent and widespread as to practically have the force of law. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[18] Civil Rights**

🔑 Prisons and jails; probation and parole

African-American pretrial detainee's allegations that county had discriminatory policy of housing minorities together at county jail, which led to "rampant" gang activity, failed to state § 1983 municipal liability claim, absent allegations regarding sanctioned county policy stating that minority inmates should be placed in certain housing, or allegations that jail's practices were so persistent and widespread as to practically have force of law. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[19] Civil Rights**

🔑 Complaint in general

Mere assertion that a municipality has an unconstitutional custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference, for purposes of § 1983 municipal liability claim. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[20] Civil Rights**

🔑 Complaint in general

Where a plaintiff can show only misbehaving officers, but has not alleged an official policy that led to the constitutional or statutory violation, his § 1983 municipal liability claim must fail. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[21] Constitutional Law**

🔑 Prisoners

An inmate has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly.

Cases that cite this headnote

**[22]    Civil Rights**

🗝 Prisons and jails;  probation and parole

Pretrial detainee's conclusory allegations that county maintained grievance program at jail that was biased and prejudicial failed to state § 1983 municipal liability claim, absent allegations that county had custom, policy, or usage that led to deprivation of his constitutional rights. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[23]    Sheriffs and Constables**

🗝 Liabilities for acts or omissions of deputies or assistants

Under New York law, a county sheriff cannot be held personally liable on the basis of respondeat superior for the alleged negligent acts of his deputies.

Cases that cite this headnote

**[24]    Civil Rights**

🗝 Persons Liable in General

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[25]    Civil Rights**

🗝 Criminal law enforcement;  prisons

Within the Second Circuit, it is generally accepted that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction, (2) after learning of the violation, failed to remedy the wrong, (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue, (4) was grossly negligent in managing subordinates who caused the unlawful condition or event, or (5) exhibited deliberate indifference

to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[26]    Civil Rights**

🗝 Criminal law enforcement;  prisons

Mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[27]    Civil Rights**

🗝 Criminal law enforcement;  prisons

County sheriff's receipt of African-American pretrial detainee's grievances, by itself, did not amount to personal involvement that would subject sheriff to liability under § 1983 for inmate's alleged constitutional deprivations. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[28]    Civil Rights**

🗝 Vicarious liability and respondeat superior in general;  supervisory liability in general

Absent an underlying constitutional violation, there can be no supervisory liability under § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[29]    Civil Rights**

🗝 Criminal law enforcement;  prisons

Pretrial detainee's allegations that county executive engaged in "gross negligent management" of various county jail officers and supported "unconscionable tyranny" of placing all minorities in special housing unit (SHU) failed to state § 1983 claim against executive, in her individual capacity, absent allegations that constitutional violations occurred for any of the underlying events that executive negligently mismanaged. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[30]  Prisons**
⚷  Actions and litigation

Prison Litigation Reform Act's (PLRA) strict administrative exhaustion requirement applies in actions brought by pretrial detainees. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[31]  Prisons**
⚷  Exhaustion of Other Remedies

Prison Litigation Reform Act's (PLRA) administrative exhaustion provision requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[32]  Prisons**
⚷  Exhaustion of Other Remedies

Prison Litigation Reform Act's (PLRA) administrative exhaustion provision affords prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court, and also creates an administrative record that facilitates judicial review. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[33]  Prisons**
⚷  Pleading

Only circumstance in which it is appropriate to dismiss complaint on nonexhaustion grounds under Prison Litigation Reform Act (PLRA) is when it is apparent from face of complaint that plaintiff failed to exhaust his administrative

remedies. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[34]  Civil Rights**
⚷  Prisons and jails;  probation and parole

Dismissal of inmate's § 1983 complaint for failure to exhaust administrative remedies under Prison Litigation Reform Act (PLRA) was inappropriate at **motion** to **dismiss** stage; although inmate made some allegations that he filed grievances and appeals as to his underlying concerns, he did not discuss his pursuit of administrative remedies as to each and every claim. 42 U.S.C.A. § 1983; Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[35]  Evidence**
⚷  Proceedings in other courts

**Federal Civil Procedure**
⚷  Matters considered

Prior state court actions in which the New York Supreme Court, Appellate Division, dismissed inmate's Article 78 petitions seeking review of his disciplinary hearings were matters of public record, and thus district court, in reviewing motion for judgment on the pleadings, would take judicial notice of state court actions, in inmate's § 1983 action alleging that he was subjected to unconstitutional conditions of confinement. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.; 42 U.S.C.A. § 1983; N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

**[36]  Evidence**
⚷  Proceedings in other courts

**Evidence**
⚷  Official proceedings and acts

A district court may take judicial notice of matters of public record, including decisions in prior state court.

Cases that cite this headnote

**[37]** **Evidence**
&#x1F511; Nature and scope in general

**Federal Civil Procedure**
&#x1F511; Matters considered

In the context of a motion for judgment on the pleadings, district court should generally take judicial notice to determine what statements documents contain, not for the truth of the matters asserted. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.

Cases that cite this headnote

**[38]** **Judgment**
&#x1F511; Matters which were not or could not have been adjudicated

Res judicata did not bar inmate's § 1983 action against county officials, alleging that he was subjected to unconstitutional conditions of confinement during his pretrial detention, based upon inmate's prior Article 78 proceedings in New York seeking review of his placement in special housing unit (SHU) as result of prison disciplinary hearings; § 1983 claims could not have been raised in Article 78 proceedings. 42 U.S.C.A. § 1983; N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

**[39]** **Judgment**
&#x1F511; Nature and requisites of former recovery as bar in general

**Judgment**
&#x1F511; Nature and elements of bar or estoppel by former adjudication

"Claim preclusion," known as "res judicata," requires that a final judgment on the merits of an action be given preclusive effect, barring parties as well as those in privity with them from relitigating in a subsequent action a claim which was or could have been raised in the prior suit.

Cases that cite this headnote

**[40]** **Judgment**
&#x1F511; Identity of Cause of Action or Relief Sought

New York plaintiff is not barred under doctrine of res judicata from seeking damages, in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights suit. N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

**[41]** **Judgment**
&#x1F511; Scope and Extent of Estoppel in General

**Judgment**
&#x1F511; Matters actually litigated and determined

Under New York law, the doctrine of "collateral estoppel" precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.

Cases that cite this headnote

**[42]** **Judgment**
&#x1F511; Scope and Extent of Estoppel in General

Collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[43]** **Judgment**
&#x1F511; Scope and Extent of Estoppel in General

**Judgment**
&#x1F511; Matters actually litigated and determined

**Judgment**
&#x1F511; Essentials of Adjudication

There are two requirements for the application of collateral estoppel to an issue under New York law: (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted

had a full and fair opportunity to litigate the issue in the first proceeding.

Cases that cite this headnote

**[44]** **Judgment**
🔑 Scope and Extent of Estoppel in General

To determine whether first action provided a full and fair opportunity to litigate, as required for application of collateral estoppel to an issue under New York law, requires consideration of: the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation.

Cases that cite this headnote

**[45]** **Judgment**
🔑 Nature of state tribunal's proceedings

**Judgment**
🔑 Issues or Questions Presented

Former pretrial detainee was collaterally estopped from raising in § 1983 action his challenges to certain disciplinary hearings and orders which resulted in his placement in special housing unit (SHU) at county jail, since state court had already examined those challenges in inmate's Article 78 proceedings pursuant to New York law. 42 U.S.C.A. § 1983; N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

**[46]** **Civil Rights**
🔑 Arrest and detention

Pretrial detainee who is subjected to excessive force may bring a claim under § 1983. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[47]** **Constitutional Law**
🔑 Safety and security

Because the Eighth Amendment's protection from cruel and unusual punishment does not apply until after conviction and sentence, the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment. U.S.C.A. Const.Amends. 8, 14.

1 Cases that cite this headnote

**[48]** **Constitutional Law**
🔑 Threats, harassment, and use of force

**Sentencing and Punishment**
🔑 Use of force

Second Circuit applies the same ==standard== to excessive force claims brought under the Fourteenth Amendment as under the Eighth Amendment. U.S.C.A. Const.Amends. 8, 14.

Cases that cite this headnote

**[49]** **Constitutional Law**
🔑 Safety and security

Analysis provided by the Supreme Court in *Hudson v. McMillian*, that requires a sentenced ==prisoner== to satisfy both an objective and subjective prong to establish an Eighth Amendment violation, also applies to excessive force claims brought by a pretrial detainee under the Fourteenth Amendment. U.S.C.A. Const.Amends. 8, 14.

Cases that cite this headnote

**[50]** **Sentencing and Punishment**
🔑 Scope of Prohibition

Objective component of claim of cruel and unusual punishment under Eighth Amendment focuses on harm done, in light of contemporary ==standards== of decency. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[51]** **Sentencing and Punishment**
🔑 Use of force

Eighth Amendment's prohibition against cruel and unusual punishment does not extend to de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[52]    Sentencing and Punishment**
   👉 Use of force

Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a <mark>prisoner's</mark> Eighth Amendment rights. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[53]    Sentencing and Punishment**
   👉 Use of force

Subjective requirement of Eighth Amendment excessive force claim is satisfied if the defendant acted wantonly with a sufficiently culpable state of mind. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[54]    Constitutional Law**
   👉 Safety and security

Where a state official is accused of using excessive physical force against a pretrial detainee, in violation of the detainee's due process rights, the inquiry turns on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[55]    Constitutional Law**
   👉 Safety and security
**Prisons**
   👉 Use of force

Former pretrial detainee's allegation that county correctional officer used excessive force when he responded to fight between detainee and fellow inmates, and jumped on detainee's back, striking

him in face and knocking out tooth, and that officer was not merely using force to maintain or restore discipline, but that entire incident was "premeditated," stated § 1983 excessive force claim against officer under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[56]    Constitutional Law**
   👉 Safety and security
**Prisons**
   👉 Use of force

Former pretrial detainee's allegations that county correctional officers used excessive force when they pushed him face-first into glass window, pushed him to floor, kicked, stomped on, and punched him, used handcuffs to inflict pain, that as result of altercation, inmate urinated and defecated on himself, and experienced dizziness and concussion, and that force used on him was in response to his reaching for legal papers and attempting to steady himself, stated § 1983 excessive force claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[57]    Conspiracy**
   👉 Conspiracy to Interfere with Civil Rights

To state a conspiracy claim in violation of constitutional rights under § 1983, a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[58]    Conspiracy**
   👉 Combination

"Intracorporate conspiracy doctrine" provides that if conspiratorial conduct challenged under § 1983 is essentially a single act by a single corporation acting exclusively through its own

officers and employees, each acting within the scope of his employment, there can be no actionable conspiracy. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[59]** **Conspiracy**
  🔑 **Combination**

Exception to intracorporate conspiracy doctrine applies in § 1983 action when individual employees are pursuing personal interests wholly separate and apart from the entity. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[60]** **Conspiracy**
  🔑 **Pleading**

While exact specifics are not required to state conspiracy claim in violation of constitutional rights under § 1983, pleadings must present facts tending to show agreement and concerted action. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[61]** **Conspiracy**
  🔑 **Pleading**

Plaintiff alleging conspiracy in violation of constitutional rights under § 1983 is required to make effort to provide some details of time and place and alleged effects of the conspiracy, including facts to demonstrate that defendants entered into agreement, express or tacit, to achieve unlawful end. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[62]** **Conspiracy**
  🔑 **Pleading**

Bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action are insufficient to state conspiracy claim in violation of constitutional rights under § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[63]** **Conspiracy**
  🔑 **Pleading**

Former pretrial detainee's allegations that county correctional officer who responded to fight between detainee and other inmates "collaborated" with fellow officers to delay emergency call, allowing detainee to be attacked by inmates, stated conspiracy claim in violation of constitutional rights under § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[64]** **Conspiracy**
  🔑 **Conspiracy to Interfere with Civil Rights**
**Constitutional Law**
  🔑 **Other particular conditions**
**Prisons**
  🔑 **Particular violations, punishments, deprivations, and conditions**

Even if county correctional officers conspired to cover up theft of pretrial detainee's personal property, officers' actions did not violate inmate's due process rights, since detainee had state remedies available to him for alleged deprivation, thus precluding detainee's § 1983 conspiracy claim. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[65]** **Civil Rights**
  🔑 **Nature and elements of civil actions**

In order to bring a valid § 1983 claim, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[66]** **Constitutional Law**
  🔑 **Property and employment**

Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a § 1983 due process claim so

long as adequate state post-deprivation remedies are available. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[67]** **Conspiracy**

👉 Conspiracy to Interfere with Civil Rights

Absent an underlying constitutional injury, a civil rights conspiracy claim under § 1983 cannot survive. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[68]** **Constitutional Law**

👉 Conditions

As opposed to deliberate indifference claims brought by post-conviction **prisoners**, which arise under the Eighth Amendment, claims for deliberate indifference brought by state pretrial detainees arise under the Fourteenth Amendment. U.S.C.A. Const.Amends. 8, 14.

Cases that cite this headnote

**[69]** **Sentencing and Punishment**

👉 Conditions of Confinement

Eighth Amendment requires that prison officials take reasonable measure to guarantee the safety of inmates in their custody. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[70]** **Civil Rights**

👉 Use of force; protection from violence

Prison official's failure to protect **prisoner** from harm may form basis of § 1983 claim. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[71]** **Sentencing and Punishment**

👉 Protection from violence

Prison officials have duty under Eighth Amendment to protect **prisoners** from violence

at hands of other **prisoners**. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[72]** **Sentencing and Punishment**

👉 Protection from violence

To state an Eighth Amendment failure-to-protect claim under § 1983, a plaintiff must establish two conditions: first, plaintiff must demonstrate that he is incarcerated under conditions posing substantial risk of serious harm, and second, plaintiff must demonstrate that defendant prison officials possessed sufficient culpable intent of deliberate indifference. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

**[73]** **Civil Rights**

👉 Police, Investigative, or Law Enforcement Activities

For purposes of liability under § 1983, all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[74]** **Civil Rights**

👉 Use of force; protection from violence

In order to establish § 1983 liability under failure-to-protect theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force, (2) had a realistic opportunity to intervene and prevent the harm from occurring, and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[75]** **Constitutional Law**

👉 Safety and security

**Prisons**

👈 Protection from violence, assault, or abuse

Former pretrial detainee's allegations that county correctional officers were aware of impending attack by fellow inmates and permitted attack to occur, and that officers collaborated to delay emergency response to allow detainee to be attacked by inmates, stated § 1983 failure-to-protect claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[76]** **Constitutional Law**

👈 Safety and security

**Prisons**

👈 Housing assignments; classification and security status

Former pretrial detainee failed to state § 1983 failure-to-protect claim under Due Process Clause arising from correctional officer's placing him in second floor housing, where detainee was involved in fight with two other inmates, absent allegations that officer had any knowledge that placing detainee in second floor housing posed substantial risk of harm to detainee. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[77]** **Constitutional Law**

👈 Safety and security

**Prisons**

👈 Housing assignments; classification and security status

Former pretrial detainee's allegations that county correctional officers placed him in mainframe housing despite his protests, that he was subsequently attacked by three inmates, and that when he informed one officer that he did not want to return to mainframe housing, officer essentially responded that he did not care if detainee was assaulted by other inmates in mainframe housing, stated § 1983 failure-to-protect claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[78]** **Constitutional Law**

👈 Safety and security

**Prisons**

👈 Protection from violence, assault, or abuse

Former pretrial detainee's allegations that county correctional officer not only failed to protect detainee from having urine, feces, and dirty mop water thrown into his cell by fellow inmate, but that officer also let inmate out of his cell and directed him to throw those materials into detainee's cell, stated § 1983 failure-to-protect claim against officer under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[79]** **Constitutional Law**

👈 Safety and security

**Prisons**

👈 Protection from violence, assault, or abuse

Former pretrial detainee's allegations that in retaliation for detainee's prior excessive use of force claim, county correctional officer was "watching and laughing" as fellow officers "dragged" detainee back to his cell, stated § 1983 failure to protect claim against officer under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[80]** **Constitutional Law**

👈 Retaliation

Courts properly approach prisoner First Amendment retaliation claims under § 1983 with skepticism and particular care, because virtually any adverse action taken by a prison official, even those otherwise not rising to the level of a constitutional violation, can be characterized as a constitutionally proscribed retaliatory act. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[81]**  **Constitutional Law**
  👈 Particular claims

In order to survive a **motion** to **dismiss** for failure to state a claim, an inmate asserting § 1983 **First Amendment retaliation** claim must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action. U.S.C.A. Const.Amend. 1; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[82]**  **Constitutional Law**
  👈 **Prisoners**

Filing of formal **prisoner** grievances is protected conduct under the **First Amendment**. U.S.C.A. Const.Amend. 1.

Cases that cite this headnote

**[83]**  **Constitutional Law**
  👈 **Retaliation**

In context of § 1983 **First Amendment retaliation** claim brought by inmate, "adverse action," defined objectively, is **retaliatory** conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

**[84]**  **Constitutional Law**
  👈 **Retaliation**

In the context of **prisoner First Amendment retaliation** suits under § 1983, a **prisoner** need not demonstrate "actual chill"; issue is whether defendants engaged in **retaliatory** conduct that would deter a similarly situated individual of ordinary firmness from exercising his constitutional rights. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[85]**  **Constitutional Law**
  👈 **Retaliation** in general

Objective inquiry in § 1983 **First Amendment retaliation** claims is not static across contexts, but rather must be tailored to the different circumstances in which **retaliation** claims arise. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[86]**  **Constitutional Law**
  👈 **Retaliation**

In context of § 1983 **First Amendment retaliation** claim, **prisoners** may be required to tolerate more than average citizens before **retaliatory** action taken against them is considered adverse. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[87]**  **Constitutional Law**
  👈 Discipline and classification

**Prisoner** has a substantive due process right not to be subjected to false misconduct charges as **retaliation** for his exercise of a constitutional right such as petitioning the government for redress of grievances. U.S.C.A. Const.Amends. 1, 14.

Cases that cite this headnote

**[88]**  **Constitutional Law**
  👈 **Prisoners**

In evaluating whether an inmate has established the necessary causal connection of a § 1983 **First Amendment retaliation** claim based on the filing of grievances, court may infer an improper or **retaliatory** motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action, (2) the inmate's prior good disciplinary record, (3) vindication at a hearing on the matter, and (4) statements by the defendant regarding his motive for disciplining the inmate. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[89]** **Constitutional Law**

⚷ **Retaliation**

An inmate in § 1983 action can establish a causal connection that suggests **retaliation** under **First Amendment** by showing that protected activity was close in time to the adverse action. U.S.C.A. Const.Amend. 1.

Cases that cite this headnote

**[90]** **Civil Rights**

⚷ **Prisons and jails; probation and parole**

Former pretrial detainee's tenuous and conclusory allegation that correctional officer placed him in special housing unit (SHU) in **retaliation** for burglary of family member that may have been committed by detainee failed to state § 1983 **First Amendment retaliation** claim, absent allegation that detainee was engaging in any protected speech or conduct. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[91]** **Constitutional Law**

⚷ **Prisoners**

**Prisons**

⚷ **Particular violations, punishments, deprivations, and conditions**

Former pretrial detainee's allegations that county correctional officer permitted theft of detainee's commissary in **retaliation** for detainee's filing of grievances, and that officer expressed his dislike for detainee because detainee had filed grievances, stated § 1983 **First Amendment retaliation** claim against officer. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[92]** **Civil Rights**

⚷ **Prisons and jails; probation and parole**

Former pretrial detainee's allegations that county correctional officer identified detainee by

pointing at him, and that fellow officer then "humiliated and degraded" detainee for five to six hours before allegedly issuing two false misbehavior reports against detainee, failed to state § 1983 **First Amendment retaliation** claim against officers, absent allegations as to what protected activities detainee engaged in to elicit alleged **retaliatory** conduct, or as to when alleged **retaliation** occurred or reports were issued. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[93]** **Prisons**

⚷ **Wrongful proceedings against prisoners; false misconduct reports**

Prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report; the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is where the false accusation is based on something more, such as **retaliation** against the **prisoner** for exercising a constitutional right.

Cases that cite this headnote

**[94]** **Constitutional Law**

⚷ **Retaliation**

**Constitutional Law**

⚷ **Prisoners**

**Prisons**

⚷ **Particular violations, punishments, deprivations, and conditions**

Former pretrial detainee's allegations that, before being placed in special housing unit (SHU), he was subjected to strip search by county correctional officer, that during course of strip search, detainee felt that he was degraded and humiliated, and he subsequently filed grievance against officer, that later the same day, officer approached detainee's cell and made sexual comments and gestures, and that other officers filed false misbehavior report against detainee in **retaliation** for detainee's grievance stated § 1983 **First Amendment retaliation** claim

against officers. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[95]** **Constitutional Law**
👉 **Particular claims**

Former pretrial detainee's allegations that county correctional officers engaged in **retaliation** by issuing false misbehavior report and placing detainee on shower and exercise deprivation order after another officer saw copy of detainee's legal petition earlier in the day failed to state causation element of § 1983 **First Amendment retaliation** claim, absent allegations that officers who filed report had knowledge of his protected activity. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[96]** **Constitutional Law**
👉 **Imprisonment and Incidents Thereof**

**Constitutional Law**
👉 **Property and employment**

To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[97]** **Constitutional Law**
👉 **Imprisonment and Incidents Thereof**

Merely negligent conduct by prison officials does not give rise to claims under the Fourteenth Amendment. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[98]** **Constitutional Law**
👉 **Discipline and classification**

**Constitutional Law**
👉 **Segregation**

A **prisoner's** liberty interest protected by due process is implicated by prison discipline, such

as special housing unit (SHU) confinement, only if the discipline imposes an atypical and significant hardship on the **prisoner** in relations to the ordinary incidents of prison life. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[99]** **Constitutional Law**
👉 **Segregation**

Factors relevant to determining whether an inmate endured an atypical and significant hardship that would implicate his liberty interest protected by due process include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[100]** **Constitutional Law**
👉 **Segregation**

**Prisons**
👉 **Punitive, Disciplinary, or Administrative Confinement**

Special housing unit (SHU) confinements of 30 to 90 days fall within the "short range" of disciplinary confinement and thus implicate an inmate's liberty interest protected by due process only if the conditions were more severe than the normal SHU conditions. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[101]** **Constitutional Law**
👉 **Other particular conditions**

**Prisons**
👉 **Housing assignments; classification and security status**

Pretrial detainee's assignment to special housing unit (SHU) for 30 consecutive days with no showers or exercise subjected him to abnormal conditions of confinement that implicated his liberty interests protected by due process. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[102] Constitutional Law**
🗝 Discipline and classification

In prison disciplinary context, constitutionally mandated procedural due process requirements include: (1) written notice of the charges to the inmate, (2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns, (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken, and (4) in some circumstances, the right to assistance in preparing a defense. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[103] Constitutional Law**
🗝 Particular claims

Former pretrial detainee's allegations that he was kept in special housing unit (SHU) for six days beyond his date of release from SHU "without adequacy of any due process of law" as result of county correctional officer's filing false charges against him failed to state § 1983 procedural due process claim, absent allegation that detainee was denied fair opportunity to refute charges. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[104] Constitutional Law**
🗝 Particular claims

Former pretrial detainee's allegations that his due process rights were violated when he was required to remain in full mechanical restraints during isolated morning exercise period for five months failed to state § 1983 procedural due process claim, absent allegations as to what facts or circumstances led to that requirement, or how he was prevented from exercising his due process rights in relation to requirement. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[105] Constitutional Law**
🗝 Similarly situated persons; like circumstances

Equal Protection Clause directs state actors to treat similarly situated people alike. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[106] Constitutional Law**
🗝 Intentional or purposeful action requirement

To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[107] Constitutional Law**
🗝 Intentional or purposeful action requirement

**Constitutional Law**
🗝 Similarly situated persons; like circumstances

To prove a violation of the Equal Protection Clause a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[108] Constitutional Law**
🗝 Intentional or purposeful action

Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[109] Constitutional Law**
🗝 Particular claims

African-American former pretrial detainee's allegations that racial minorities were disproportionately placed in special housing unit (SHU) at county jail and subsequently deprived of access to public information failed to state §

1983 equal protection claim, absent allegations that non-minority inmates who committed similar policy violations were not also placed in SHU and subject to same deprivation. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[110]** **Sentencing and Punishment**
    Conditions of Confinement

Under the Eighth Amendment, officials may not create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety; however, because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[111]** **Sentencing and Punishment**
    Conditions of Confinement

**Sentencing and Punishment**
    Deliberate indifference in general

To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[112]** **Constitutional Law**
    Other particular conditions

**Prisons**
    Particular violations, punishments, deprivations, and conditions

Former pretrial detainee's allegations that, after he was released from special housing unit (SHU), county correctional officers placed him in poorly ventilated cell where he was exposed to human excrement and bodily fluids over the course of multiple days, and that he was subjected to extreme conditions in SHU by way of 24-hour lighting by officers, stated § 1983 conditions-of-confinement claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[113]** **Sentencing and Punishment**
    Sanitation

Unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment under the Eighth Amendment. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[114]** **Constitutional Law**
    Other particular conditions

**Prisons**
    Particular violations, punishments, deprivations, and conditions

Pretrial detainee's inability to shower or exercise over course of four days as result of being housed in booking cell on shower and exercise deprivation order did not rise to level of Fourteenth Amendment violation. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[115]** **Sentencing and Punishment**
    Housing

Requiring inmates to live in constant illumination can, under certain circumstances, rise to the level of an Eighth Amendment violation. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[116]** **Civil Rights**
    Prisons

African-American former pretrial detainee's allegations that county correctional officials called him a "piece of shit that likes to file grievances" and "nigger," and stated that they would kill detainee, failed to state § 1983 claim

based on verbal harassment, absent allegations that detainee was ever physically threatened. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[117]  **Prisons**
　　👉 **Threats, intimidation, and harassment; abusive language**

**Sentencing and Punishment**
　　👉 **Other particular conditions**

Prison officials' verbal harassment of inmates itself does not rise to the level of a constitutional violation.

Cases that cite this headnote

[118]  **Federal Civil Procedure**
　　👉 **Particular Cases**

Deciding issue of qualified immunity on county defendants' motion for judgment on the pleadings was premature, in former pretrial detainee's § 1983 action, since complaint plausibly alleged several causes of action. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**Attorneys and Law Firms**

*708 Jessie J. Barnes, Malone, NY, pro se.

Mallorie C. Rulison, Monroe County Department of Law, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

## *INTRODUCTION*

Plaintiff Jessie James Barnes ("Plaintiff"), proceeding *pro se,* is an inmate currently housed at Upstate Correctional Facility. Plaintiff brings the instant action pursuant to 42 U.S.C. § 1983, alleging that Defendants committed various

violations of Plaintiff's state and constitutional rights while he was detained at the Monroe County Jail ("MCJ") during 2008 and 2009.

Presently before the Court is the motion by Defendants County of Monroe, Monroe County Executive Maggie Brooks, Monroe County Sheriff Patrick M. O'Flynn, MCJ Superintendent Ronald Harling, Major E. Krenzer, Major Caceci, Captain Jolly, Captain Thomas, Lieutenant Dimartino, Lieutenant Lipari, Lieutenant Horan, Lieutenant Kaiser, Lieutenant Kloner, Sergeant *709 DeRosa, Sergeant Mooney, Sergeant McGowan, Sergeant Hayes, Corporal Kimball, Corporal Gatti, Corporal Guest, Corporal Knapp, Corporal Cardella, Corporal Amatore, Corporal Kennelly, Corporal Pratt, Corporal Inipoli, Corporal Preston, Corporal T. Peck, Corporal S. Peck, Corporal Shellard, Corporal Carlo, Corporal Tripoli, Corporal Messura, Deputy Kluth, Deputy Scally, Deputy Luther, Deputy Atkins, Deputy Newton, Deputy Willis, Deputy Waud, Deputy James Amico, Deputy Ellen Danehy, Deputy Isiah Raby, Deputy Fitzsimmons, Deputy Palma, Deputy Daly, Deputy Galen, Deputy DiFlores, Deputy Alberti, Jane Doe Nurse, Nurse Mary, Greg Domalski, Bradley Meister, Avis Robinson, E. Holman, Letitia Miller, Michelle Rizzo, and Todd Thibaut ("County Defendants")[1] for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) (Dkt. 119), Defendant Ellie Holman's separate motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) (Dkt. 120),[2] Plaintiff's motion for recusal (Dkt. 142), and Plaintiff's request to convert Defendants' motions for judgment on the pleadings into a motion for summary judgment (Dkt. 133).

For the following reasons, the County Defendants' motion (Dkt. 119) is granted in part and denied in part, Defendant Holman's motion (Dkt. 120) is granted, and Plaintiff's request to convert Defendants' motion for judgment on the pleadings into a motion for summary judgment (Dkt. 133) is denied. In addition, Plaintiff's motion for recusal (Dkt. 142) is denied.

## *PROCEDURAL BACKGROUND*

Plaintiff filed his original complaint in this matter on March 22, 2010, alleging numerous causes of action against approximately 88 Defendants, along with an application to proceed *in forma pauperis.* (Dkt. 1, 2). On April 1, 2010, the Court granted Plaintiff leave to proceed *in forma pauperis.* (Dkt. 3). In that order, the Court also dismissed Defendants

Ontario County and Ontario County Attorney as parties to this action. (*Id.*).

Plaintiff filed a motion to appoint counsel on April 28, 2010 (Dkt. 4), and on May 17, 2010, the Court denied his motion (Dkt. 5).

On July 6, 2010, the County Defendants filed a **motion** to **dismiss**. (Dkt. 6). On July 27, 2010, the Court added Corporal Messura as a Defendant. (Dkt. 10). Plaintiff moved to amend his complaint on August 3, 2010. (Dkt. 12). On October 6, 2010, Defendants Beilein, Harrison–Ross, and Stewart filed a motion for summary judgment. (Dkt. 18). On December 27, 2010, Plaintiff filed another motion to **\*710** amend his complaint. (Dkt. 27). On July 26, 2011, Plaintiff voluntarily dismissed Defendants Beilein, Harrison–Ross, Stewart, and the Citizen's Policy and Complaint Review Council, and the Court dismissed these parties with prejudice by Court order. (Dkt. 60, 61). On January 11, 2012, 2012 WL 92553, the Court issued an order granting Plaintiff's motion to amend his complaint (Dkt. 27), and dismissing as moot Plaintiff's additional motion to amend (Dkt. 12) as well as the County Defendants' **motion** to **dismiss** (Dkt. 6). (Dkt. 62).

On January 25, 2012, Plaintiff filed his second amended complaint. (Dkt. 64). On March 22, 2012, the Court ordered that Plaintiff's second amended complaint be amended to insert the name of Cynthia L. Muller in place of the aforementioned Jane Doe nurse. (Dkt. 78). On April 10, 2012, the County Defendants filed a motion for judgment on the pleadings. (Dkt. 82). On June 6, 2012, the Court ordered that Defendants Greg Domalski, Bradley Meister, Avis Robinson, Deputy Fitzsimmons, James Amico, and Deputy Ellen Danehy be added as Defendants in place of formerly named John Does. (Dkt. 92). Plaintiff filed a motion to amend his complaint on July 26, 2012. (Dkt. 96). On August 1, 2012, Defendants Mary Ann McQueeney and Debbie Scarpulla, two nurses employed by Correctional Medical Care, Inc. ("CMC"), filed a **motion** to **dismiss** the claims against them. (Dkt. 97).

On August 2, 2012, the Court granted Plaintiff's request to file a third amended complaint, making Plaintiff's third amended complaint the operative pleading for this matter. (Dkt. 99).

On August 2, 2012, the Court dismissed Defendants McQueeney, Scarpulla, Bye, Showers, Schultz, Wheatley, Burns, Caviccholi, Harris, Knox, Lopez, Chance, Gallina, and Potocki in accordance with Plaintiff's voluntary dismissal of these Defendants. (Dkt. 100). The outstanding motion for judgment on the pleadings (Dkt. 82) and **motion** to **dismiss** (Dkt. 97) were denied as moot. (Dkt. 99).

On February 4, 2013, the County Defendants filed a motion for judgment on the pleadings (Dkt. 119), and the remaining Defendants, Holman and Muller, filed a **motion** to **dismiss** for failure to state a claim (Dkt. 120).

The County Defendants filed a motion to stay discovery on March 7, 2013. (Dkt. 125). The remaining Defendants filed a declaration in support of this motion to stay discovery on March 13, 2013. (Dkt. 127).

On June 19, 2013, Plaintiff filed his response to Defendants' motions and requested that the County Defendants' motion be converted into a motion for summary judgment and be granted in his favor. (Dkt. 133).

On July 11, 2013, the Court dismissed Defendant Muller in accordance with Plaintiff's voluntary dismissal of this Defendant. (Dkt. 135).

The Court granted Defendants' motion to stay discovery (Dkt. 125) on September 19, 2013, 2013 WL 5298574 (Dkt. 138). On February 13, 2014, the Honorable Charles J. Siragusa, United States District Judge for the Western District of New York, transferred this case to the undersigned. (Dkt. 141).

On January 13, 2015, Plaintiff filed a motion for the recusal of the undersigned. (Dkt. 142).

### *FACTUAL BACKGROUND*

Plaintiff's third amended complaint against the remaining 58 Defendants asserts the following facts. (Dkt. 95).

In or about July 2008, Plaintiff was arrested, charged with burglary, and remanded **\*711** to MCJ pending trial. (*Id.* at ¶ 20).

On August 7, 2008, Plaintiff was fighting with two other inmates, Trustee Eades and Tyrone Members, when Defendant Newton jumped on Plaintiff's back, struck Plaintiff in the mouth, and knocked out one of Plaintiff's front teeth. (*Id.*). Plaintiff alleges that Defendant Newton "premeditated" the attack on Plaintiff, and that Defendants Amico and Danehy "collaborated" with Defendant Newton to delay the

call of a "Code 1," allowing Plaintiff to be attacked by the other inmates. (*Id.* at ¶¶ 30–32). Plaintiff claims that inmate Eades' cousin told Plaintiff on June 12, 2009, that Defendant Newton was aware that inmates Eades and Members were going to "attack" Plaintiff and indicated that he would "take care of the Code # 1 response and finish the plaintiff off himself." (*Id.* at ¶ 32).

As a result of the August 7, 2008 altercation, Plaintiff was placed in the special housing unit ("SHU") by Defendants Luther, Newton, DeRosa, Jolly, Krenzer, Horan, Kaiser, and Dimartino. (*Id.* at ¶ 75). Plaintiff was housed in SHU from August 7, 2008 through August 21, 2008, under full mechanical restraints and under a shower and exercise deprivation order. (*Id.*).

Although it was not specified in the complaint, Plaintiff must have been released at some time after August 21, 2008, because on October 9, 2008, Plaintiff was arrested after a high-speed chase and was again detained at MCJ on charges of burglary and reckless endangerment, awaiting his July 13, 2009 trial. (*Id.* at ¶ 21).

On October 11, 2008, Defendants DeRosa, Horan, and Jolly placed Plaintiff in SHU. (*Id.* at ¶ 22). Plaintiff alleges that Defendant DeRosa placed him in SHU in ==retaliation== for the burglary of a family member that may have been committed by Plaintiff. (*Id.* at ¶ 76). Plaintiff further alleges that his placement in SHU violated his rights to due process. (*Id.* at ¶ 77). On October 16, 2008, Defendant Krenzer sent Plaintiff a memo indicating: "The circumstances of your arrest and institutional history justify actions taken and measures to isolate you." (*Id.* at ¶ 62). On October 20, 2008, Plaintiff sent "an appeal" to Defendant O'Flynn, complaining that Defendants DeRosa and Krenzer were discriminating against him and denying him due process. (*Id.* at ¶ 63). Plaintiff alleges that he sent a copy of his complaint to Defendant Brooks on March 17, 2009. (*Id.* at ¶ 25). Plaintiff further claims that he submitted a notice of temporary restraining order and preliminary injunction to Defendant Brooks on April 20, 2009, concerning Plaintiff's allegations of discrimination and denial of due process. According to Plaintiff, he effectuated service of a notice of claim on Defendant County of Monroe on June 29, 2009, (*Id.* at ¶ 27), and an Article 78 petition on August 5, 2009 (*id.* at ¶ 28).

Plaintiff claims that housing sections 2, 2M, 3, and 3M in MCJ were areas known to have "gang activity," and that Defendants Thomas, Jolly, Dimartino, Horan, Kaiser, Hayes,

Mooney, DeRosa, McGowan, Kimball, Knapp, Cardella, Kenelly, Tripoli, S. Peck, and Carlo discriminated against Plaintiff by placing him in this housing "where gang activity is prevalent and rampant or hostile situations are most likely to occurr[sic] with the Black or Hispanic ethnicity inmates of particular profile and character they deliberately and indifferently assemble in small area with same or similar tendencies and propensities for transgressions or violence...." (*Id.* at ¶ 61). Plaintiff claims that Defendants do not place Caucasian inmates in this housing. (*Id.* at ¶ 71). Plaintiff contends that Defendants O'Flynn, Brooks, and Harling have "acquiesced" in Monroe County's alleged discriminatory "policy, practice, or **\*712** custom" of housing minorities together in MCJ. (*Id.* at ¶¶ 25–26, 48, 57, 61, 72–73, 94–96).

On November 7, 2008, Defendant Krenzer placed Plaintiff in second floor housing. (*Id.* at ¶ 0). On November 18, 2008, Plaintiff was beaten by "two (2) younger minorities," Acvin King and M. Jones. (*Id.* at ¶ 41). On November 19, 2008, Defendant DeRosa placed Plaintiff in SHU and allegedly stated: "They should have jumped you, you stabbed that kid in the face with a pencil the whole pitt[sic] should have kicked your ass." (*Id.* at ¶ 64). Plaintiff claims that Defendants DeRosa, Horan, Kaiser, Jolly, Amatore, Krenzer, Caceci, and Harling discriminated against Plaintiff by putting him in SHU because there is videotape evidence of King "mercifullessly[sic] repeatedly kicking the plaintiff in his face as he lie on the floor." (*Id.* at ¶¶ 65, 77). Plaintiff claims that he was supposed to be released from SHU on December 17, 2008, but was kept in SHU until December 23, 2008, "without adequacy of any due process of law." (*Id.* at ¶ 77). Plaintiff contends that he notified Defendants O'Flynn, Harling, and Krenzer that he was improperly placed in SHU, but that these individuals "failed to remedy the wrong." (*Id.* at ¶ 78).

After his release from SHU on December 23, 2008, Plaintiff claims that he was placed in a cell that was "atrociously unsanitary disgustingly filthy with excrement, urine, feces and spew all over walls, ceiling, floor and bars for (3) three more consecutive days where ventilation system were non-existent and cell smell toxicly[sic] aweful[sic] ..." by Defendants Jolly, Horan, Kaiser, DeRosa, McGowan, Knapp, Kennelly, Cardella, S. Peck, and Tripoli. (*Id.* at ¶ 60).

On December 26, 2008, Plaintiff informed Defendant Tripoli that he did not want to return to the mainframe housing area, and according to Plaintiff, Tripoli responded: "I don't give a fuck how many times you got your ass kicked on main-frame

we have decide[d] that you will only be placed in a cell on the main-frame and no place else, either you go to 3M or I will put you back in SHU." (*Id.* at ¶ 66). On January 19, 2009, Plaintiff was attacked by three other inmates. (*Id.* at ¶ 43). Plaintiff claims that Defendants Waud and Willis "bragged" about Plaintiff getting beaten up on this occasion. (*Id.* at ¶ 44).

On February 26, 2009, Plaintiff claims that he asked Defendant Waud to lock him in his cell with a large bag of commissary items at approximately 8:30 p.m. (*Id.*). Plaintiff then alleges that at approximately 9:00 p.m., Defendant Waud opened all of the cells, and Plaintiff left for a short time to brush his hair. (*Id.* at ¶ 45). When Plaintiff returned, his belongings were in disarray, and a "large amount" of commissary was taken from his cell. (*Id.*). Plaintiff claims that inmates Frye, Spivey, Ali, and Houston stole his property, and that this theft would appear on videotape. (*Id.* at ¶¶ 45, 47).

Plaintiff alleges that Defendant Waud permitted the theft of commissary to occur in ==retaliation== for Plaintiff's filing of grievances, as evidenced by Defendant Waud's statement that he hated Plaintiff because "he is a piece of shit that likes to file grievances on staff." (*Id.* at ¶ 46). Plaintiff alleges that Defendants Waud, T. Peck, Mooney, Dimartino, Robertson, and Fitzsimmons "collaborated reports" to delete any references to the theft of Plaintiff's commissary. (*Id.* at ¶ 47). Plaintiff contends that Defendants Krenzer, Harling, Jolly, Dimartino, Mooney, T. Peck, Waud, Fitzsimmons, and Robinson altered the videotape evidence by deleting from the tape the time period from 8:55 p.m. through 9:30 p.m. (*Id.* at ¶ 101). Plaintiff further claims that Defendants Harling, Krenzer, Thomas, and Jolly encouraged **\*713** the falsification of records relating to the incident. (*Id.* at ¶ 48). According to Plaintiff, Defendant Monroe County continues to withhold the videotape evidence, which Plaintiff claims is in the possession of Defendants Amico, Danehy, Meister, Domalski, Miller, Rizzo, Fitzsimmons, and Robinson. (*Id.* at ¶¶ 100, 102).

Although Plaintiff does not explain what happened after the alleged theft of his commissary was discovered, Plaintiff alleges that he was taken out of the booking area on a stretcher following the incident. (*Id.* at ¶ 49). As Plaintiff was carried out on a stretcher, Plaintiff claims Defendant DeRosa called out: "Hey Jessie I see you got your ass kicked that is good for you they did a pretty good job this time." (*Id.*). When Defendant Raby asked Plaintiff how many inmates jumped him, Defendant Holman allegedly stated: "Oh Jessie Barnes always gets his ass kicked." (*Id.* at ¶ 53).

Plaintiff alleges that Nurse Muller deliberately omitted from her February 26, 2008 medical notes the fact that Plaintiff was vomiting blood, with the intention of downplaying his injuries. (*Id.* at ¶ 103). Plaintiff voluntarily dismissed Ms. Muller as a defendant to this action with prejudice, and Ms. Muller was dismissed from this matter by Court order dated July 12, 2013. (Dkt. 135).

Between February 27, 2009 and March 2, 2009, Plaintiff was housed in a booking cell, and was allegedly kept on a shower and exercise deprivation order by Defendants T. Peck, Mooney, Waud, Dimartino, and Jolly. (Dkt. 95 at ¶ 79).

On an unspecified date, Plaintiff alleges that Defendant Kluth "humiliated and degraded" Plaintiff for "5 or 6 consecutive hours" after Defendant DeRosa pointed at Plaintiff, and subsequently issued two false misbehavior reports against Plaintiff. (*Id.* at ¶ 67).

On March 2, 2009, before being placed in SHU, Plaintiff was subjected to a "degrading and humiliating strip-search" by Defendant Scally. (*Id.* at ¶ 69). Plaintiff claims that he filed a grievance against Defendant Scally on March 3, 2009, and later that day, Defendant Scally approached Plaintiff's cell and "blew-up his cheeks making jestures[sic] and stated: 'Oh Jessie suck my dick.' " (*Id.* at ¶ 92). Plaintiff claims that Defendants Atkins, Scally, Guest, Amatore, and McGowan then filed a false misbehavior report against Plaintiff in ==retaliation== for Plaintiff's grievance against Defendant Scally. (*Id.* at ¶ 93). As a result of this misbehavior report, Defendants Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer placed Plaintiff in SHU on a shower and exercise deprivation order for over 30 consecutive days, causing Plaintiff "extreme outrageous emotional distress, physical suffering and mental anguish." (*Id.* at ¶ 80). Plaintiff claims to have contested this determination but his grievance and subsequent appeal were denied. (*Id.* at ¶ 81).

According to Plaintiff, Defendants Krenzer and Thomas told Plaintiff that the 30–day order "may have been a bit much," and that he would be taken out of SHU on April 13, 2009, if he did not have "any write ups or bad reports." (*Id.* at ¶ 82). Plaintiff claims that Defendant Atkins intentionally "documented degenerate asnine[sic] notes, log entries, segregation reports and e-mails" between April 9, 2009, and April 12, 2009, to prevent Plaintiff's early removal from SHU. (*Id.* at ¶ 83).

Plaintiff alleges that his original petition to state court was notarized on April 15, 2009, by the law librarian, and that when copies of the petition were delivered to Plaintiff's cell on April 16, 2009, Defendant Atkins saw the petition. (*Id.* at ¶ 85). Plaintiff alleges that another false misbehavior **\*714** report was issued against Plaintiff on April 16, 2009, in retaliation for Plaintiff's state court petition. (*Id.* at ¶ 86). As a result of this misbehavior report, Defendants Newton, Horan, Jolly, and Krenzer placed Plaintiff on a shower and exercise deprivation order. (*Id.*). Plaintiff claims to have filed an administrative appeal with Defendant Harling on April 17, 2009, with respect to the new deprivation order and his concerns about the false misbehavior report. (*Id.* at ¶ 87). Defendant Harling responded on April 21, 2009. (*Id.*).

Plaintiff claims that he was required to remain in full mechanical restraints during his isolated morning exercise period from March 2009 until August 31, 2009, and that this requirement constituted cruel and unusual punishment and violated his rights under the due process and equal protection clauses of the New York State and United States Constitutions. (*Id.* at ¶ 88).

On May 2, 2009, Plaintiff claims that Defendant Willis let inmate Clark out of his cell and instructed the inmate to throw "urine, feces, and dirty mop water in the plaintiff's cell," endangering Plaintiff's life, health, and safety. (*Id.* at ¶ 54). Plaintiff further claims that Defendant Willis took Plaintiff's personal towel that held sentimental value and threw the towel into the urine and feces. (*Id.* at ¶ 55). Plaintiff alleges that later that day Defendant Willis stood in front of Plaintiff's cell with inmate Clark and Defendant Gatti when Defendant Gatti, whom Plaintiff had never seen before, called Plaintiff a "nigger" and said that he would kill Plaintiff. (*Id.* at ¶ 56).

On May 4, 2009, Defendants Scally, Amatore, and Atkins allegedly filed a false misbehavior report against Plaintiff, which caused Plaintiff to be placed on a 23–day consecutive "styro-foam tray order," in retaliation for Plaintiff "seeking redress of grievances in judicial and administrative forums." (*Id.* at ¶¶ 58, 90).

On August 12, 2009, Plaintiff alleges that he was participating in his one hour of exercise when Defendant Daly harassed Plaintiff about Plaintiff's upcoming parole hearing. (*Id.* at ¶ 33). Following this encounter, Plaintiff requested to speak with a supervisor, and was placed in a no-contact visitation cell for 45 minutes. (*Id.* at ¶ 34).

Later that day, Defendant Daly entered the visitation room at the end of Plaintiff's 50(h) deposition with the Ontario County Attorney. (*Id.* at ¶ 35). According to Plaintiff, Defendant Shellard also entered the room, and when Plaintiff reached for his legal documents, Defendant Shellard pushed Plaintiff face-first into the glass window. (*Id.*). Defendants Shellard, Daly, and Alberti then allegedly pushed Plaintiff to the floor, kicked, stomped on, and punched Plaintiff, although he was in full restraints. (*Id.* at ¶ 36). Plaintiff claims that Defendants Alberti and Daly used the handcuffs to "inflict pain and suffering on [Plaintiff] causing him to lose the feeling in his hands." (*Id.* at ¶ 37).

Plaintiff alleges he was then taken to the elevator, where Defendant Lipari was standing shaking a canister of mace and watching Plaintiff. (*Id.*). After the elevator arrived at the second floor, Plaintiff claims he was pushed into the hallway. (*Id.* at ¶ 38). Plaintiff claims that he tried to steady himself by grabbing the gate and that Defendant Galen told him not to touch the gate, and that Defendants Alberti and Daly then grabbed Plaintiff and slammed his head. (*Id.* at ¶¶ 38–39). Plaintiff claims that he urinated and defecated on himself, and experienced dizziness and a concussion. (*Id.* at ¶ 39). Plaintiff was then allegedly dragged back to his cell by Defendants Galen, Daly, and Alberti. (*Id.*).

Plaintiff also complains about conditions of confinement at MCJ. Plaintiff claims that Monroe County failed to properly **\*715** train or supervise Defendants Brooks and O'Flynn, resulting in the "gross negligent management" of various officers, and ultimately violations of Plaintiff's constitutional rights. (*Id.* at ¶¶ 48, 57, 61, 89, 97). For example, Plaintiff alleges that the County's failure to properly train or supervise Defendants Brooks and O'Flynn led to their negligent management of Defendants Harling and Krenzer, who permitted Plaintiff to be housed in the mainframe section of housing at MCJ. (*Id.* at ¶ 61).

In that same vein, Plaintiff generally claims that Defendant County of Monroe has maintained a discriminatory classification policy for over fifteen years at MCJ. (*Id.* at ¶ 71). Specifically, Plaintiff alleges that this policy involves placing all minorities in SHU for "minor or miscellaneous rule violations" resulting in the minorities' denial of access to public information. (*Id.* at ¶ 72). Further, Plaintiff claims that the conditions in SHU are extreme, insofar as the "5 ft. long lights just 3 ft. above bed remain on 24 hrs. a day no matter how hot temperature is outside and these bright lights causes [sic] sleeplessness excruciating head-aches, eye pains,

anxiety, mental anguish and endless pain and suffering." (*Id.* at ¶ 73). Plaintiff claims that minorities are disproportionately exposed to these extreme conditions. (*Id.*).

In addition, Plaintiff claims that the County of Monroe maintains a defective grievance program at MCJ, insofar as there is bias in the program that denied Plaintiff his right to "petition government for redress of grievances under administrative forum." (*Id.* at ¶¶ 91, 95–97).

Plaintiff claims that he has filed numerous grievances, complaints, and appeals with Defendants Harling and Krenzer in relation to the alleged mistreatment by Defendants Atkins, Scally, Newton, Willis, Guest, Amatore, and DeRosa, but states that Defendants Harling and Krenzer have continued to show "deliberate indifference" to Plaintiff's concerns. (*Id.* at ¶ 59).

Plaintiff claims that Defendants Lipari and Harling provided fraudulent responses to Plaintiff's grievance 09–33, and excluded four witness statements in connection with Plaintiff's grievance 09–49, contributing to Defendant County of Monroe's "faulty" grievance program. (*Id.* at ¶ 94).

Plaintiff alleges that Defendants Lipari, Guest, S. Peck, and Shellard did not appropriately conduct their investigations against supervisors in relation to Plaintiff's grievances 09–01, 09–32, 09–35, 09–46, 09–49, 09–81, 09–88, and 09–89, in violation of Plaintiff's rights under 7 NYCRR § 701.8(d)(1) and the First and Fourteenth Amendments to the U.S. Constitution. (*Id.* at ¶ 95).

Plaintiff generally claims that the investigation into his grievance 09–01 was biased and prejudiced, in violation of his right to seek redress of grievances. (*Id.* at ¶ 96).

Plaintiff alleges that he was denied due process of law at nine disciplinary hearings. (*Id.* at ¶ 97). Plaintiff claims that eight separate provisions of the NYCRR were violated by Defendants Messura, Preston, and Pratt at these hearings. (*Id.*). Plaintiff further claims that Defendants Krenzer and Harling were notified of these violations through Plaintiff's appeals, but that Defendants were deliberately indifferent to Plaintiff's complaints and failed to remedy the wrong. (*Id.* at ¶ 98).

### *DISCUSSION*

**[1]** **[2]** Rule 12(c) motions for judgment on the pleadings are evaluated by the same **standard** applicable to **motions** to **dismiss** pursuant to Fed.R.Civ.P. 12(b)(6). *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010). These motions must be made **\*716** after the close of the pleadings, "but early enough not to delay trial...." *Id.*

**[3]** " 'In considering a **motion** to **dismiss** for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative **standard** requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

**[4]** "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations omitted).

**[5]** **[6]** **[7]** In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of

their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001) (internal quotations and citation omitted); *see also Hemphill v. New York,* 380 F.3d 680, 687 (2d Cir.2004) (alteration in original) (internal citation omitted) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.' "). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (quoting *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009)). A court may not "invent factual allegations [plaintiff] has not pled." *Id.*

### I. Plaintiff's Motion for Recusal

In a letter dated January 1, 2015, and filed January 13, 2015, Plaintiff asks that the undersigned recuse herself from this matter pursuant to 28 U.S.C. § 455(a). **\*717** (Dkt. 142). Plaintiff alleges in a conclusory fashion that the undersigned has racial and prejudicial biases due to her recent unfavorable decision following a bench trial in a separate matter, designated by case number 01–CV–6559, and that therefore recusal is appropriate. (*Id.*). Defendants have filed papers in response to the motion (Dkt. 144 at 2; Dkt. 145), and Plaintiff has filed reply papers (Dkt. 147). The recusal issue is a threshold issue that must be resolved before the Court may consider any substantive motion.

**[8]** **[9]** "Title 28 U.S.C. § 455(a) requires a judge to recuse [her]self 'in any proceeding in which [her] impartiality might reasonably be questioned.' " *Cox v. Onondaga Cnty. Sheriff's Dep't,* 760 F.3d 139, 150 (2d Cir.2014) (quoting 28 U.S.C. § 455(a)). "Recusal motions 'are committed to the sound discretion of the district court....' " *Abidekun v. N.Y.C. Transit Auth.,* No. 93–CV–5600 (FB), 1998 WL 296372, at \*1 (E.D.N.Y. June 4, 1998) (quoting *United States v. Conte,* 99 F.3d 60, 65 (2d Cir.1996)). "In cases where a judge's impartiality might reasonably be questioned, the issue for consideration is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality." *Williams v. LaClair,* No. 9:10–CV–635(GLS/ RFT), 2013 WL 1193766, at \*3 (N.D.N.Y. Jan. 29, 2013)

(citing *Liteky v. United States,* 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

**[10]** Here, the fact that the Court reached an unfavorable decision in another, unrelated matter provides no basis for recusal. *Mills v. Poole,* Nos. 1:06–cv–00842–MAT–VEB, 1:11–cv–00440–MAT, 2014 WL 4829437, at \*6 (W.D.N.Y. Sept. 29, 2014) ("[Plaintiff's] claims of bias and impartiality on the part of the undersigned ... are both conclusory and based entirely on his disagreement with the Court's decisions. This is an insufficient basis for recusal."). Put simply, there is no evidence justifying recusal nor is there any basis for recusal. Accordingly Plaintiff's motion for recusal is denied.

### II. County Defendants' Motion for Judgment on the Pleadings

#### A. Municipal Liability

Plaintiff sues the County of Monroe in its "official capacity as a municipal entity" (Dkt. 95 at ¶ 5), alleging that the County: (1) failed to "properly train or supervise Defendants Brooks and O'Flynn" (*id.* at ¶¶ 48, 57, 61, 89, 97); (2) maintained a discriminatory custom, policy, or practice of classifying inmates by race and placing those racial minorities in unsafe or unsanitary conditions (*id.* at ¶¶ 48, 60, 71, 73); and (3) maintained an unconstitutional grievance program (*id.* at ¶¶ 91, 95–97).

Defendants argue that Monroe County has not assumed liability for the acts of the County Sheriff or his deputies by local law, and therefore Monroe County cannot be liable to the extent Plaintiff alleges claims under New York State law. (Dkt. 119–2 at 4–5). Defendants also argue that Monroe County and Defendant Brooks cannot be held liable for Plaintiff's § 1983 claims because he has failed to plausibly allege that the County is responsible for developing or implementing the policies, procedures, and regulations related to the conduct of the Sheriff deputies named as Defendants. (Dkt. 119–2 at 5).

#### 1. State Law Causes of Action

**[11]** Plaintiff claims on numerous occasions that Monroe County "failed to properly train or supervise" Defendants Brooks and/or O'Flynn. (*See e.g.* Dkt. 95 at ¶¶ 48, 57, 61, 89). To the extent Plaintiff is attempting to assert claims under New York State law, his claims fail. Monroe County has not assumed liability for the acts of the Sheriff or

his deputies by local law, and **\*718** therefore the County cannot be held liable to the extent Plaintiff is alleging a state law claim based upon a *respondeat superior* theory. See *D'Amico v. Corr. Med. Care, Inc.,* 120 A.D.3d 956, 959, 991 N.Y.S.2d 687 (4th Dep't 2014); *Smelts v. Meloni,* 306 A.D.2d 872, 873, 762 N.Y.S.2d 467 (4th Dep't 2003), *lv. denied* 100 N.Y.2d 516, 769 N.Y.S.2d 203, 801 N.E.2d 424 (2003). Furthermore, as discussed further below, Plaintiff fails to state any plausible claim as to Defendant Brooks' or O'Flynn's personal involvement and liability, thus negating any corresponding responsibility on the part of the County for their conduct.

### 2. Section 1983 Claims

**[12]** **[13]** **[14]** "[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012), *cert. denied,* —— U.S. ——, 134 S.Ct. 125, 187 L.Ed.2d 255 (2013). That is, "to assert a claim of municipal liability under § 1983, a plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right." *Blyden v. N.Y.P.D.,* No. 05 CV 4740 SJF LB, 2005 WL 3388609, at \*2 (E.D.N.Y. Dec. 12, 2005). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones,* 691 F.3d at 80.

**[15]** **[16]** **[17]** "To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.'" *Reid v. Nassau Cnty. Sheriff's Dep't,* No. 13–CV–1192 (SJF)(SIL), 2014 WL 4185195, at \*10 (E.D.N.Y. Aug. 20, 2014) (quoting *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008)). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir.2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011).

**[18]** Plaintiff has, in a conclusory fashion, alleged that Monroe County has a discriminatory policy of housing minorities together at MCJ, which leads to "rampant" gang activity. (Dkt. 95 at ¶¶ 25–26, 48, 57, 61, 72–73, 94–96). However, Plaintiff fails to allege with any factual specifics the existence of a sanctioned County policy that states that minority inmates should be placed in certain housing. Plaintiff would be required to allege that the practices were "so persistent and widespread as to practically have the force of law." *Connick,* 131 S.Ct. at 1359. This Plaintiff has failed to do.

**[19]** **[20]** "The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Here, Plaintiff offers no allegations of fact tending to support even an inference of an official policy. "Where a plaintiff can show only misbehaving officers, but has not [alleged] an official policy that led to the constitutional or statutory violation, his claim must fail." **\*719** *Adilovic v. Cnty. of Westchester,* No. 08 Civ. 10971(PGG), 2011 WL 2893101, at \*8 (S.D.N.Y. July 14, 2011) (quotations omitted).

Plaintiff also includes numerous general allegations in his complaint that the MCJ maintains an unconstitutional grievance program. (Dkt. 95 at ¶¶ 91, 94–98).

**[21]** "[T]he law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly." *Hill v. Napoli,* No. 6:09–CV–6546–MAT, 2014 WL 1322476, at \*14 (W.D.N.Y. Mar. 31, 2014) (internal quotation and citation omitted); *see also Green v. Herbert,* 677 F.Supp.2d 633, 639 (W.D.N.Y.2010) (inmate's claims that officer assigned to investigate his grievance conducted a biased, unfair investigation "fails because an inmate has no constitutional right to have his grievances processed or investigated in any particular manner.") (internal quotations and citation omitted).

**[22]** Plaintiff contends that Monroe County maintains a grievance program that is biased and prejudicial. (Dkt. 95 at ¶¶ 91, 95–97). "Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington v. Afify,* 968 F.Supp.2d 532, 541–42

(W.D.N.Y.2013). "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Booker v. Maly,* No. 9:12–CV–246 NAM/ATB, 2014 WL 1289579, at *11 (N.D.N.Y. Mar. 31, 2014). Plaintiff has failed to articulate any facts to support his otherwise conclusory statements that Defendant hearing officers showed any bias or prejudice toward Plaintiff or any other minority inmate. Plaintiff has also failed to plead that there is any official policy or custom supporting a biased or prejudicial grievance program.

In sum, Plaintiff's allegations against the County under § 1983 must be dismissed because he has failed to allege a plausible claim that the County had a custom, policy, or usage that led to the deprivation of Plaintiff's constitutional rights. Plaintiff's claims are conclusory in nature, and are therefore insufficient to withstand scrutiny under Fed.R.Civ.P. 12(c).

## B. Sheriff O'Flynn Liability

Plaintiff sues Monroe County Sheriff Patrick O'Flynn in his individual capacity, alleging that Defendant O'Flynn engaged in "gross negligent management" of various officers at MCJ and supported the "unconscionable tyranny" of placing all minorities in SHU. (Dkt. 1 at ¶¶ 7, 48, 57, 61, 63, 72–73, 78, 94–96). Further, Plaintiff claims that Defendant O'Flynn received numerous complaints and appeals from Plaintiff concerning the alleged racial discrimination and unlawful conduct, and that Defendant O'Flynn "acquiesced in the application of this discrimination against the Plaintiff." (Dkt. 1 at ¶¶ 24, 63, 78). Defendants argue that Plaintiff's claims against Defendant O'Flynn fail because Plaintiff has not established personal involvement on behalf of the Sheriff. (Dkt. 119–2 at 6–7). The Court agrees.

## 1. New York State Claims

[23] It is well settled that "the Sheriff cannot be held personally liable on the basis of respondeat superior for the alleged negligent acts of his deputies." *Schulik v. Cnty. of Monroe,* 202 A.D.2d 960, 961, 609 N.Y.S.2d 502 (4th Dep't 1994). As a result, Defendant O'Flynn may not be found liable under a *respondeat superior* theory for any alleged negligent acts performed by the County Defendants.

To the extent that Plaintiff alleges that Defendant O'Flynn is responsible for the **\*720** actions of his deputies under New York law, these claims are dismissed.

## 2. Section 1983 Claims

[24] [25] [26] "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). As explained by the Second Circuit Court of Appeals:

> [w]ithin the Second Circuit, it is generally accepted that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). "Mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (quotation omitted).

Here, Plaintiff argues that Defendant O'Flynn was personally involved in the alleged constitutional deprivations because he "is the chief policy maker for MCJ which created conditions which unconstitutional ratifications occurred." (Dkt. 133–3 at 16). However, Plaintiff has failed to allege, beyond conclusory allegations, that there was a policy that created unconstitutional conditions at MCJ.

[27] Further, although Plaintiff alleges that he sent Defendant O'Flynn numerous notices of his concerns about alleged constitutional deprivations, "the receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer,* 682 F.Supp.2d 423, 430 (S.D.N.Y.2010) (citing *Sealey v. Giltner,* 116 F.3d 47, 51

(2d Cir.1997)). *See also Ramsey v. Goord,* No. 05–CV–47A, 2005 WL 2000144, at *8, 2005 U.S. Dist. LEXIS 42953, at *8 (W.D.N.Y.2005)* ("the fact that a prison official in the prison 'chain of command' affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official"). Plaintiff has not alleged that Defendant O'Flynn responded to any of his grievances or appeals, and his conclusory allegations that Defendant O'Flynn "acquiesced" in his poor treatment on the basis of this failure to respond does not state a claim against a supervisory defendant.

**[28]** In addition, Plaintiff claims that Defendant O'Flynn engaged in "gross negligent management" of various officers. (Dkt. 95 at ¶¶ 48, 57, 61, 94–96). For example, Plaintiff alleges that Defendant O'Flynn negligently managed Defendants Lipari and Harling, who allegedly filed a "fraudulent response" to Plaintiff's grievances. (*Id.* at ¶ 94). These allegations of negligent management on the part of Defendant O'Flynn lack any factual support. Moreover, as discussed in further detail later in this discussion, Plaintiff has failed to sufficiently allege that his rights were violated by the filing of a fraudulent response. Indeed, each of Plaintiff's allegations of negligent management is attached to an alleged violation that he has failed to sufficiently allege. Absent an underlying constitutional violation, there can be no supervisory liability, or negligent management. *See Murray v. Pataki,* No. 9:03–CV–1263 (LEK/RFT), 2007 WL 956941, at *7 (N.D.N.Y. Mar. 29, 2007)* ("Plaintiff has failed to establish that Goord was grossly **\*721** negligent in his supervision of unknown subordinates, especially since no constitutional violation arose from this incident....").

As a result, Plaintiff's claims against Defendant O'Flynn are dismissed.

## C. Defendant Brooks

**[29]** Plaintiff sues Monroe County Executive Maggie Brooks in her individual capacity, alleging that Defendant Brooks engaged in "gross negligent management" of various officers at MCJ and supported the "unconscionable tyranny" of placing all minorities in SHU. (Dkt. 1 at ¶¶ 6, 25–26, 48, 57, 61, 72–73, 94–96). For the same reasons that Plaintiff has failed to state a claim against Defendant O'Flynn, he has failed to state a claim against Defendant Brooks. Defendant Brooks' position as chief executive of Monroe County does not suffice to state a claim against her. Plaintiff fails to offer any factual support for his conclusory allegations against Defendant Brooks, and he has not sufficiently alleged that constitutional

violations occurred for any of the underlying events that he alleges Defendant Brooks negligently managed. Accordingly, Plaintiff's claims against Defendant Brooks are dismissed.

## D. Jail Supervisors and Administrators

Defendants argue that the claims against the MCJ supervisors and administrators must be dismissed because § 1983 liability may not be imposed merely because an individual holds a supervisory position of authority. (Dkt. 119–2 at 7–8) (citing *Colon,* 58 F.3d at 873)). Although this is an accurate statement of the law, Defendants fail to demonstrate which claims against which Defendants fail to demonstrate personal involvement. Rather, Defendants generally argue that "the actions against all Jail Supervisors and Administrators should be dismissed for lack of personal involvement." (Dkt. 119–2 at 8). To the extent that any supervisory Defendants are dismissed from this action based on lack of personal involvement, these Defendants are dismissed in the more detailed discussion below. However, the Court disagrees with Defendants that, as a matter of law, all "jail supervisors and administrators" must be dismissed. Rather, as discussed further below, Plaintiff has sufficiently alleged personal involvement by some of these Defendants.

## E. Prisoner Litigation Reform Act ("PLRA")

**[30]** Defendants contend that Plaintiff's claims are barred by the Prisoner Litigation Reform Act ("PLRA"). (Dkt. 119–2 at 12–13). Specifically, Defendants argue that Plaintiff has failed to exhaust his administrative remedies or show that he was injured with respect to the matters at issue in this litigation. (*Id.* at 12). Plaintiff argues that the PLRA does not apply to him as he was a pretrial detainee at the time of the alleged violations. (Dkt. 133–3 at 24). Plaintiff's argument is without merit, because "the PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees." *Baez v. Parks,* No. 02 CIV.5821 PKC DF, 2004 WL 1052779, at *5 (S.D.N.Y. May 11, 2004)* (collecting cases); *see also Little v. Mun. Corp.,* 51 F.Supp.3d 473, 502–03, No. 12–CV–5851 (KMK), 2014 WL 5011091, at *19 (S.D.N.Y. Sept. 30, 2014)* (applying PLRA exhaustion requirements to pretrial detainees); *Franklin v. Canty,* No. 13 CV 3873(VB), 2014 WL 2217003, at *2 (S.D.N.Y. May 27, 2014)* (same).

**[31]** **[32]** The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."
**\*722** 42 U.S.C. § 1997e(a). "This administrative exhaustion provision requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " *Torres v. Carry,* 672 F.Supp.2d 338, 342–43 (S.D.N.Y.2009) (quoting *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "This provision affords 'prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being ha[u]led into court[,]' and also creates an administrative record that facilitates judicial review." *Torres v. Anderson,* 674 F.Supp.2d 394, 397 (E.D.N.Y.2009) (quoting *Jones v. Bock,* 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)).

**[33]** However, "[t]he only circumstance in which it is appropriate to dismiss a complaint on nonexhaustion grounds is when it is apparent from the face of the complaint that the plaintiff failed to exhaust his administrative remedies." *Randle v. Alexander,* 960 F.Supp.2d 457, 483 (S.D.N.Y.2013); *see also Parris v. N.Y.S. Dep't Corr. Servs.,* 947 F.Supp.2d 354, 361 (S.D.N.Y.2013) (denying ==motion== to ==dismiss== on grounds of exhaustion where it was not evident from the face of the complaint that plaintiff had or had not complied with the inmate grievance program); *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't,* No. 10 Civ. 6309, 2011 WL 2946168, at \*2 (S.D.N.Y. July 19, 2011) (denying a ==motion== to ==dismiss== when the complaint was ambiguous about exhaustion). "Most circuits that have considered the issue, ... including this circuit, have held that nonexhaustion is an affirmative defense, and that therefore defendants bear the burden of proof and ==prisoner== plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord,* 255 F.Supp.2d 233, 248 (S.D.N.Y.2003).

**[34]** Defendants have not met their burden to demonstrate that Plaintiff failed to exhaust his administrative remedies. Defendants argue that the documents attached to Plaintiff's complaint do not show that a final determination was made by the Citizen Policy and Complaint Review Council, and therefore Plaintiff has not exhausted his administrative remedies. (Dkt. 119–2 at 12). However, it is Defendants' burden to demonstrate nonexhaustion, not Plaintiff's burden to plead exhaustion with particularity. It is not apparent from the face of Plaintiff's complaint that he has failed to exhaust his administrative remedies. Although Plaintiff makes some allegations that he filed grievances and appeals as to his underlying concerns, he does not discuss his pursuit

of administrative remedies as to each and every claim. As a result, it would be inappropriate at this stage in the litigation to dismiss Plaintiff's claims for failure to exhaust his administrative remedies under the PLRA.

### F. *Res Judicata* /Collateral Estoppel

Plaintiff has brought previous litigation concerning issues that overlap with the allegations he makes in his current complaint. In *Barnes v. Monroe County Sheriff,* 89 A.D.3d 1471, 933 N.Y.S.2d 630 (4th Dep't 2011), the court reviewed Plaintiff's Article 78 proceeding seeking review of the administrative hearings on November 27, 2009, and March 9, 2009, which resulted in Plaintiff's placement in SHU. The Fourth Department dismissed Plaintiff's petition. *Id.* In *Barnes v. Harling,* 96 A.D.3d 1415, 945 N.Y.S.2d 901 (4th Dep't 2012), *lv. denied,* 19 N.Y.3d 1011, 951 N.Y.S.2d 706, 976 N.E.2d 233 (2012), Plaintiff brought an Article 78 proceeding seeking review of his placement in SHU as a result of his hearings on March 11, 2009, March 25, 2009, April 16, 2009, and disciplinary orders from March 28, 2009, April 3, 2009, April 27, 2009, and May 21, 2009. **\*723** The Fourth Department found that Plaintiff was "not entitled to any of the relief he seeks," and the Court of Appeals denied Plaintiff's motion to appeal this determination. *Id.*

**[35]** **[36]** **[37]** Defendants request that this Court take judicial notice of the determinations made in these state court matters and find that Plaintiff is precluded from relitigating those issues under the doctrines of *res judicata* and collateral estoppel. " 'A court may take judicial notice of matters of public record, including ... decisions in prior state court.' " *Pacherille v. Burns,* 30 F.Supp.3d 159, 161 (N.D.N.Y.2014) (quoting *Johnson v. Pugh,* No. 11–CV–385, 2013 WL 3013661, at \*2 (E.D.N.Y. June 18, 2013)). The Court takes judicial notice of these decisions from the Fourth Department. *See Stewart v. Transp. Workers Union of Greater N.Y., Local 100,* 561 F.Supp.2d 429, 435–36 (S.D.N.Y.2008) (stating that a district court may take judicial notice of matters of public record in resolving a Rule 12(c) motion). "In the context of a Rule 12(c) motion, however, the Court should generally take judicial notice 'to determine what statements [the documents] contain [ ] ... not for the truth of the matters asserted.' " *Piazza v. Fla. Union Free Sch. Dist.,* 777 F.Supp.2d 669, 678 (S.D.N.Y.2011) (quoting *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991)) (alterations in original).

**[38]** **[39]** **[40]** Here, claim preclusion, or *res judicata,* does not bar Plaintiff's civil rights lawsuit based upon his prior Article 78 proceedings. "As the Second Circuit explained ...

claim preclusion, known as res judicata, requires that a final judgment on the merits of an action be given preclusive effect, barring parties as well as those in privity with them from relitigating in a subsequent action a claim which was or could have been raised in the prior suit." *Johnson v. McClure,* No. 9:06–CV–0431, 2009 WL 2356147, at *7 (N.D.N.Y. July 28, 2009) (citing *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286–87 (2d Cir.2002)). In this case, Plaintiff's civil rights claims could not have been raised in the Article 78 proceedings. "[A] New York plaintiff is not barred from seeking damages, in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights suit such as this one." *Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir.1987); *see also Leo v. N.Y.C. Dep't of Educ.,* No. 13 CV 2271(RJD)(JMA), 2014 WL 6460704, at *4 (E.D.N.Y. Nov. 17, 2014) (*res judicata* doctrine did not apply to plaintiff's § 1983 claims because plaintiff could not have received damages for violations of his civil rights in his prior Article 78 proceeding).

**[41]** **[42]** However, a portion of Plaintiff's claims are barred under the doctrine of issue preclusion, also known as collateral estoppel. "[U]nder New York law, the doctrine of collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.' " *Shell v. Brun,* 362 F.Supp.2d 398, 400 (W.D.N.Y.2005) (quoting *Ryan v. N.Y. Tel. Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)). "It is well-settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983." *Id.; see also Vann v. Fischer,* No. 11 Civ.1958(KPF), 2014 WL 4188077, at *25 (S.D.N.Y. Aug. 25, 2014) (plaintiff barred in § 1983 action from relitigating issues concerning bias and due process violations during prison disciplinary proceeding that were previously raised during Article 78 proceeding).

***724** **[43]** There are two requirements for the application of collateral estoppel to an issue: "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown,* 481 F.3d 89, 105 (2d Cir.2007), *cert. denied* 552 U.S. 1179, 128 S.Ct. 1218, 170 L.Ed.2d 59 (2008) (quotation omitted).

**[44]** "To determine whether the first action provided a full and fair opportunity to litigate requires consideration of: the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Shell v. Brun,* 362 F.Supp.2d 398, 400 (W.D.N.Y.2005).

**[45]** Here, the state court has already examined Plaintiff's challenges to his November 27, 2009, March 9, 2009, March 11, 2009, March 25, 2009, and April 16, 2009 hearings, and his disciplinary orders from March 28, 2009, April 3, 2009, April 27, 2009, and May 21, 2009, which resulted in Plaintiff's placement in SHU. It appears that Plaintiff was given a full opportunity to litigate these issues in his Article 78 proceedings. As a result, Plaintiff's claims related to these hearings and assignments to SHU must be dismissed as barred by the doctrine of collateral estoppel.

## G. Excessive Use of Force

**[46]** Plaintiff asserts § 1983 claims of excessive use of force based upon alleged incidents on August 7, 2008, and August 12, 2009. "To state a § 1983 claim, a plaintiff must allege that defendant, while acting 'under color of state law,' deprived Plaintiff of his constitutional or statutory rights." *Cunningham v. Rodriguez,* No. 01 Civ. 1123(DC), 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002) (quoting 42 U.S.C. § 1983). "A pretrial detainee who is subjected to excessive force may bring a claim under § 1983." *Id.*

**[47]** **[48]** "Because the Eighth Amendment's protection from cruel and unusual punishment does not apply until after conviction and sentence, the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *Adilovic,* 2011 WL 2893101, at *4 (quotations omitted). "The Second Circuit applies the same ==standard== to excessive force claims brought under the Fourteenth Amendment as under the Eighth Amendment." *Virella v. Pozzi,* No. 05 Civ. 10460(RWS), 2006 WL 2707394, at *3 (S.D.N.Y. Sept. 20, 2006) (citing *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999)).

**[49]** "[T]he analysis provided by the Supreme Court in *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), that requires a sentenced ==prisoner== to satisfy both an objective and subjective prong to establish an

Eighth Amendment violation also applies to excessive force claims brought by a pretrial detainee." *Perkins v. Brown,* 285 F.Supp.2d 279, 283 (E.D.N.Y.2003).

**[50]** **[51]** **[52]** "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary ==standards== of decency.' " *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009) (quoting *Hudson,* 503 U.S. at 8, 112 S.Ct. 995). "Nonetheless, the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to '*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.' " *Id.* at 269 (quoting **\*725** *Hudson,* 503 U.S. at 8, 112 S.Ct. 995). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a ==prisoner's== constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.1973).

**[53]** **[54]** "The subjective requirement is satisfied if the defendant acted wantonly with a sufficiently culpable state of mind." *Perkins,* 285 F.Supp.2d at 283. "Where a state official is accused of using excessive physical force against a pretrial detainee, the inquiry turns on 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* (quoting *United States v. Walsh,* 194 F.3d 37, 48–49 (2d Cir.1999)).

### 1. August 7, 2008

**[55]** Plaintiff alleges that Defendant Newton used excessive force on Plaintiff on August 7, 2008, when he responded to the fight between Plaintiff and inmates Eades and Members, and jumped on Plaintiff's back, striking Plaintiff in the face and knocking out a tooth. (Dkt. 95 at ¶ 20). Defendants argue that Plaintiff fails to sufficiently allege that Defendants had a culpable state of mind insofar as "any alleged force used by defendant was made in a good faith effort by defendants to maintain or restore discipline." (Dkt. 119–2 at 15). Defendants claim that the force was used because Plaintiff was fighting with other inmates and resisted the placement of handcuffs. (*Id.*).

Objectively, Plaintiff has sufficiently alleged that Defendant Newton used force above a *de minimis* level. Plaintiff claims that Defendant Newton jumped on his back and knocked out a tooth. At this early stage in the litigation, this force and subsequent injury satisfies the first prong of an excessive use of force claim. *See Tafari v. McCarthy,* 714 F.Supp.2d 317,

362 (N.D.N.Y.2010) (finding incident where officer pulled plaintiff's face into steel door, breaking his tooth, may support excessive use of force claim).

Subjectively, Plaintiff has sufficiently alleged that Defendant Newton was not merely using force to maintain or restore discipline. Taking Plaintiff's claims as true, Defendant Newton "premeditated" the whole incident and intended for Plaintiff to be attacked by two other inmates.

As a result, Plaintiff's claim of excessive use of force as against Defendant Newton relating to the August 7, 2008, incident may proceed to discovery.

### 2. August 12, 2009

**[56]** Plaintiff claims that Defendants Daly, Shellard, Alberti, Galen, and Lipari used excessive force on Plaintiff on August 12, 2009. (Dkt. 95 at ¶¶ 33–39). Specifically, Plaintiff alleges that Defendant Shellard pushed Plaintiff face-first into a glass window; Defendants Shellard, Daly, and Alberti pushed Plaintiff to the floor, kicked, stomped on, and punched Plaintiff; Defendants Alberti and Daly used Plaintiff's handcuffs to inflict pain; and that Defendants Alberti and Daly "slammed Plaintiff's head." (Dkt. 95 at ¶¶ 35–39). Defendants Galen, Daly, and Alberti allegedly "dragged" Plaintiff back to his cell. (*Id.* at ¶ 39). According to Plaintiff, as a result of this altercation, he urinated and defecated on himself, and experienced dizziness and a concussion. (*Id.*). Defendants argue that Plaintiff has failed to state a claim because he fails to allege "how he was harmed on that date and/or that the force taken was unwarranted." (Dkt. 119–2 at 16).

Objectively, Plaintiff has sufficiently alleged an excessive use of force. Taking Plaintiff's allegations as true, Plaintiff was reaching for his legal papers when Defendant Shellard pushed him into a glass window and then took him to the floor, where Defendants Shellard, Daly, and Alberti proceeded to kick, stomp on, and punch **\*726** Plaintiff. (Dkt. 95 at ¶¶ 35–37). When Plaintiff attempted to steady himself by grabbing a gate, Defendants Alberti and Daly "slammed" Plaintiff's head, causing Plaintiff to urinate and defecate on himself, and experience dizziness and a concussion. (*Id.* at ¶¶ 38–39). Plaintiff alleges Defendants Galen, Daly, and Alberti dragged him back to his cell. (*Id.* at ¶ 39). Contrary to Defendants' assertions, Plaintiff has sufficiently alleged how he was harmed by Defendants' actions on August 12, 2009.

Plaintiff has also sufficiently alleged the subjective component of his claim. Plaintiff alleges that the force used on him was in response to his reaching for legal papers and attempting to steady himself. Taken as true, the force could not have been used in a good faith effort to maintain or restore discipline, as Plaintiff had not violated any directives.

Accordingly, Plaintiff's August 12, 2009, excessive use of force claim as against Defendants Shellard, Daly, Galen, and Alberti may proceed to discovery. To the extent this claim is asserted against Defendant Lipari, it is discussed below under the failure to protect analysis.

## H. Conspiracy

**[57]** **[58]** **[59]** To state a conspiracy claim in violation of constitutional rights under § 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). The intracorporate conspiracy doctrine provides that "if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own ... officers[ ] and employees, each acting within the scope of his employment[,] there can be no actionable conspiracy." *O'Diah v. Neth,* No. 6:10–CV–6592(MAT), 2013 WL 6440610, at *4 (W.D.N.Y. Dec. 9, 2013) (internal quotation and citation omitted) (alterations in original). "[A]n exception to the doctrine applies when individual employees are pursuing personal interests wholly separate and apart from the entity...." *Anemone v. Metro. Transp. Auth.,* 419 F.Supp.2d 602, 604 (S.D.N.Y.2006).

**[60]** **[61]** **[62]** "While exact specifics are not required, 'the pleadings must present facts tending to show agreement and concerted action.' " *Graham v. Peters,* No. 13–CV–705JTC, 2013 WL 5924727, at *2 (W.D.N.Y. Oct. 31, 2013) (quoting *Anilao v. Spota,* 774 F.Supp.2d 457, 512–13 (E.D.N.Y.2011)). Plaintiff is required to "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999) (citations omitted). "Bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action are insufficient." *Booker,* 2014 WL 1289579, at *25.

### 1. August 7, 2008

**[63]** Plaintiff claims that Defendants Amico and Danehy "collaborated" with Defendant Newton to permit the attack on Plaintiff by inmates Eades and Members on August 6, 2008. (Dkt. 95 at ¶¶ 30–32). Defendants contend that Plaintiff has only vaguely asserted conclusory statements of conspiracy, and therefore his conspiracy claim must be dismissed. (Dkt. 119–2 at 15).

After carefully reviewing Plaintiff's complaint and drawing all reasonable inferences in his favor, the Court concludes **\*727** that while the facts are inartfully drafted, Plaintiff has plausibly alleged that Defendants Amico or Danehy "collaborated" with Defendant Newton in his premeditated plan to permit an inmate attack on Plaintiff. Plaintiff has alleged that Defendants engaged in an "overt act" in furtherance of the conspiracy through the delay in calling a "Code # 1." Accordingly, giving Plaintiff the benefit of the doubt, his conspiracy claim as to Defendants Amico, Danehy, and Newton may proceed to discovery.

### 2. February 26, 2009

Plaintiff claims that Defendants Waud, T. Peck, Mooney, Dimartino, Robertson, and Fitzsimmons "collaborated reports" to delete any references to the theft of Plaintiff's commissary. (Dkt. 95 at ¶ 47). Plaintiff contends that Defendants Krenzer, Harling, Jolly, Dimartino, Mooney, T. Peck, Waud, Fitzsimmons, and Robinson altered the videotape evidence of the commissary theft by deleting the time period from 8:55 p.m. through 9:30 p.m. from the tape. (*Id.* at ¶ 101). Plaintiff suggests that Defendants Harling, Krenzer, Thomas, and Jolly encouraged the falsification of the records. (*Id.* at ¶ 48).

Plaintiff's claims are conclusory in nature. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 325 (2d Cir.2002). "While exact specifics are not required, 'the pleadings must present facts tending to show agreement and concerted action.' " *Barnes v. Prack,* No. 11–CV–857 (TJM/CFH), 2012 WL

7761905, at *9 (N.D.N.Y. Sept. 7, 2012) (quoting *Anilao,* 774 F.Supp.2d at 512–13). *See, e.g., Johnson v. Barney,* No. 04 Civ. 10204, 2006 WL 3714442, at *2 (S.D.N.Y. Dec. 13, 2006) (dismissing for failure to state a claim prisoner's conclusory allegation that defendant fabricated an investigative report as part of a conspiracy to cover up the wrongful acts of other correction officers), *aff'd,* 360 Fed.Appx. 199 (2d Cir.2010); *Barnes,* 2012 WL 7761905, at *10 (dismissing claim of conspiracy to manipulate videotape evidence where plaintiff "fail[ed] to provide any plausible information which would lend credence to his claims of an explicit or implicit agreement between any or all of [the] defendants").

 [64]   [65]   [66]   [67]   Further, Plaintiff's claims do not allege a constitutional injury as required for a conspiracy claim. "In order to bring a valid § 1983 claim, a plaintiff must establish that [he] was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Graham v. City of Albany,* No. 1:08–CV–892 (RFT), 2009 WL 4263510, at *9 (N.D.N.Y. Nov. 23, 2009) (quotations omitted). Even if Defendants had conspired to cover up the theft of Plaintiff's personal property, Plaintiff has not alleged a constitutional injury. As the District Court stated in *Collins v. Goord,* 438 F.Supp.2d 399 (S.D.N.Y.2006):

> Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a due process claim so long as adequate state post-deprivation remedies are available. New York law provides such a remedy in the form of an action before the New York Court of Claims.

*Id.* at 418–19 (dismissing inmate Plaintiff's theft of personal property claim) (internal quotations and citations omitted). In other words, because Plaintiff had state remedies available to him for the alleged deprivation, there can be no underlying constitutional injury. "Absent an **\*728** underlying constitutional injury, a civil rights conspiracy claim cannot survive." *Johnson v. Rock,* No. 9:08–CV–1013 (GLS/RFT), 2010 WL 3911389, at *7 (N.D.N.Y. Mar. 30, 2010), *adopted by Johnson v. Rock,* 2010 WL 3910153 (N.D.N.Y. Sept. 30, 2010).

Therefore, Plaintiff's claims of conspiracy related to the February 26, 2009 incident are dismissed.

## I. Failure to Protect

 [68]   "As opposed to deliberate indifference claims brought by post-conviction prisoners—which arise under the Eighth Amendment—claims for deliberate indifference brought by state pretrial detainees arise under the Fourteenth Amendment." *Blake v. Kelly,* No. 12 Civ. 7245(ER), 2014 WL 4230889, at *4 (S.D.N.Y. Aug. 26, 2014). The Second Circuit has held that "[c]laims for deliberate indifference ... should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman,* 581 F.3d 63, 69–72 (2d Cir.2009).

 [69]   [70]   "The Eighth Amendment requires that prison officials take 'reasonable measure to guarantee the safety of inmates in their custody.' " *Blake,* 2014 WL 4230889, at *4 (quoting *Hayes v. New York City Dep't of Corrs.,* 84 F.3d 614, 620 (2d Cir.1996)). "Accordingly, a prison official's failure to protect a prisoner from harm may form the basis of a § 1983 claim." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

 [71]   [72]   "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer,* 511 U.S. at 833, 114 S.Ct. 1970. "To state a failure-to-protect claim under § 1983, the plaintiff must establish two conditions: 'First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed [the] sufficient culpable intent' of deliberate indifference." *Randolph v. Griffin,* No. 12–CV–745S, 2014 WL 3548967, at *6 (W.D.N.Y. July 17, 2014) (quoting *Hayes,* 84 F.3d at 620).

 [73]   [74]   In addition, "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). "In order to establish liability under this theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." *Finley v. Perry,* No. 9:06–CV–1524(FJS/ATB), 2010 WL 6427496, at *5 (N.D.N.Y. July 13, 2010).

"[T]o recover damages against supervisory officials for the acts of their subordinates, a plaintiff must show that the defendant's personal involvement caused the constitutional deprivation." *Anderson,* 17 F.3d at 557.

### 1. August 7, 2008

**[75]**  Plaintiff's claims that Defendants Amico, Danehy, and Newton collaborated to delay a Code 1 response to allow Plaintiff to be attacked by other inmates may be liberally construed as a failure to protect claim. (Dkt. 95 at ¶¶ 30–32). Defendants argue that Plaintiff has "failed to plead any action which supports a deliberate indifference to protect him from other inmates." (Dkt. 119–2 at 17). The Court disagrees.

**\*729**  Plaintiff alleges that Defendants Newton, Amico, and Danehy were aware of the impending attack by inmates Eades and Members and permitted this attack to occur. (Dkt. 95 at ¶ 31). Plaintiff further claims that Defendant Newton planned the attack. (*Id.*). If these facts are taken as true, Plaintiff has sufficiently alleged that Defendants Amico, Danehy, and Newton failed to intervene to protect Plaintiff from an inmate attack and/or attack by Defendant Newton. To the extent that Plaintiff alleges a failure to protect claim in relation to the August 6, 2008 incident, that claim may proceed to discovery.

### 2. November 18, 2008

**[76]**  On November 7, 2008, Defendant Krenzer placed Plaintiff in second floor housing, and on November 18, 2008, Plaintiff was involved in a fight with two other inmates. (Dkt. 95 at ¶¶ 40–41).

As an initial matter, Plaintiff has failed to plead that Defendant Krenzer had any knowledge that placing Plaintiff in second floor housing posed a substantial risk of harm to Plaintiff. Further, Plaintiff has not alleged, beyond conclusory allegations, that Defendant Krenzer was deliberately indifferent to the harm that allegedly occurred as a result of the fight with two other inmates. As a result, Plaintiff's failure to protect claim related to the November 18, 2008, incident must be dismissed.

### 3. January 19, 2009

**[77]**  Plaintiff alleges that Defendants failed to protect him when they placed him in mainframe housing on December 26, 2009, despite his protests, and he was subsequently attacked by three inmates on January 19, 2009. (Dkt. 95 at ¶¶ 66, 43–44). Plaintiff claims that he informed Defendant Tripoli on December 26, 2008, that he did not want to return to mainframe housing, and that Defendant Tripoli essentially responded that he did not care if Plaintiff was assaulted by other inmates in mainframe housing. (*Id.* at ¶ 66). On January 19, 2009, Plaintiff was attacked by three other inmates. (*Id.* at ¶ 43). Further, Plaintiff alleges that Defendants Waud and Willis "bragged" about Plaintiff getting beaten up on this occasion. (*Id.* at ¶ 44).

Here, Plaintiff has sufficiently alleged, for the purposes of this motion, that there was a substantial risk of harm. Plaintiff claims that Defendants were aware that gang activity was "rampant" in the mainframe housing, and Plaintiff was previously attacked in mainframe housing on at least one occasion. (*Id.* at ¶¶ 40–41, 61). Further, Plaintiff explicitly told Defendant Tripoli that he was concerned about being placed in mainframe housing. (*Id.* at ¶ 66).

Plaintiff has also sufficiently alleged deliberate indifference to this substantial risk of harm. For example, Plaintiff alleges that Defendant Tripoli stated that he did not care if Plaintiff was assaulted in the mainframe housing. (*Id.* at ¶¶ 43, 66).

To the extent that Plaintiff alleges a failure to protect claim in relation to the January 19, 2008, attack by three other inmates, Plaintiff's claim may proceed to discovery.

### 4. May 2, 2009

**[78]**  On May 2, 2009, Plaintiff claims that Defendant Willis not only failed to protect Plaintiff from having urine, feces, and dirty mop water thrown into Plaintiff's cell by inmate Clark, but that Defendant Willis also let inmate Clark out of his cell and directed him to throw these materials into Plaintiff's cell. (Dkt. 95 at ¶¶ 54–55).

Plaintiff has sufficiently alleged that he was exposed to a substantial risk of harm. *See Hogan v. Fischer,* 738 F.3d 509, 516 (2d Cir.2013) (finding spraying an inmate with vinegar, excrement, and machine oil was "repugnant to the conscience of mankind"). Further, based on Plaintiff's allegations, **\*730** Defendant Willis directed this exposure to occur. Alternatively, Defendant Willis was present while

the exposure occurred, but failed to intervene. Accordingly, Plaintiff's failure to protect claim as against Defendant Willis may proceed to discovery.

### 5. August 12, 2009

**[79]** In relation to Plaintiff's August 12, 2009 excessive use of force claim, Plaintiff alleges that Defendant Lipari was "watching and laughing" while Defendants Galen, Daly, and Alberti "dragged" Plaintiff back to his cell. (Dkt. 95 at ¶ 39).

Plaintiff has sufficiently pled a failure to protect claim as against Defendant Lipari. Plaintiff has alleged that Defendant Lipari was physically present for the use of force and therefore had actual knowledge of the use of force, had an opportunity to intervene to prevent the harm from occurring, but intentionally disregarded the risk by standing back and laughing while Plaintiff was attacked by the other Defendants. *See Finley, 2010 WL 6427496, at \*5*. This claim may proceed to discovery.

### J. Retaliation

**[80]** **[81]** "Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord, 320 F.3d 346, 352 (2d Cir.2003)* (quoting *Dawes v. Walker, 239 F.3d 489, 491 (2d Cir.2001)*, *overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)*). "Thus, in order to survive a motion to dismiss a complaint, a plaintiff asserting First Amendment retaliation claims must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Davis, 320 F.3d at 352* (quoting *Dawes, 239 F.3d at 492*).

**[82]** "The filing of formal prisoner grievances is protected conduct under the First Amendment." *Shariff v. Poole, 689 F.Supp.2d 470, 478 (W.D.N.Y.2010)* (citing *Colon, 58 F.3d at 872*).

**[83]** **[84]** "Adverse action," defined objectively, is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ...

constitutional rights.' " *Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir.2004)* (quoting *Davis, 320 F.3d at 353*). "In other words, in the context of prisoner retaliation suits, a prisoner need not demonstrate 'actual chill.' The issue is whether defendants engaged in retaliatory conduct that would 'deter a similarly situated individual of ordinary firmness from exercising his constitutional rights.' " *Lashley v. Wakefield, 483 F.Supp.2d 297, 300 (W.D.N.Y.2007)* (quoting *Gill, 389 F.3d at 381*).

**[85]** **[86]** "This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise." *Dawes, 239 F.3d at 493* (internal quotation omitted). "Prisoners may be required to tolerate more ... than average citizens, before a [retaliatory] action taken against them is considered adverse." *Davis, 320 F.3d at 353*.

**[87]** "[A] prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances." *Jones v. Coughlin, 45 F.3d 677, 679–80 (2d Cir.1995)*.

**[88]** **[89]** In evaluating whether a plaintiff has established the necessary causal **\*731** connection of a retaliation claim, "a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Shariff, 689 F.Supp.2d at 479*. "The Second Circuit has held that temporal proximity between an inmate's grievance and disciplinary action may serve as circumstantial evidence of retaliation...." *Candelaria v. Higley, No. 04–CV–0277(MAT), 2013 WL 104910, at \*9 (W.D.N.Y. Jan. 8, 2013)* (citing *Colon, 58 F.3d at 872–73*). Accordingly, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord, 558 F.3d 119, 129 (2d Cir.2009)*.

### 1. October 11, 2009

**[90]** Plaintiff contends that Defendant DeRosa placed him in SHU on October 11, 2009, in retaliation for the burglary of a family member that may have been committed by Plaintiff. (Dkt. 95 at ¶ 76). This tenuous and conclusory

allegation of **retaliation** fails to state a claim because Plaintiff fails to allege that he was engaging in any protected speech or conduct. Instead, Plaintiff alleges that Defendant DeRosa **retaliated** against Plaintiff for a burglary. In the context alleged by Plaintiff, engaging in a criminal activity is not protected speech or conduct protected by the **First Amendment**. As a result, this **retaliation** claim is dismissed.

### 2. February 26, 2009

**[91]** Plaintiff claims that on February 26, 2009, Defendant Waud permitted the theft of Plaintiff's commissary in **retaliation** for Plaintiff's filing of grievances. (Dkt. 95 at ¶ 46). According to Plaintiff, Waud had expressed his dislike for Plaintiff because Plaintiff filed grievances. (*Id.* at ¶ 46).

As previously noted, Plaintiff had engaged in a protected activity by filing grievances. In addition, the permitted theft of Plaintiff's commissary may be construed as an adverse action. Under the circumstances, these actions would be sufficient to chill a person of ordinary firmness from continuing to engage in his **First Amendment** activity.

Plaintiff has also sufficiently alleged a causal connection between his filing of grievances and the adverse action. Plaintiff alleges that Defendant Waud had indicated his dislike for Plaintiff because Plaintiff filed grievances, and it can be inferred from the other allegations in the complaint that this statement was made prior to the theft of Plaintiff's property. (*Id.* at ¶ 46). For the purposes of this motion, Defendant Waud's statement that Plaintiff was a "piece of shit that likes to file grievances on staff" prior to the theft of Plaintiff's commissary is sufficient to demonstrate Defendant Waud's motive to **retaliate** against Plaintiff. *See Shariff,* 689 F.Supp.2d at 479. Accordingly, Plaintiff's February 26, 2009 **retaliation** claim as against Defendant Waud may proceed to discovery.

### 3. DeRosa/Kluth **Retaliation**

**[92]** Plaintiff does not specify a date, but claims that Defendant DeRosa identified Plaintiff by pointing to him, and that Defendant Kluth then "humiliated and degraded" Plaintiff for five to six hours before allegedly issuing two false misbehavior reports against Plaintiff. (*Id.* at ¶ 67). Construing this statement liberally, it appears that Plaintiff is alleging a **retaliation** claim.

**[93]** Plaintiff does not state what protected activities he engaged in to elicit the **\*732** alleged **retaliatory** conduct, nor does he state when the **retaliation** occurred or the misbehavior reports were issued. "A prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report. The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is where the false accusation is based on something more, such as **retaliation** against the **prisoner** for exercising a constitutional right." *Tafari,* 714 F.Supp.2d at 372 (quotations and citations omitted).

Plaintiff's conclusory allegations are insufficient to state a **retaliation** claim. Plaintiff's allegations lack any specifics as to the protected activity and alleged **retaliation**. Under the circumstances, Plaintiff's **retaliation** claim against Defendants DeRosa and Kluth is simply not plausible.

### 4. March 2, 2009

**[94]** On March 2, 2009, before being placed in SHU, Plaintiff was subjected to a strip search by Defendant Scally. (Dkt. 95 at ¶ 69). During the course of the strip search, Plaintiff felt that he was degraded and humiliated, and he subsequently filed a grievance against Defendant Scally. (Dkt. 95 at ¶ 92). Plaintiff alleges that later that day, Defendant Scally approached Plaintiff's cell and "blew-up his cheeks making jestures[sic] and stated: 'Oh Jessie suck my dick.' " (*Id.* at ¶ 92). Plaintiff also claims that Defendants Atkins, Scally, Guest, Amatore, and McGowan filed a false misbehavior report against Plaintiff in **retaliation** for Plaintiff's grievance against Defendant Scally, and that as a result of this false report, Plaintiff was placed in SHU on a shower and exercise deprivation order for over 30 consecutive days. (*Id.* at ¶¶ 80, 93).

As an initial matter, Defendant Scally's sexual comments and gestures do not constitute adverse action to sustain a **retaliation** claim. Insulting or disrespectful comments directed to an inmate do not rise to the level of an adverse action. *Davis,* 320 F.3d at 353 (" 'sarcastic' comments, without more, do not constitute an adverse action."). However, Plaintiff has sufficiently alleged that he was subjected to the adverse action of a false misbehavior report in response to his protected activity of filing a grievance against Defendant Scally. *See Jones,* 45 F.3d at 679–80. Plaintiff has sufficiently alleged a causal connection between his protected

activity and the adverse action because the events occurred within the course of one day. *See Espinal,* 558 F.3d at 129.

As a result, Plaintiff may proceed with his ==retaliation== claim as against Defendants Atkins, Scally, Guest, Amatore, and McGowan, based upon events allegedly occurring on March 2, 2009.

### 5. April 16, 2009

 **[95]** Plaintiff alleges that Defendants Newton, Horan, Jolly, and Krenzer engaged in ==retaliation== by issuing a false misbehavior report and placing Plaintiff on a shower and exercise deprivation order on April 16, 2009, after Defendant Atkins saw a copy of Plaintiff's legal petition earlier in the day. (Dkt. 95 at ¶¶ 85–86). Plaintiff further claims that Defendant Harling was notified of this alleged violation of Plaintiff's rights but failed to do anything in response. (*Id.* at ¶ 87).

Plaintiff's pursuit of legal remedies constitutes protected activity. As previously noted, the filing of a false misbehavior report constitutes an adverse action. *See Jones,* 45 F.3d at 679–80. However, Plaintiff has failed to allege facts to support a causal connection between his protected activity and the adverse action. Plaintiff claims that Defendant Atkins viewed his legal petition, not Defendants Newton, Horan, Jolly, or Krenzer. (Dkt. 95 at ¶¶ 85–86). Plaintiff has failed to allege that the individuals he claims filed a false **\*733** misbehavior report against him even had knowledge of his protected activity. Accordingly, his ==retaliation== claim against Defendants Newton, Horan, Jolly, and Krenzer is dismissed. As a result, Plaintiff cannot state a claim against Defendant Harling, because there is no underlying violation of Plaintiff's rights. *See Murray,* 2007 WL 956941, at *7.

### 6. May 4, 2009

Plaintiff alleges that Defendants Scally, Amatore, and Atkins engaged in ==retaliation== by filing a false misbehavior report against Plaintiff on May 4, 2009, which resulted in Plaintiff being placed on a 23–day "styro-foam tray order." (Dkt. 95 at ¶¶ 58, 90).

Again, Plaintiff alleges that Defendants filed a false misbehavior report against him in ==retaliation== for his filing of grievances. However, Plaintiff does not allege when the underlying grievances were filed in relation to when the false misbehavior report was issued, nor does Plaintiff indicate that he was "vindicated" on the matter, or that Defendants made a comment indicating ==retaliatory== intent. *See Shariff,* 689 F.Supp.2d at 479. In other words, Plaintiff does not allege facts to support a causal connection between his protected activity and the adverse action.

Therefore, Plaintiff's ==retaliation== claim as against Defendants Scally, Amatore, and Atkins related to the May 4, 2009 misbehavior report is dismissed.

### K. Denial of Due Process of Law

 **[96]** **[97]** "To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property. Merely negligent conduct does not give rise to claims under the Fourteenth Amendment." *Jabbar v. Fischer,* 683 F.3d 54, 57 (2d Cir.2012) (citations omitted).

### 1. Liberty Interest

 **[98]** **[99]** "A ==prisoner's== liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes [an] atypical and significant hardship on the inmate in relations to the ordinary incidents of prison life." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quotation omitted). "Factors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Id.* (quotations omitted).

 **[100]** SHU confinements of 30 to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.' " *Tafari,* 714 F.Supp.2d at 375 (quoting *Palmer,* 364 F.3d at 65).

#### a. March 2, 2009 SHU Assignment

 **[101]** Plaintiff claims that he was subjected to unconstitutional conditions of confinement when Defendants

Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer placed Plaintiff in SHU on a shower and exercise deprivation order for over 30 consecutive days. (Dkt. 95 at ¶ 80). Plaintiff alleges that these conditions caused him "extreme outrageous emotional distress, physical suffering and mental anguish." (*Id.* at ¶ 80).

"Although courts should accord deference to prison officials in determining whether restrictions imposed upon a pretrial detainee are reasonably related to a legitimate governmental objective, the Second Circuit has held that an extreme restriction may smack of punishment so as to warrant a factual inquiry into whether such a restriction is actually related to a **\*734** legitimate governmental interest." *Valdez v. City of New York,* No. 11–CV–5194, 2014 WL 2767201, at \*2 (S.D.N.Y. June 17, 2014).

Here, the 30–day consecutive assignment to SHU is considered a "short term" assignment to SHU, and did not deny Plaintiff a liberty interest. As a result, Plaintiff may only sustain a due process claim with respect to this period of SHU time if he was subjected to abnormal conditions in SHU. At least at this stage of the litigation, Plaintiff has plausibly alleged such abnormal conditions. Plaintiff alleges that he was deprived of shower and exercise for over 30 consecutive days, a time frame that extends far beyond the two week timeframe found acceptable for such deprivations in this Circuit. *See Flake v. Peck,* No. 9:12–cv–00517 (MAD/ATB), 2014 WL 1289582, at \*22 (N.D.N.Y. Mar. 31, 2014) ("[T]his Circuit has rejected claims of shower deprivation, lasting up to two weeks.") (collecting cases); *Johnson v. Colvin,* No. 09–CV–6413–CJS, 2013 WL 775357, at \*4 (W.D.N.Y. Feb. 28, 2013) ("temporary deprivations of showers for periods of approximately two weeks ... do not satisfy the objective component of a claim of cruel and unusual punishment"); *Gardner v. Mental Health Unit of Sullivan Corr. Facility,* No. 07 Civ. 5535(WHP), 2009 WL 1834382, at \*2 (S.D.N.Y. June 17, 2009) ("denying a ==prisoner== the opportunity to shower for seven days and withholding toiletries, while uncomfortable, does not endanger an inmate's health and safety").

Plaintiff may proceed with his due process claim as against Defendants Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer with respect to his 30–day consecutive SHU assignment that began on March 2, 2009.

### b. SHU Assignments November 27, 2008 through August 30, 2009

In addition to the March 2, 2009 SHU assignment, Plaintiff objects to the various SHU assignments he received between November 27, 2008 and August 30, 2009. (Dkt. 95 at ¶ 97). All but one of the assignments he contests has previously been examined and affirmed by the state courts. As a result, those claims are barred by the doctrine of collateral estoppel.

Even if Plaintiff's claims were not barred by collateral estoppel, none of the assignments to SHU that Plaintiff objects to extend beyond the "short range" of disciplinary confinement, nor does Plaintiff allege that he was subjected to abnormal conditions as to these particular assignments, and as a result, Plaintiff's allegations do not implicate a liberty interest. (*See* Dkt. 95 at ¶ ¶ 97(a)(30 days); (b)(30 days); (c)(7 days); (d)(14 days); (e)(20 days); (f)(30 days); (g)(42 days); (h)(20 days); (i)(20 days)). The single SHU assignment that Plaintiff had not contested in a prior state action resulted from a March 14, 2009 hearing imposing 14 days of SHU time. (Dkt. 95 at ¶ 97(d)). This 14 day assignment does not implicate a liberty interest, and furthermore, Plaintiff does not allege that he was subjected to abnormal conditions.

### 2. Due Process

**[102]** "The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell,* 418 U.S. 539, 564–69 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974)." *Graham,* 2013 WL 5924727, at \*2. The constitutionally mandated due process requirements include: "(1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and present witnesses **\*735** and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense." *Id.*

### a. October 11, 2008

Plaintiff claims that he was placed in SHU on October 11, 2008, without due process of the law. (Dkt. 95 at ¶ 77). Although Plaintiff makes the conclusory statement that his constitutional rights were violated, Plaintiff does not allege how his due process rights were violated. Accordingly, this claim is dismissed.

#### b. November 19, 2008

[103] Plaintiff argues that his placement in SHU on November 18, 2008, was in violation of his due process rights. (Dkt. 95 at ¶ 65). Plaintiff further contends that he was supposed to be released from SHU on December 17, 2008, but was kept in SHU until December 23, 2008 "without adequacy of any due process of law" as a result of Defendant Atkins filing false reports and log entries. (*Id.* at ¶ 77). Here, Plaintiff's due process claims are primarily based on his allegations that the charges against him were false, and were based on false misbehavior reports. (*See e.g.,* Dkt. 95 at ¶¶ 47, 58, 80, 93). "However, even if the charges were false, this does not amount to a due process violation as long as plaintiff was afforded a fair opportunity to refute the charges." *Graham,* 2013 WL 5924727, at *2. Plaintiff does not allege that he was denied a fair opportunity to refute the charges against him. Accordingly, his claim is dismissed.

#### c. March 2009—August 2009 Conditions

[104] Plaintiff alleges that the requirement that he remain in full mechanical restraints during his isolated morning exercise period from March 2009 through August 2009, violated his rights under the due process and equal protection laws of the New York State and United States Constitutions. (Dkt. 95 at ¶ 88).

Plaintiff does not allege what facts or circumstances led up to this requirement, nor does he allege how he was prevented from exercising his rights under the due process clause in relation to this requirement. Accordingly, Plaintiff's due process claim with respect to this requirement is dismissed.

#### d. Administrative Hearings November 27, 2008 through August 30, 2009

Plaintiff alleges that Defendants violated a laundry list of New York regulations as well as the Fourteenth Amendment during nine administrative hearings conducted between November 27, 2008 and August 30, 2009. (Dkt. 95 at ¶ 97). Again, Plaintiff's concerns about all but one of these hearings were previously addressed in his state court proceedings. Accordingly, Plaintiff may only raise due process claims as to the March 14, 2009 hearing in this action, which was not previously addressed in state court. Plaintiff does not raise any factual allegations to describe how his due process rights were violated at the March 14, 2009 hearing. As a result, Plaintiff's claim is dismissed.

#### e. Lack of Supervisory Response to Plaintiff's Complaints

Plaintiff claims that he filed numerous grievances, complaints, and appeals with Defendants Harling and Krenzer in relation to the alleged mistreatment by Defendants Atkins, Scally, Newton, Willis, Guest, Amatore, and DeRosa, but states that Defendants Harling and Krenzer continued to show "deliberate indifference" to Plaintiff's concerns. (*Id.* at ¶ 59).

**\*736** These claims against Defendants Harling and Krenzer are dismissed. As previously noted with respect to Defendant O'Flynn, "the receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo,* 682 F.Supp.2d at 430 (citing *Sealey,* 116 F.3d at 51). The mere fact that Defendants Harling and Krenzer received Plaintiff's numerous grievances, complaints, and appeals does not impute personal involvement to these Defendants. *See Dorsey v. Fisher,* No. 9:09–CV–1011GLSDEP, 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010) ("An allegation that an official ignored a <mark>prisoner's</mark> letter of protest or a request for an investigation of allegations contained in the letter is insufficient to hold that official liable for the alleged violations."). To the extent that Plaintiff asserts claims against these Defendants for their failure to respond to his complaints, these claims are dismissed.

Plaintiff also claims that Defendants Lipari and Harling provided fraudulent responses to Plaintiff's grievance 09–33, and excluded four witness statements in connection with Plaintiff's grievance 09–49, contributing to Defendant County of Monroe's "faulty" grievance program. (*Id.* at ¶ 94).

Plaintiff's conclusory allegations are not supported by any factual allegations as to how the alleged responses were fraudulent, or how the testimony of the four witnesses

who were allegedly excluded would have provided him due process. As a result, this claim is also dismissed.

### f. Improper Investigations

Plaintiff alleges that Defendants Lipari, Guest, S. Peck, and Shellard did not appropriately conduct their investigations against supervisors in relation to Plaintiff's grievances 09–01, 09–32, 09–35, 09–46, 09–49, 09–81, 09–88, and 09–89, in violation of Plaintiff's rights under 7 NYCRR § 701.8(d)(1) and the First and Fourteenth Amendments to the U.S. Constitution. (*Id.* at ¶ 95). "[A]n inmate has no constitutional right to have his grievances processed or investigated in any particular manner." *Green,* 677 F.Supp.2d at 639 (internal quotations and citation omitted). Further, Plaintiff does not allege how the investigations were improper. Accordingly, these claims are dismissed.

Plaintiff generally claims that the investigation into his grievance 09–01 was biased and prejudiced, in violation of his right to redress of grievances. (*Id.* at ¶ 96).

"Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington,* 968 F.Supp.2d at 541–42. "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Booker,* 2014 WL 1289579, at *11. As a result, this claim is dismissed.

## L. Equal Protection

**[105]  [106]  [107]** "The equal protection clause directs state actors to treat similarly situated people alike. To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (citations omitted). "In other words, '[t]o prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Randle,* 960 F.Supp.2d at 476 (quoting *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (citation omitted)).

**[108]** "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty.* **\*737**

*Hope Found.,* 538 U.S. 188, 194, 123 S.Ct. 1389, 155 L.Ed.2d 349 (2003) (quotation omitted).

**[109]** Here, Plaintiff makes various claims that he has been discriminated against because he is a racial minority, and that other racial minorities are similarly discriminated against. (*See, e.g.* Dkt. 95 at ¶¶ 71–74). However, Plaintiff never makes any allegations of fact to support a racially discriminatory intent or purpose for the application of otherwise neutral policies. For example, Plaintiff alleges in a conclusory fashion that racial minorities are disproportionately placed in SHU and subsequently deprived of access to public information; however, Plaintiff does not allege that non-minority inmates who commit similar policy violations were not also placed in SHU and subject to the same deprivations. (*Id.* at ¶ 73). As a result, to the extent that Plaintiff alleges violations of the equal protection clause or discrimination, these claims are dismissed.

Plaintiff alleges that the requirement that he remain in full mechanical restraints during his isolated morning exercise period from March 2009 through August 2009 violated his rights under the due process and equal protection laws of the New York State and United States Constitutions. (*Id.* at ¶ 88). However, beyond making this conclusory allegation, Plaintiff does not explain how this requirement in any way injured him or violated his rights. Accordingly, any claim Plaintiff may allege as to the requirement that he remain in full mechanical restraints during exercise from March 2009 through August 2009 is dismissed.

## M. Conditions of Confinement

**[110]  [111]** Under the Eighth Amendment, officials may not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety." *Overton v. Bazzetta,* 539 U.S. 126, 137, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). However, "because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim." *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999). "To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Walker v. Schult,* 717 F.3d 119, 125 (2d Cir.2013) (internal quotations omitted).

The Second Circuit has explained:

> To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health. Thus, prison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions. There is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary ==standards== of decency. Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.
>
> To meet the subjective element, the plaintiff must show that the defendant acted with more than mere negligence. To constitute deliberate indifference, the prison official must know of, and disregard, an excessive risk to inmate health **\*738** or safety. Evidence that the risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant actually aware of the risk.

*Id.* (quotations and citations omitted).

### 1. December 23, 2008

**[112]** Plaintiff asserts a conditions of confinement claim, insofar as he alleges that after he was released from SHU on December 23, 2008, he was placed in a cell that was "atrociously unsanitary disgustingly filthy with excrement, urine, feces and spew all over walls, ceiling, floor and bars for (3) three more consecutive days where ventilation system were non-existent and cell smell toxicly[sic] aweful[sic]...." (Dkt. 95 at ¶ 60). Defendants argue that Plaintiff has failed to meet his burden to allege that he suffered a serious deprivation and that the officials who caused the harm did so with deliberate indifference to Plaintiff's health or safety. (Dkt. 119–2 at 19).

**[113]** "[U]nsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker,* 717 F.3d at 127. At this stage in the litigation, Plaintiff has alleged the objective prong of his conditions of confinement claim. Plaintiff has alleged that he was exposed to human excrement and bodily fluids in a poorly ventilated cell over the course of multiple days. *See Gaston v. Coughlin,* 249 F.3d 156, 166 (2d Cir.2001) ("We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end.").

Although Plaintiff has not specifically alleged that Defendants had knowledge of this condition, Defendants' knowledge may be inferred by the simple fact that these Defendants must have viewed the conditions of the cell when they placed Plaintiff in it. *See Brock v. Wright,* 315 F.3d 158, 164 (2d Cir.2003) ("[E]vidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it."); *see also Gaston,* 249 F.3d at 166 (finding Plaintiff's allegation that defendant prison guards "made daily rounds of SHU" was sufficient to allege that defendants had actual knowledge of the inhumane conditions). Plaintiff has sufficiently pled that Defendants Jolly, Horan, Kaiser, DeRosa, McGowan, Knapp, Kennelly, Cardella, S. Peck, and Tripoli disregarded Plaintiff's safety by leaving him housed in these unsanitary conditions. (Dkt. 95 at ¶ 60).

### 2. February 27, 2009—March 2, 2009

**[114]** Plaintiff alleges that he was subjected to poor conditions of confinement when he was inappropriately housed in a booking cell on a shower and exercise deprivation order by Defendants T. Peck, Mooney, Waud, Dimartino, and Jolly from February 27, 2009 through March 2, 2009. (*Id.* at ¶ 79).

To the extent Plaintiff alleges that his inability to shower over the course of four days constitutes a constitutional deprivation, his claim must fail. Even a two-week suspension of shower privileges does not constitute a denial of "basic hygienic needs." *McCoy,* 255 F.Supp.2d at 260 (citing *Cruz v. Jackson,* No. 94 Civ. 2600(RWS), 1997 WL 45348, at *6 (S.D.N.Y. Feb. 5, 1997)). Similarly, Plaintiff's exercise deprivation over the course of four days does not rise to the level of an objective constitutional violation. *See Dillon v. City of New York,* No. 12 Civ. 6746(LAP), 2013 WL 3776252, at *4 (S.D.N.Y. July 18, 2013) ("Courts have held that deprivation of exercise for periods **\*739** as long as fourteen days does not violate the Eighth Amendment.").

In addition, Plaintiff has entirely failed to allege the subjective portion of his claim; only arguing that he was "housed in booking" by Defendants. (Dkt. 95 at ¶ 79).

Accordingly, Plaintiff's conditions of confinement claim related to his SHU housing from February 27, 2009 through March 2, 2009, is dismissed.

### 3. Lighting in SHU

Plaintiff claims that the conditions in SHU are extreme, insofar as the lights above the beds remain on 24 hours per day, allegedly causing "sleeplessness excruciating headaches, eye pains, anxiety, mental anguish and endless pain and suffering." (Dkt. 95 at ¶ 73). Defendants do not directly address Plaintiff's allegations, stating only that Plaintiff "makes broad conclusions" including statements about "lack of reading materials, lighting, and one incident of a strip search...." (Dkt. 119–2 at 19). Defendants generally argue that Plaintiff failed to meet his burden to demonstrate a serious deprivation and deliberate indifference as to all allegations of unsanitary conditions. (*Id.*). Defendants have failed to sufficiently argue that Plaintiff has failed to state a claim.

 **[115]**  "[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker,* 717 F.3d at 126 (citing *Tafari,* 714 F.Supp.2d at 367). "Requiring inmates to live in constant illumination can also, under certain circumstances, rise to the level of an Eighth Amendment violation." *Jones v. Rock,* No. 9:12–cv–0447 (NAM/TWD), 2013 WL 4804500, at *10 (N.D.N.Y. Sept. 6, 2013) (collecting cases). Accordingly, Plaintiff has sufficiently alleged a conditions of confinement claim under the Fourteenth Amendment with respect to his allegations that he was subjected to extreme conditions in SHU by way of the 24 hour lighting by Defendants Harling, Krenzer, Thomas, Jolly, Horan, Dimartino, and Lipari.

### N. Verbal Threats

#### 1. February 26, 2009

 **[116]**  Plaintiff alleges that Defendants Waud, DeRosa, and Thibaut made various verbal threats against him on February 26, 2009. Plaintiff claims that Defendant Waud called Plaintiff a "piece of shit that likes to file grievances on staff." (Dkt. 95 at ¶ 46). Plaintiff alleges that Defendant

DeRosa stated: "Hey Jessie I see you got your ass kicked that is good for you they did a pretty good job this time." (*Id.* at ¶ 49). Plaintiff does not allege that these statements caused him any injury.

Although these comments do not clearly represent threats, to the extent that the complaint may be read to allege an Eighth Amendment claim against Defendants Waud or DeRosa based on their alleged verbal harassment of Plaintiff on February 26, 2009, such conduct is not actionable under § 1983. *McCoy,* 255 F.Supp.2d at 261; *see also Harris v. Keane,* 962 F.Supp. 397, 406 (S.D.N.Y.1997) ("Allegations of threats, verbal harassment of profanity, without any injury or damage, do not state a claim under § 1983.").

Plaintiff also claims that Defendant Thibaut was discussing a movie with Defendant Raby when he stated: "Oh he got his ass kicked and fell back down to earth, like somebody on 3M just got their ass kicked." (Dkt. 95 at ¶ 51). Plaintiff claims that this statement caused him to violently "shake uncontrollably." (*Id.* at ¶ 51). "It is well settled law in this Circuit that '42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.' " *Murray,* 2007 WL 956941, at *8 (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)). Here, Defendant Thibaut's comment is not a threat so much as it is a comment, albeit **\*740** an arguably insensitive one. This comment alone cannot sustain a constitutional claim. As this is the only claim raised against Defendant Thibaut, Defendant Thibaut is dismissed from this lawsuit.

#### 2. May 2, 2009

Plaintiff alleges that Defendant Gatti stood in front of Plaintiff's cell on May 2, 2009, called Plaintiff a "nigger," and said that he would kill Plaintiff. (Dkt. 95 at ¶ 56). It is well-settled that verbal harassment and name-calling on the part of prison officials do not constitute actionable constitutional violations. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986). However, Defendant Gatti's alleged threat that he would kill Plaintiff presents a closer question.

 **[117]**  "Verbal harassment itself does not rise to the level of a constitutional violation. Verbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations." *DeJesus v. Tierney,* No. 9:04–CV–298, 2006 WL 839541, at *11 (N.D.N.Y. Mar. 28, 2006); *see also Kemp v. LeClaire,* No. 03–0844, 2007 WL 776416, at *15 (W.D.N.Y.

Mar. 12, 2007) (statements like "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" not adverse actions). *Cf. Ford v. Palmer,* 539 Fed.Appx. 5, 6 (2d Cir.2013) (direct threat to poison inmate-plaintiff constituted an adverse action).

Defendant Gatti's alleged statement that he would kill Plaintiff is too general to support a constitutional claim. Plaintiff alleged that he had never interacted with Defendant Gatti before, and he does not allege that he interacted with Defendant Gatti again. In fact, this alleged threat is the only time Plaintiff even references Defendant Gatti in his complaint. (Dkt. 95 at ¶ 56). "[P]laintiff has not alleged that he was ever physically threatened and, without more, his allegations of verbal threats, abusive language and racial epithets cannot form the basis of a section 1983 claim." *Amaker v. Foley,* No. 94–CV–0843E(SR), 2003 WL 21383010, at *4 (W.D.N.Y. Feb. 18, 2003). Accordingly, Plaintiff's claim against Defendant Gatti is dismissed.

#### O. Falsification of Medical Records

Plaintiff alleges that on February 26, 2009, former Defendant Muller deliberately omitted an incident where Plaintiff was vomiting blood from her medical notes in order to downplay his injuries. (*Id.* at ¶ 103). Plaintiff voluntarily dismissed Ms. Muller with prejudice, and Ms. Muller was dismissed from this matter by Court order on July 12, 2013. (Dkt. 135). Plaintiff does not allege that any other Defendants engaged in falsification of medical records. As a result, Plaintiff's falsification of medical records claim is dismissed.

#### P. Qualified Immunity

[118] Defendants assert that they are entitled to qualified immunity on all of Plaintiff's claims because any conduct was made in the course of their employment and "did not reasonably violate established law." (Dkt. 119–2 at 10). "Although ... claims of qualified immunity should be decided as early as possible in a case, it would be premature to dismiss the case now on this basis. Rather, ... qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." *Walker,* 717 F.3d at 130.

Because the Court finds that Plaintiff's complaint plausibly alleges several causes of action, further facts are required to decide the question of qualified immunity. For example, if Defendant Newton premeditated the attack on Plaintiff on August 7, 2008, this would clearly be outside of the scope of

Defendant Newton's employment, and thus would not entitle Defendant Newton to qualified immunity.

**\*741** Accordingly, Defendant's request for judgment on the pleadings on the basis of qualified immunity is denied.

### III. Defendant Ellie Holman's Motion for Judgment on the Pleadings

At the time of Plaintiff's pre-trial holding at MCJ, Defendant Ellie Holman ("Ms. Holman") was employed by CMC as a registered nurse assigned to work at MCJ. (Dkt. 120–1 at ¶ 3). [3] In his complaint, Plaintiff claims that Ms. Holman "with shocking repugnant and reckless callous disregard blurted out following statement: 'Oh Jessie Barnes always gets his ass kicked' " when he arrived at the nurse's station for treatment after an altercation. (Dkt. 95 at ¶ 53). However, Plaintiff does not state how this alleged comment by Ms. Holman (which Ms. Holman denies (Dkt. 102 at ¶ 53)) impacted his rights. Further, as Ms. Holman notes, Plaintiff has failed to allege that she denied him medical care or provided him with inadequate medical care. (Dkt. 120–1 at ¶ 137). As a result, Plaintiff has entirely failed to state a claim with regard to Ms. Holman, and Ms. Holman's motion for judgment on the pleadings is granted.

### IV. Plaintiff's Request to Convert Defendants' Motion for Judgment on the Pleadings into a Motion for Summary Judgment

Plaintiff requests that the Court convert Defendants' motion for judgment on the pleadings into a motion for summary judgment and grant Plaintiff summary judgment on the basis of "ample evidence against the Defendants" and Defendants' "generalized and conclusory **motion** to **dismiss**." (Dkt. 133–3 at 33).

"A district court must convert a motion for judgment on the pleadings into one for summary judgment if the motion includes material 'outside the pleadings' and that material is 'not excluded by the court.' " *Sira,* 380 F.3d at 66 (quoting Fed.R.Civ.P. 12(d)).

Here, there is no basis to convert Defendants' motion into a motion for summary judgment. To the extent that Plaintiff seeks summary judgment in his favor, this request is denied without prejudice as premature. *See Brunson v. Jonathan,* 727 F.Supp.2d 195, 199 (W.D.N.Y.2010) ("Factual issues remain to be decided with respect to the merits of [Plaintiff's] claims. Whether those issues may at some point be properly

disposed of on a motion for summary judgment, on a more complete record than the one before [the Court], remains to be seen, but at this point summary judgment would plainly be premature.").

### CONCLUSION

For the foregoing reasons, County Defendants' motion (Dkt. 119) is granted in part and denied in part, Defendant Holman's motion (Dkt. 120) is granted, Plaintiff's motion for recusal (Dkt. 142) is denied, and Plaintiff's request to convert his response into a motion for summary judgment (Dkt. 133) is denied.

The Clerk of Court is directed to lift the stay of discovery (Dkt. 138).

The following claims may proceed to discovery: (1) August 7, 2008 Excessive Use of Force against Defendant Newton; **\*742** (2) August 12, 2009 Excessive Use of Force against Defendants Shellard, Daly, Galen, and Alberti; (3) August 7, 2008 Conspiracy against Defendants Amico, Danehy, and Newton; (4) August 7, 2008 Failure to Protect against Defendants Amico, Danehy, and Newton; (5) January 19, 2009 Failure to Protect against Defendants Tripoli, Waud, and Willis; (6) May 2, 2009 Failure to Protect against Defendant Willis; (7) August 12, 2009 Failure to Protect against Defendant Lipari; (8) February 26, 2009 Retaliation against Defendant Waud; (9) March 2, 2009 Retaliation against Defendants Atkins, Scally, Guest, Amatore, and McGowan; (10) December 23, 2008 Conditions of Confinement claim against Defendants Jolly, Horan, Kaiser, DeRosa, McGowan, Knapp, Kennelly, Cardella, S. Peck, and Tripoli; (11) Conditions of Confinement lighting claim against Defendants Harling, Krenzer, Thomas, Jolly, Horan, Dimartino, and Lipari; and (12) Due Process claim as against Defendants Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer with respect to Plaintiff's 30–day consecutive SHU assignment that began on March 2, 2009. The Court has considered Plaintiff's remaining claims and finds them to be without merit.

The Clerk of Court is further directed to terminate Defendants County of Monroe, Brooks, O'Flynn, Caceci, Kloner, Mooney, Kimball, Gatti, Pratt, Inipoli, Preston, T. Peck, Carlo, Messura, Kluth, Luther, Raby, Fitzsimmons, Palma, DiFlores, Jane Doe Nurse, Nurse Mary, Domalski, Meister, Robinson, Holman, Miller, Rizzo, and Thibaut as parties to this action.

SO ORDERED.

**All Citations**

85 F.Supp.3d 696

### Footnotes

1    Although Defendants Kloner, Inipoli, DiFlores, Nurse Mary, and Jane Doe Nurse are each listed in the caption to this action, at no time throughout Plaintiff's third amended complaint does he allege that these individuals engaged in any activity or violated Plaintiff's rights under state or federal law. As a result, these Defendants are dismissed. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quotation omitted).

   Further, service of the summons and complaint in this matter was never made upon Defendant Palma. Pursuant to Fed.R.Civ.P. 4(m), service of the summons and complaint must be made upon a defendant within 120 days after their filing. Plaintiff has not shown good cause for his failure to serve Defendant Palma, but simply claims that the Clerk of the Court "failed to make service" on Defendant Palma. (Dkt. 133–1 at 3; 133–3 at 23). Accordingly, Defendant Palma is dismissed.

2    Cynthia L. Muller is also listed as a Defendant on this motion, however, Plaintiff voluntarily dismissed Ms. Muller with prejudice, and Ms. Muller was dismissed by Court order on July 12, 2013. (Dkt. 135).

3    Ms. Holman was not named as a defendant in Plaintiff's original complaint, however, Judge Siragusa added Ms. Holman as a named defendant in place of "Jane Doe Nurse working on February 27, 2009" at paragraphs 16, 61, and 62 of Plaintiff's second amended complaint, by Court order. (Dkt. 92). Plaintiff then incorporated Ms. Holman by name in his third amended complaint. (Dkt. 95 at ¶ 53).

  © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 876464
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Gregory GARVIN, Plaintiff,

v.

Warden Luis RIVERA, et al., Defendants.

No. 13–cv–7054 (RJS).
|
Signed Feb. 28, 2015.

### OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge.

**\*1** Plaintiff, proceeding *pro se* and *in forma pauperis,* brings this action pursuant to 42 U.S.C. § 1983 ("section 1983") for injuries arising out of prison lockdowns that allegedly took place at the Anna M. Kross Center ("AMKC"), a prison facility on Rikers Island operated by the New York City Department of Correction (the " 'DOC'). Now before the Court is Defendants' partial motion to dismiss the Complaint, and Plaintiff's motion for the appointment of *pro bono* counsel. For the reasons set forth below, both parties' motions are denied without prejudice to renewal.

### I. BACKGROUND [1]

Plaintiff alleges that while he was an inmate at the AMKC prison facility, two administrative lockdowns took place in late July to early August of 2013 on the tier in which he was housed-one for five days and another for three to four days. (Compl. at 4.) During these alleged lockdowns, Plaintiff claims that he was deprived of: (1) hot water; (2) showers; (3) food; (4) visits; (5) phones; (6) access to the law-library; and (7) sanitary cell conditions. (*Id.*) Plaintiff also alleges that on July 31, 2013, he was assaulted by correctional officers and denied medical treatment, ultimately suffering from: (1) a headache; (2) a swollen eye; (3) a laceration next to his eye; (4) stomach pain; (5) intense vomiting; (6) severe back pain; and (7) a bloody nose. (Compl. at 11.) As a result of the "mental duress, physical abuse, and emotional torture" caused by Defendants, Plaintiff seeks monetary damages of $750,000 and medical treatment. (Compl. at 12.)

### II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests."*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)."A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns,* 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."*Twombly,* 550 U.S. at 555. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."*Id.* at 570. Although the Court construes the Complaint liberally because Plaintiff is *pro se,* the complaint must still contain factual allegations that raise a "right to relief above the speculative level" in order to survive a motion to dismiss. *Dawkins v. Gonyea,* 646 F.Supp.2d 594, 603 (S.D.N.Y.2009) (quoting *Twombly,* 550 U.S. at 555) (internal quotation marks omitted).

**\*2** On a motion to dismiss, the Court may consider, in addition to the complaint itself, "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."*Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations and quotation marks omitted); *see also Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

### III. DEFENDANTS' MOTION TO DISMISS

Defendants raise a number of grounds why Plaintiff's conditions of confinement and deliberate indifference claims must be dismissed—including his failure to allege that

the lockdown was punitive in nature and his failure to allege deprivations that rise to the level of a constitutional violation.[2] As discussed below, the Court finds that while it appears from the face of the Complaints that Plaintiff has not complied with the administrative exhaustion requirement of the Prison Litigation Reform Act (the "PLRA"), Plaintiff should be given an opportunity to set forth facts that could excuse his failure to exhaust. Accordingly, the Court denies Defendants' motion to dismiss without prejudice to renewal as a motion for summary judgment on the issue of administrative exhaustion. Because Plaintiff's failure to exhaust administrative remedies would entirely dispose of Plaintiff's conditions of confinement and deliberate indifference claims, the Court does not reach the other grounds for dismissal urged by Defendants.[3]

The PLRA, which Congress passed to reform and streamline the consideration of prisoner lawsuits by federal courts, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Because the failure to exhaust administrative remedies is an affirmative defense, prisoner plaintiffs are "not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). However, a court may still dismiss a prison condition suit on a Rule 12(b)(6) motion if the allegations of the complaint show that the plaintiff has failed to comply with the administrative exhaustion requirement. *Id.* at 215–16 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.... [That administrative exhaustion need not be pleaded] is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim."). In other words, although a complaint cannot be dismissed for failing to plead that administrative remedies were exhausted, it *can* be dismissed if it pleads facts demonstrating that administrative remedies were *not* exhausted. *See Williams v. Dep't of Corr.,* No. 11–cv–1515 (SAS), 2011 WL 3962596, at *5 (S .D.N.Y. Sept. 7, 2011) ("Dismissal for failure to exhaust administrative remedies is appropriate where, on the face of

the Complaint, it is clear that plaintiff did not exhaust such remedies.").

**\*3** The DOC administers an administrative grievance procedure, the Inmate Grievance and Request Program ("IGRP"), for inmates at its facilities, including the AMKC. The IGRP, which is set forth in DOC Directive 3376, applies to grievances about the following prison conditions: (1) clothing, (2) commissary, (3) correspondence/mail, (4) food, (5) housing, (6) law library, (7) mental and medical health complaints involving DOC personnel, (8) personal hygiene, (9) phone use, (10) recreation, and (11) religious observance and expression. IGRP App. A. Under the IGRP, a prisoner who wishes to file a grievance must file a form with IGRP staff within ten business days of the condition giving rise to the grievance. *Id.* §§ II.F, IV.B.1. IGRP staff are required to provide an "informal resolution" within five business days of receiving the form. *Id.* § II.F. The dispositions of IGRP staff are appealable through several layers of review, up to the DOC's Central Office Review Committee ("CORC").*Id.* § II.G (providing for appeal of IGRP staffs disposition to Inmate Grievance Resolution Committee, then to facility's Commanding Officer, then to the CORC). The administrative process is complete only when the CORC has issued its disposition. *Id.* The decisionmakers at each level of review must issue their decisions within certain time limits, *id.* §§ IV.G.1, H.1, 1.2, J.5.a-b, and an inmate may appeal if he "does not receive a timely disposition at any stage of the IGRP process,"*id.* § IV.D.10.

Here, it is clear from the face of the Complaint that Plaintiff did not exhaust the IGRP procedure. Plaintiff specifically pleads that he initiated the administrative process by filing a grievance, but concedes that he did not appeal that decision. Specifically, in response to the question "Describe all efforts to appeal," Plaintiff wrote "N/A" because "nothing was done" following the filing of his grievance. (Compl. at 5.) Thus, Plaintiff did not exhaust administrative remedies, since he made no effort to continue the process after he received no response to his initial grievance.

However, the conclusion that Plaintiff failed to exhaust the IGRP procedure does not end the inquiry. Under certain circumstances, a plaintiff's failure to exhaust administrative remedies may be excused. This inquiry is generally guided by the three-part framework established by the Second Circuit in *Hemphill v. New York,* which considers: (1) "whether administrative remedies were in fact available to the prisoner," (2) "whether the defendants may have forfeited the

affirmative defense of non-exhaustion by failing to raise or preserve it or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense," and (3) "whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." 380 F.3d 680, 686 (2d Cir.2004). [4]

**\*4** Here, the first *Hemphill* factor does not excuse Plaintiff's failure to exhaust: on the face of the Complaint, it is clear that administrative relief was available to Plaintiff through the IGRP process. "To be available under the PLRA, a remedy must afford the possibility of some relief for the action complained of." *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004) (internal quotation marks omitted). There can be no dispute that each of the conditions complained of by Plaintiff falls within one of the categories to which the IGRP applies. *See* IGRP App. A. Indeed, the Complaint all but concedes that the IGRP process was in fact available to Plaintiff, and that Plaintiff started the process by filing a grievance. (Compl. at 5.) The alleged unresponsiveness of IGRP staff to Plaintiff's grievances does not alter the conclusion that administrative remedies were available to Plaintiff. As discussed above, the IGRP sets deadlines for each stage of the process—including a five-business-day turnaround time for informal resolutions by IGRP staff—and explicitly permits inmates to file appeals if they do not ' "receive a timely disposition at *any stage* of the IGRP process." IGRP § IV.D.10 (emphasis added). Courts in this Circuit have consistently held that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies. *See, e.g., Johnson v. New York City Dep't of Correction,* No. 13–cv–6799 (CM), 2014 WL 2800753, at \*6 (S.D.N.Y. June 16, 2014) ("Assuming that Plaintiff filed a timely grievance ... and received no response within five business days[,] ... Plaintiff ... could have taken the next step and requested a hearing."); *Leacock v. New York City Health Hosp. Corp.,* No. 03–cv–5440 (RMB)(GWG), 2005 WL 483363, at \*7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore,* No. 99–cv–0966 (LMM)(THK), 2002 WL 91607, at \*8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if Plaintiff received no response to his initial grievance, Plaintiff could have sought the next level of review, in this case, to the prison superintendent."). Accordingly, the Court finds that administrative remedies were available to Plaintiff.

Furthermore, the Complaint does not allege any facts that would excuse non-exhaustion under the second and third *Hemphill* factors—estoppel and special circumstances. There are no allegations that AMKC staff retaliated against Plaintiff or prevented him from pursuing administrative remedies, as would be necessary to support an estoppel argument. [5] *See Ruggiero v. Cnty. of Orange,* 467 F.3d 170, 178 (2d Cir.2006). There are also no allegations of any special circumstances that would explain and justify Plaintiff's failure to complete the administrative process.

**\*5** That said, the Court is mindful that, under *Bock,* plaintiffs "are not required to specially plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. Thus, the Court cannot infer, from the mere absence of allegations that would support an estoppel or special circumstances argument, that no such arguments are available to Plaintiff. Where the merits of an administrative exhaustion defense cannot be determined from the face of a complaint, courts in this Circuit have frequently converted defendants' motions to dismiss to motions for summary judgment on the limited issue of administrative exhaustion. *See, e.g., McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003); *Stevens,* 2012 WL 4948051, at \*3; *Lovick v. Schriro,* No. 12–cv–7419 (ALC) (RLE), 2014 WL 3778184, at \*5 (S.D.N.Y. July 25, 2014). The Court takes that course here.

To be sure, some courts in this District and elsewhere have granted motions to dismiss in cases where, on the face of the complaint, it is clear that the prisoner plaintiff did not exhaust administrative remedies and where the complaint does not allege any facts supporting application of the *Hemphill* factors. *See, e.g., Jordan v. Fed. Bureau of Prisons,* No. 09–cv–8561 (ALC), 2013 WL 1143617, at \*6 (S.D.N.Y. Mar. 19, 2013); *Martin v. City of New York,* No. 11–cv–600 (PKC) (RLE), 2012 WL 1392648, at \*6–7 (S.D.N.Y. Apr. 20, 2012). However, this approach appears to be in tension with the Supreme Court's holding in *Bock* that prisoner plaintiffs are "not required to specially plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. In the Court's view, it is hard to reconcile the holding of *Bock*—that a plaintiff need not allege any facts about exhaustion *at all*—with the position that if a plaintiff alleges facts supporting an inference that he did not exhaust administrative remedies, he must then plead additional facts justifying his failure to do so under *Hemphill. Cf. Bailey v. Fortier,* No. 09–cv–0742 (GLS) (DEP), 2012 WL 6935254, at \*5–6 (N.D.N.Y. Oct. 4, 2012) (noting this tension). Furthermore, it is unrealistic to expect a

*pro se* plaintiff to know that the inclusion of facts reflecting his failure to exhaust administrative remedies triggers an affirmative duty to plead additional facts concerning the relevant *Hemphill* factors that would excuse his failure to exhaust. Absent a clear directive from the Supreme Court or the Second Circuit, the Court declines to impose such a draconian pleading requirement. Accordingly, the Court denies Defendants' motion to dismiss without prejudice to renewal as a Rule 56 motion for summary judgment on the issue of administrative exhaustion. [6]

### IV. PLAINTIFF'S APPLICATION FOR PRO BONO COUNSEL

On May 5, 2014, Plaintiff applied for the appointment of *pro bono* counsel. (Doc. No. 30.) Plaintiff previously made two applications for appointment of *pro bono* counsel, one which was denied by Judge Schofield by Order dated November 4, 2013 and the other which was denied by this Court by Order dated April 2, 2014. (Doc. Nos. 6 & 20.) The Court concludes that its prior determination from the April 2 Order—that the balance of the *Hodge* factors weigh against the appointment of counsel at this time—remains the case. The expected next steps in this litigation will involve Defendants' summary judgment motion on Plaintiff's failure to exhaust administrative remedies. This will require Plaintiff to respond to Defendants' statement of material fact pursuant to Local Civil Rule 56.1 ("56.1 statement") and set forth facts justifying his failure to exhaust under the three-pronged *Hemphill* analysis. The Court has no reason to doubt Plaintiff's ability to represent himself in this regard or to conduct discovery with respect to the excessive force claim that remains. Accordingly, Plaintiff's application for appointment of counsel is denied without prejudice to renewal.

### V. CONCLUSION

**\*6** For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' partial motion to dismiss is denied without prejudice to renewal as a motion for summary judgment on

the issue of administrative exhaustion. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 23.

IT IS FURTHER ORDERED THAT Plaintiff's application for appointment of *pro bono* counsel is denied without prejudice to renewal at a later point if additional grounds for the application are presented to the Court. Any renewed application should be accompanied by an affidavit establishing facts supporting the *Hodge* factors. The Clerk of the Court is respectfully directed to also terminate the motion pending at docket entry 30.

IT IS FURTHER ORDERED THAT Defendants shall file their motion for summary judgment no later than March 27, 2015. Plaintiff shall respond, if at all, no later than April 24, 2015. Defendant shall reply, if at all, no later than May 1, 2015. The parties shall submit 56.1 statements in connection with Defendants' motion.

The Court reminds Plaintiff that failure to submit responsive 56.1 statements will be deemed an admission of the facts set forth in Defendants' 56.1 statement. Local Civil Rule 56.1(c). The Court also reminds Plaintiff that he bears the burden of demonstrating exhaustion or excuse of exhaustion under the PLRA. Defendants shall serve Plaintiff with a copy of the notice required by Local Civil Rule 56.2, which Plaintiff should read carefully.

IT IS FURTHER ORDERED THAT discovery as to Plaintiff's conditions of confinement and deliberate indifference claims remains stayed pending resolution of Defendants' motion for summary judgment. However, IT IS FURTHER ORDERED THAT, by March 27, 2015, the parties shall submit a proposed case management plan and scheduling order as to discovery for Plaintiff's excessive force claim.

SO ORDERED.

**All Citations**

Slip Copy, 2015 WL 876464

---

Footnotes

1    The facts are drawn from the Complaint, which are assumed to be true for purposes of Defendants' motion. (Doc. No. 2 ("Compl.").) *See, e.g., Regan v. New York State Local Ret. Sys.,* 406 F. App'x 568 (2d Cir.2011).

2    Defendants have not moved to dismiss Plaintiff's excessive force claims. (Doc. No. 25.)

**3**    As discussed below, in the event that the Court denies summary judgment on the issue of administrative exhaustion, Defendants will be permitted to renew their motion to dismiss on these other grounds.

**4**    Following the Supreme Court's decision in *Woodford v. Ngo,* 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), holding that the PLRA requires "proper exhaustion" of administrative remedies in "compliance with an agency's deadlines and other critical procedural rules," the Second Circuit has noted, without holding, that the second and third prongs of the *Hemphill* analysis—estoppel and special circumstances—may no longer be applicable. *See Amador v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011) ("We have questioned whether, in light of *Woodford,* the doctrines of estoppel and special circumstances survived."(citing cases)); *see also Dabney v. Pegano,* No. 13–3884, 2015 WL 664562 (2d Cir. Feb.17, 2015). Nevertheless, the Second Circuit conducted a *Hemphill* analysis in *Amador* itself, 655 F.3d at 102–04, and district courts in this Circuit have continued to apply the *Hemphill* framework following *Woodford* and *Amador, see, e.g., Powell v. Corr. Med. Care, Inc.,* No. 13–cv–6842 (WHP), 2014 WL 4229980, at *2 n. 3 (S.D.N.Y. Aug. 15, 2014) (collecting cases); *Stevens v. City of New York,* No. 12–cv–1918 (JPO)(JLC), 2012 WL 4948051, at *6 (S.D.N.Y. Oct. 11,2012).

**5**    A plaintiff may also assert an estoppel argument if defendants fail to timely assert an administrative exhaustion defense. *Hemphill,* 380 F.3d at 686. That branch of the estoppel inquiry is clearly not implicated here, since Defendants have raised their administrative exhaustion defense in this pre-answer motion to dismiss.

**6**    Because the administrative exhaustion issue is likely dispositive of Plaintiff's conditions of confinement and deliberate indifference claims, the Court does not address the other grounds for dismissal raised in Defendants' motion to dismiss. Defendants may renew their motion to dismiss on those grounds, if necessary, once the Court has ruled on the administrative exhaustion issue.

---

**End of Document**                                © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2016 Thomson Reuters. No claim to original U.S. Government Works.    5

2009 WL 2223910
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Robert Edward GAYLE, Plaintiff,
v.
Officer C. BENWARE, Officer S. Carlson,
and Officer D. Williams, Defendants.

No. 08 Civ. 8017(RBM)(FM).
|
July 27, 2009.

## DECISION & ORDER

RICHARD M. BERMAN, District Judge.

### I. Background

**\*1** On or about September 17, 2008, Robert Edward Gayle ("Plaintiff" or "Gayle") filed a *pro se* complaint ("Complaint") pursuant to 42 U.S.C. § 1983 against Officer C. Benware, Officer S. Carlson, and Officer D. Williams (collectively, "Defendants"), alleging, among other things, that while he was incarcerated at Green Haven Correctional Facility ("Green Haven"), Defendants injured him by "punching and kicking" him while Defendants were restraining and transporting him "to [the] hospital ." (*See* Compl., dated July 3, 2008, at 3.) In his Complaint, Plaintiff alleges that he did not "file a grievance" regarding this incident. (*Id.* at 4.)

On December 29, 2008, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6), arguing, among other things, that Plaintiff "did not complete the grievance process before filing this action and therefore failed "to exhaust his administrative remedies" as mandated by the Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). (Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl., dated Dec. 29, 2008 ("Def.'s Mem."), at 1, 3 .)

On February 18, 2009, in opposition to Defendants' motion, Plaintiff submitted an affidavit, sworn to on January 23, 2009, alleging, among other things, that he "requested a grievance form and a grievance representative, which [he] was denied" and that he "wrote [his] grievance on a regular piece of paper

and gave it to an officer to mail it out for [him]" but he "never received [any] response [because] most likely that officer never mailed it out."(Aff. of Robert Edward Gayle, sworn to on Jan. 23, 2009 ("Gayle Aff."), at 1.)

On July 6, 2009, United States Magistrate Judge Frank Maas, to whom the matter had been referred, issued a thorough report and recommendation ("Report"), recommending that Defendants' motion be denied because, among other reasons, when "taking Gayle's pleadings as a whole and construing them liberally, Gayle has made a prima facie showing that he reasonably attempted to obtain a grievance form, access a representative, and mail a grievance through prison officials."(Report at 9.)

Although the Report advised that, pursuant to 28 U.S.C. § 636(b) (1) and Fed.R.Civ.P. 6(a), 6(d), and 72, "the parties shall have ten days from the service of this [Report] to file written objections," (Report at 9), to date, neither party has filed objections. (*See* Ltr. from John Knudsen to Hon. Richard M. Berman, dated July 23, 2009 ("Defendants will not file objections to the Report").)

**For the reasons stated below, the Report is adopted in its entirety.**

### II. Standard of Review

The Court may adopt those portions of a report and recommendation to which no objections have been made and which are not clearly erroneous. *See Thomas v. Arn,* 474 U.S. 140, 149 (1985). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."28 U.S.C. § 636(b)(1); *see also*Fed.R.Civ.P. 72(b); *Grassia v.. Scully,* 892 F.2d 16, 19 (2d Cir.1989).

**\*2** Where, as here, a petitioner is proceeding *pro se,* the Court construes the petitioner's claims liberally, *see Marmolejo v. United States,* 196 F.3d 377, 378 (2d Cir.1999), and will "interpret them to raise the strongest arguments that they suggest,"*Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

### III. Analysis

The facts and procedural history set forth in the Report are incorporated herein by reference. Having conducted a review of the Report (and applicable legal authorities), the Court finds that the Report is not clearly erroneous and, in fact, is in

conformity with the law. *See Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991).

Judge Maas properly concluded that Defendants' motion should be denied because, among other reasons, Plaintiff claims that he "reasonably attempted to [file] a grievance" but "the actions of the Green Haven staff prevented him from doing so" when they allegedly denied his requests for "a grievance form and access to a grievance representative" and allegedly failed "to mail [Plaintiff's informal] grievance." (Report at 7, 9 (citing Gayle Aff.)); *see Hemphill v. New York,* 380 F.3d 680, 688 (2d Cir.2004); *see also Lahoz v. Orange County,* No. 08 Civ. 3589, 2009 WL 666950, at *5 (S.D.N.Y. Mar. 12, 2009) ("Because [plaintiff] was denied recourse to the grievance procedures, his failure to exhaust procedural remedies must be excused."); *Taylor v. Zerillo,* No. 08 Civ. 1484, 2008 WL 4862690, at *2 (E.D.N.Y. Nov. 10, 2008) (denying motion to dismiss for failure to exhaust administrative remedies because, among other reasons, plaintiff alleged that he "was not given any grievance forms" and that he "complained to the warden in writing but received no response").

**IV. Conclusion and Order**

For the reasons set forth herein and therein, the Court adopts Judge Maas's Report in its entirety and denies Defendants' motion to dismiss [# 7].

*REPORT AND RECOMMENDATION TO THE HONORABLE RICHARD M. BERMAN*

FRANK MAAS, United States Magistrate Judge.

In this prisoner civil rights action brought under 42 U.S.C. § 1983, *pro se* plaintiff Robert Gayle ("Gayle") alleges that certain corrections officers ("Defendants") at the Green Haven Correctional Facility ("Green Haven") injured him by using excessive force while restraining and transporting him. (*See*Docket No. 2) (Complaint). The Defendants have filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Gayle did not complete the requisite administrative grievance process before commencing this action. For the reasons set forth below, the Defendants' motion (Docket No. 7) should be denied.

**I. *Background***

Gayle's complaint arises out of an incident that allegedly occurred at Green Haven on June 24, 2008. (Complaint ¶ II(C)). According to Gayle, during a facility frisk Defendant Officer Benware accused Gayle of throwing a slipper at him, then ordered Gayle to lie on the bed with his hands behind his back, grabbed his arms, handcuffed him from behind, and proceeded to punch and kick him. (*Id.* ¶ II(D)). Officer Benware allegedly subsequently turned Gayle over to Defendant Officers Carlson and Williams, who escorted Gayle to an outside hospital, beating him all the while. (*Id.*). Gayle contends that he suffered numerous injuries as a result of the incident, including a "transfusion for heart failure," chest abrasions, numbness in his wrist and leg, and bruising. (*Id.* ¶ III). Upon his release from the hospital, Gayle was placed in the Special Housing Unit ("SHU") at Green Haven, where he remained for twenty-eight days. (Docket No. 12) (Aff. of Robert E. Gayle, sworn to on Jan. 23, 2009 ("Gayle Aff.")).

**\*3** In his complaint, Gayle conceded that he had not filed a grievance about the incident with Green Haven or any other correctional facility. (*See* Complaint ¶ IV(D)). Additionally, although the *pro se* prisoner complaint form provided spaces for Gayle to explain his failure to file a grievance, Gayle did not offer a reason or indicate that he had spoken with prison officials about his claim. (*Id.* ¶ IV(F)). Indeed, Gayle stated that he did not know whether Green Haven has a grievance procedure, or whether any grievance procedure would cover his claims. (*Id.* ¶¶ IV(B), (C)).

On December 11, 2008, I held a telephone conference with the parties during which Gayle indicated that he failed to file a formal grievance because of his physical condition and because "no one would answer to [him] filing a grievance [when he was] put into [the] SHU after coming from the hospital."(*See* Tr. of Tel. Conf. dated Dec. 11, 2008, at 3–5). After opposing counsel indicated that the Defendants intended to move to dismiss Gayle's case based upon his failure to exhaust his remedies, I cautioned Gayle that he should, at minimum, submit an affidavit explaining why he did not or could not grieve.(*Id.* at 10).

On December 18, 2008, even before the defense motion was filed, Gayle submitted a "Notice of Motion" form to my Chambers in an apparent attempt to explain the circumstances surrounding his failure to grieve. Gayle stated that he "couldn't possi[ ]bly file a grievance under the security of the correctional facility."(*See* Notice of Mot., dated Dec. 18, 2008 ("Notice of Mot.")). He added that, "[i]n the complaint[,] it

were checked off [']not file, ['] because of security[.] It is a criminal matter of the defendants involve [d]." (*Id.*). He thus again conceded that he had not filed a grievance.

On December 29, 2008, the Defendants filed their motion to dismiss. (Docket No. 7). Thereafter, on January 8, 2009, Your Honor referred the motion to me for a Report and Recommendation. (Docket No. 9).

In opposition to the Defendants' motion, Gayle has now submitted an affidavit in which states that while he was in the SHU, he "requested a grievance form and a grievance representative, which [he] was denied and never seen."(Docket No. 12) (Gayle Aff.). Gayle further alleges that he "wrote [his] grievance on a regular piece of paper and gave it to an officer to mail it out for [him], to which [he] never received no response, most likely that officer never mailed it out."(*Id.*). Gayle's affidavit does not indicate the name of the officer to whom he allegedly gave his grievance.

## II. *Applicable Law*

### A. *Motion to Dismiss*

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996). As the Supreme Court recently has explained, the issue that must be decided under Rule 12(b)(6) is whether the plaintiff's claims are "plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). This requires the Court to apply a "flexible" standard, pursuant to which a pleader must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."*Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (emphasis omitted).

**\*4** When a party proceeds *pro se,* the Court is obligated to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest."*Sloane v. Mazzuca,* No. 04 Civ. 8266(KMK), 2006 WL 3096031, at \*3 (S.D.N.Y. Oct. 31, 2006) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)) (brackets and ellipsis in original); *see also Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir.1998) ("Though a court need not act as an advocate for *pro se* litigants, in *pro se* cases there is a

greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done.") (internal quotation marks and citation omitted). This principle applies with particular force when, as in this case, a *pro se* plaintiff alleges civil rights violations. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). Moreover, because Gayle is a *pro se* litigant, the Court may appropriately consider his "additional materials, such as his opposition memorandum" in assessing the legal sufficiency of his claims. *See Crum v. Dodrill,* 562 F.Supp.2d 366, 374 n. 13 (N.D.N.Y.2008) (quoting *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at \*1 n. 2 (S.D.N.Y. Nov. 17, 1997)).

### B. *Prisoner Litigation Reform Act*

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S .C. § 1997e(a), a prisoner must exhaust any available administrative remedies before he may challenge prison conditions in federal court. This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle,* 534 U.S. 516, 532 (2002). When a prisoner seeking damages plausibly seeks to counter a defendant's claim that he has failed to exhaust available remedies, the court must ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."*Singh v. Goord,* 520 F.Supp.2d 487, 495–96 (S.D.N.Y.2007) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)); *see also Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004) (failure to exhaust under the PLRA is an affirmative defense subject to estoppel).

The New York State correctional system, of which Green Haven is a unit, has implemented an Inmate Grievance Program ("IGP") which permits an inmate to file complaints with the facility's Inmate Grievance Resolution Committee ("IGRC").*See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.1(c). The inmate can appeal an adverse IGRC decision to the facility superintendent, and from there to a committee of central office staff. *Id.* A complaint must be submitted to the IGP clerk within twenty-one calendar days of the incident on an "inmate grievance complaint form," or on plain paper if the form is not readily available. *Id.* § 701.5(a)(1). The IGP

requires that a supply of inmate grievance complaint forms be "maintained in all special housing areas and ... be given to inmates requesting them."*Id.* § 701.7(a)(1). In addition, an "IGRC staff member ... or grievance supervisor shall make rounds of all special housing areas ... at least once a week to allow inmates direct access to the program."*Id.* § 707.7(c) (1).

### III. *Discussion*

**\*5** It is clear that Gayle did not file a formal grievance about the June 24 incident despite the existence of an administrative remedy. Moreover, the Defendants are understandably put out that Gayle has alleged for the first time at the eleventh hour that he attempted to file a grievance. (*See* Reply at 3). Reading Gayle's papers collectively, however, and viewing his allegations in the light most favorable to him, Gayle clearly avers that he *attempted* to file a grievance pursuant to the IGP, but that the actions of the Green Haven staff prevented him from doing so. *See Hemphill,* 380 F.3d at 686.Specifically, in his affidavit, Gayle states that while he was in the SHU, he requested a grievance form and access to a grievance representative. (Gayle Aff.). Although both are to be provided to inmates in the SHU, *see*N.Y. Comp.Codes R. & Regs. tit. 7, §§ 707.7(a)(1), (c)(1), Gayle indicates that these requests were denied, (Gayle Aff.). Gayle also states that he instead wrote his grievance on a piece of paper and gave it to an officer to mail. (*Id.*). The IGP permits this method of grieving to be employed when official complaint forms are not available. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(a) (1). According to Gayle, he never received a response to this grievance and was concerned that the officer did not actually mail the grievance. (Gayle Aff.).

In these circumstances, Gayle's complaint cannot be dismissed for failure to exhaust administrative remedies. Admittedly, Gayle does not identify which Green Haven staff members he asked for a complaint form or representative, or the officer to whom he allegedly gave his grievance for mailing. He seems to suggest, however, that the Defendants may have impeded his access to the grievance process. (See Notice of Mot.). If any of the Defendants did, in fact, prevent Gayle from grieving pursuant to the IGP's requirements, their exhaustion defense might be forfeited. *See Hemphill,* 380 F.3d at 690 (petitioner's allegations of threats may estop defendants from asserting exhaustion defense); *Ziemba,* 366 F.3d at 162–63 (exhaustion defense may be estopped where defendants allegedly beat and threatened petitioner, and denied grievance forms and writing implements); *Sereika v. Patel,* 411 F.Supp.2d 397, 403 (S.D.N.Y.2006) ("Where a plaintiff alleges that the

defendant made misrepresentations that inhibited the plaintiff from participating in the grievance process, dismissal of the complaint for failure to exhaust is not appropriate."); *DeMartino v. Zenk,* No. 04 Civ. 3880(SLT)(LB), 2006 WL 1455456, at \*5 (E.D.N.Y. May 25, 2006) (declining to hold that plaintiff failed to exhaust when defendants may have prevented plaintiff "from submitting timely grievance forms by misplacing or losing his documents, or denying him access to a photocopier").

Moreover, even if the Defendants themselves were not directly involved, interference by *any* Green Haven staff members would have rendered the IGP constructively unavailable to Gayle. "Where a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the [prisoner], and thus the [PLRA] does not preclude the prisoner from suing in federal court."*Thomas v. New York State Dep't of Corr. Servs.,* No. 00 Civ. 7163(NRB), 2002 WL 31164536, at \*3 (S.D.N.Y. Sept. 30, 2002); *see also Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) ("a remedy that prison officials prevent a prisoner from utilizing is not an available remedy" under the PLRA) (cited with approval by *Abney v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004)).

**\*6** Here, taking Gayle's pleadings as a whole and construing them liberally, Gayle has made a prima facie showing that he reasonably attempted to obtain a grievance form, access a representative, and mail a grievance through prison officials. While these assertions may ultimately not prove credible, at this preliminary stage the Court cannot say, as a matter of law, that they are implausible. Accordingly, although there is ample reason to question the veracity of Gayle's latest representations, I reluctantly conclude that the Defendants' motion must be denied.

### IV. *Conclusion*

For the foregoing reasons, the Defendants' motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6) for lack of administrative exhaustion, (Docket No. 7), should be denied.

### V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also*Fed.R.Civ.P. 6(a) and (d). Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard B. Berman and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Berman. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Am,* 474 U.S. 140 (1985).

## All Citations

Not Reported in F.Supp.2d, 2009 WL 2223910

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

*MEMORANDUM DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"), against
numerous employees of New York State or the Central
New York Psychiatric Center ("Defendants"), are Plaintiff's
motion to proceed *in forma pauperis,* his motion for a
temporary restraining order and preliminary injunction, and
his motion for appointment of counsel. (Dkt.Nos.2, 3, 4.)[1]
For the reasons set forth below, Plaintiff's motion to proceed
*in forma pauperis* is granted; his motion for a preliminary
injunction is denied; his motion for appointment of counsel
is denied; Plaintiff's claims of deliberate indifference to his
mental health needs against Defendants Bill, Carver, and
DeBroize are *sua sponte* dismissed with prejudice; Plaintiff's
claims against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged personal
involvement in the August 8, 2011 assault are *sua sponte*
dismissed without prejudice and with leave to amend in this

action in accordance with Fed.R.Civ.P. 15; Sgt. Sweet is *sua
sponte* dismissed without prejudice as a Defendant in this
action; the Clerk is directed to issue summonses, and the U.S.
Marshal is directed to effect service of process on Defendants
Davis, Sill, and Nicolette.

## I. RELEVANT BACKGROUND

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.*(Dkt. Nos.1, 2.)[2]
Liberally construed, Plaintiff's Complaint alleges that the
following constitutional violations against him occurred
during his confinement at Central New York Psychiatric
Center ("CNYPC"): (1) Defendants Davis and Sill used
excessive force against him under the Eighth and/or
Fourteenth Amendments; (2) Defendant Nicolette knew of
and failed to take action to protect Plaintiff from the
assault under the Eighth and/or Fourteenth Amendments;
(3) Defendants Bill, Carver, and DeBroize were deliberately
indifferent to his mental health needs under the Eighth and/
or Fourteenth Amendments; and (4) Defendants Bill, Carver,
DeBroize, Nowicki, Maxymillian, Bosco, and Hogan failed
to "adequately train the staff under their supervision" and
to take appropriate action in response to the incident. (*See
generally*Dkt. No. 1.) For a more detailed description of
Plaintiff's claims, and the factual allegations giving rise to
those claims, the reader is referred to Part III.B of this
Decision and Order.

## II. MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the
Court finds that Plaintiff may properly commence this action
*in forma pauperis.*(Dkt. No. 2.)

## III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the
sufficiency of the allegations that Plaintiff has set forth in
his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is
because Section 1915(e)(2)(B) directs that, when a plaintiff
seeks to proceed *in forma pauperis,*"(2) ... the court shall
dismiss the case at any time if the court determines that—...
(B) the action ... (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief."28
U.S.C. § 1915(e)(2)(B).[3]

## A. Governing Legal Standard

**\*2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."*Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74.The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965.More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Iqbal,* 129 S.Ct. at 1949."[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief."*Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully,"*id.,* it "does not impose a probability requirement."*Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."*Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.

*Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted).Rule 8"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."*Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,*"all normal rules of pleading are not absolutely suspended."*Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

**B. Analysis of Plaintiff's Complaint**
The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners."*Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions."*Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard."*Groves v. Patterson,* 09–CV–1002,

Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009).[7]

**1. Excessive Force Claims Against Defendants Davis, Still and Nicolette**
 **\*4** Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]."(*Id.*)As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff."(*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the

assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated."(*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.)The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs."*Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)."[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,*970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,*513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently

serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."*Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind."*Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703. [9]

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and

Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011). [13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold."(Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.)Plaintiff does

not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement of these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally*Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

### IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter."*Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted)."The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an

opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at \*3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at \*2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction.*Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at \*2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at \*2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order."(Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an

"Order of Separation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.)Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent

party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case. [14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10  ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is ***GRANTED;*** [15] and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is ***DENIED;*** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is ***DENIED*** **without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte****DISMISSED*** **with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte****DISMISSED*** **without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte****DISMISSED*** **without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicolette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .**Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.**All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

**Footnotes**

1   This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. *See Groves v. New York,* 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The State of New York,* 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ). The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. *See Groves v. Maxymillian,* 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

2   At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

3   The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief."28 U.S.C. § 1915A(b).

4   *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

5   *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

6   It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a) (2).*Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must

still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

**7** *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

**8** Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain."*Chance,* 143 F.3d at 702.

**9** Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference.*Harrison,* 219 F.3d at 138.

**10** The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile.*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994).*John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."*Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

**11** *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

**12** *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability."[internal quotation marks and brackets omitted] ); *Greenwald v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

**13** *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials."[internal quotation marks, brackets and ellipsis omitted] ).

**14** For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

15    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**End of Document**                                      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1453789
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Susan Lee HARE, Plaintiff,
v.
James HAYDEN et al., Defendants.

No. 09 Civ. 3135(RWS).
|
April 14, 2011.

*OPINION*

SWEET, District Judge.

**\*1** Defendants Reverend Maria Lopez ("Lopez"), Deputy Superintendant James Hayden ("Hayden"), and Grievance Supervisor Kim Watson ("Watson") (collectively, "Defendants") have filed motions for summary judgment. For the reasons stated below, these motions are granted.

*Prior Proceedings*
Plaintiff Susan Lee Hare ("Hare" or "Plaintiff") filed her complaint on April 1, 2009, alleging misconduct by Superintendant Ada Perez, Superintendant Elizabeth Williams, Hayden, Lopez, and Watson. Defendants Perez, Williams, Hayden, and Watson answered on September 16, 2009. Defendant Lopez answered on August 31, 2010. On November 22, 2010, the Court signed off on the stipulated dismissal of Defendants Perez and Williams.

Defendant Lopez and Defendants Hayden and Watson filed separate motions for summary judgment on December 13, 2010 and December 14, 2010, respectively. These motions were heard on submission on January 19, 2011.

*Statement of Facta*
In August 2008, Plaintiff was programmed as a Catholic clerk assisting Father O'Shea, the Catholic Chaplain at Bedford Hills Correctional Facility ("BHCF"). She was programmed for both the morning and afternoon shifts. *See* Deposition of Susan Hare, attached to Declaration of John Knudsen ("Knudsen Dec") as Exhibit A ("Hare Dep."), at 15. On August 14, 2008, a meeting occurred between

Plaintiff, Father O'Shea, and Hayden. At that meeting, Father O'Shea recommended that Plaintiff remain the Catholic clerk after his retirement on August 15, and Hayden agreed that Plaintiff remain in the position. Affirmation of James Hayden ("Hayden Aff."), ¶ 3, attached to Knudsen Dec. as Exhibit C.

Plaintiff then sent a letter dated August 16, 2008 to Hayden in which she made several allegations against Reverend Lopez, including that Lopez met with Hare on August 15, that Lopez ordered the moving of a cabinet with Catholic items, and that Lopez ordered her clerks to pack up the Catholic items in the Sacristy into bags and put them out for the trash. *See* Hare Letter dated Aug. 18, 2008, attached to Knudsen Dec. at Exhibit B at Hare 27–31. The underlying theme of Plaintiff's letter appears to have been that Reverend Lopez was using her position to defile the Catholic religion. *See Id.* at 30 ("the Catholic (sic) have been defiled by this woman and her community.") In response to Plaintiff's letter and to address the allegations, Hayden set up a meeting on August 18, 2008 with Plaintiff, Lopez and two other inmates, Tuttle and Ramsey. Hayden Aff., ¶ 5.

The August 18 meeting between Plaintiff and Reverend Lopez was very contentious. Hayden Aff. ¶ 6. During the meeting, Hayden attempted to verify the allegations made in Plaintiff's August 16 letter. *See* Hare 110–11. He could not substantiate any of Plaintiff's allegations and determined that they were largely hearsay. *Id.;* Hayden Aff, ¶ 6. According to Hayden, Lopez did not attempt to attack Plaintiff during that meeting. Hayden Aff. ¶ 7; Affirmation of John Ruiz, ¶ 2, attached to Knudsen Dec as Exhibit D.

**\*2** Plaintiff contends that on August 18, Lopez verbally abused and physically threatened her in the chapel. Pl. Opp. Aff., at 4–7. Plaintiff claims that this interaction led to an investigation which prevented her from working as Catholic clerk. *Id.* at 4. It is unclear whether this interaction was separate from the August 18, 2008 meeting.

Plaintiff filed a grievance alleging that Reverend Lopez verbally harassed her during the August 18 meeting. *See* Hare 104–105. Hayden notified the Superintendent's Office of his personal observations during that meeting, which were incorporated into the Superintendent's response. *See* Hare 103; Hayden Aff., ¶ 8. Following the August 18 meeting, Plaintiff did not appear for her program assignment as Catholic clerk for two weeks, after which time Reverend Lopez forwarded a memorandum to counselor Greenfield on September 2, 2008, requesting that Plaintiff be removed

from her position as Catholic clerk and noting that no new Catholic clerk should be named until a Catholic Priest had been hired. *See* Hare 42. Plaintiff contends that this report was false and that she showed up for work but was sent away. Pl. Opp. Aff. at 9. Counselor Greenfield contacted Hayden to discuss Lopez's request for Plaintiff's removal. Hayden Aff., ¶ 9. According to Hayden, Plaintiff was removed from her Catholic clerk position by him on September 8, 2008, at the latest. Hayden Aff., ¶ 11. Plaintiff contends that she was not removed until September 15, 2008. Pl. Opp. Aff. at 9.

Hayden claims to have removed Plaintiff from her position for multiple reasons. Initially, it was reported that plaintiff failed to report for two weeks for programming after Father O'Shea retired. Hayden Aff., ¶ 10; Hare 42. Also, Hayden determined that Plaintiff was being disruptive to the provision of Catholic services at Bedford Hills. Hayden Aff. ¶ 10. Hayden had investigated plaintiffs numerous allegations about Reverend Lopez and her alleged interference with the Catholic programs and could not substantiate any of them. *Id.* For example, Hayden states that Plaintiff was telling inmates and outside civilians in the Catholic community that Lopez had the cabinet with Catholic items in it moved, and had articles removed from the Sacristy. *Id.* Hayden had received a call from Deacon Lou Santore, a civilian volunteer, who had been told these claims by Plaintiff and was upset. Hayden investigated these claims and determined them to be inaccurate. *Id.* Instead, he determined that the cabinet was moved by a volunteer from the long-term inmate committee, and that Plaintiff appeared to be the only person with the combination to the Sacristy. *Id.;* Affirmation of Kowsillia Magoo, ¶ 4, attached to Knudsen Dec. as Exhibit E. As part of his responsibilities as Deputy Superintendent of Programs, Hayden states that he could not allow inmates to use their programming position to disrupt the inmate and civilian volunteer populations. *Id.*

**\*3** Additionally, Hayden discussed this issue with all the other chaplains at the facility, who agreed that Plaintiff should no longer remain as the Catholic clerk. Hayden Aff., ¶ 11. This included Sister MaryAnn Collins, who was a part-time employee at the facility and apparently effectively acted as head of the Catholic community there. *Id.* Finally, Hayden determined that Plaintiff and Reverend Lopez were not able to work together. *Id.* Plaintiff drafted a handwritten grievance complaint on September 4, 2008, in which she complained that Reverend Lopez was retaliating against her because of her prior grievance, and asked that she "stop being harassed and retaliated against by Rev. Lopez."Hare 40–41. Defendant

Watson responded to that grievance, noting that Plaintiff no longer worked as a clerk and, thus, Reverend Lopez could no longer be harassing her. Hare 39. Watson states that this was an attempt by her to informally resolve Plaintiff's grievance. Affirmation of Kim Watson ("Watson Aff."), at ¶ 3, attached as Exhibit F to Knudsen Dec. Plaintiff did not request to have the grievance formally processed, but if she had, Watson claims she would have done so. *Id.* Plaintiff contends that she took Watson's response to mean that she could not file a grievance.

### Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."*Fed.R.Civ.P. 56(c).* In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inference in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."*Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (internal citations and quotation marks omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Affidavits submitted in opposition to summary judgment must be based on personal knowledge from a competent source, and "set forth such facts as would be admissible in evidence."*Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004) (quoting *Fed.R.Civ.P. 56(c)).* Hearsay or other evidence that would be inadmissible at trial cannot be credited to defeat a summary judgment motion. *See Id.* at 219 ("an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.").

### Plaintiff's Retaliation Claims are Dismissed

In order to state a valid retaliation claim, a plaintiff must allege that her actions were protected by the Constitution, and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials."*Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (internal citations omitted). There must be a "causal connection between the protected [conduct] and the adverse action."*Gill v. Pidlypchak,* 389 F,3d 379, 380 (2d Cir.2004) (internal citation and quotations omitted)."A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.' " *Anderson v. Lapolt,* No. 07 Civ. 1184, 2009

WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) (quoting *Friedl v. City of New York,* 210 F.3d 79, 85–86 (2d Cir.2000)); *see also Sawyer v. Jowers,* No. 08 Civ. 186, 2008 WL 4791557, at *6 (N.D.Tex. Oct. 31, 2008) ("To state a claim of retaliation, the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred") (internal citations omitted); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (if plaintiff's claim of retaliation had been based on circumstantial evidence alone, and not also supported by direct evidence of defendant's admission, Court would be inclined to grant summary judgment); *Bussey v. Phillips,* 419 F.Supp.2d 569, 585 (S.D.N.Y.2006) ("In order to survive summary judgment on a retaliation claim, a plaintiff bears the burden of showing two genuine issues of material fact: first, that the plaintiff engaged in constitutionally protected conduct, and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials.").

**\*4** Even where a plaintiff meets her burden of establishing a prima facie retaliation claim, it is still subject to dismissal if sufficient other non-retaliatory reasons to take the adverse action were present. *See Bussey,* 419 F.Supp.2d at 585; *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002). Furthermore, inmates have no right, constitutional or otherwise, to any particular job or assignment within a prison. *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987); *Hodges v. Jones,* 873 F.Supp. 737, 745 (N.D.N.Y.1995) (citing *Lane v. Reid,* 575 F.Supp. 37, 39 (S.D.N.Y.1983). Inmates can be removed from prison assignments for virtually any reason, provided that such decisions are not based on the inmate's race or religion.*Bussey,* 419 F.Supp.2d at 589 (S.D.N.Y.2006).

It should be noted that "courts must approach prisoner claims of retaliation with skepticism and particular care," as such claims are "easily fabricated" and run the risk of "unwarranted judicial intrusion into matters of general prison administration."*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).*See also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (noting that prisoner retaliation claims are " 'prone to abuse' because prisoners can claim retaliation for every decision they dislike.") (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)); *Colon,* 58 F.3d at 872 ("because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care."); *Gill,* 824 F.2d at 194 (because of the potential for abuse, the Court of Appeals requires a "higher level of detail in pleading [retaliation claims]").

Plaintiff contends that she was removed from her position as Catholic clerk by Hayden in retaliation for her complaints against Lopez. [1] There is no dispute that Plaintiff's complaints against Lopez are protected speech and that her removal from her position as Catholic clerk was an adverse action; however, Plaintiff fails to establish the causal link between her complaints and her dismissal, particularly in light of legitimate non-discriminatory reasons for her dismissal given by Hayden.

As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant. *See Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about a prior incident by another corrections officer). Here, even giving Plaintiff every reasonable inference, Plaintiff fails to establish that Hayden had a motive to retaliate arising from her complaints against Lopez, and that Hayden's retaliatory motive formed the basis for her dismissal.

**\*5** To the extent Plaintiff contends that Hayden was incompetent or covering up Lopez's misconduct, the evidence before the Court indicates otherwise. Hayden investigated Plaintiff's claims against Reverend Lopez. The August 18, 2008 meeting between Plaintiff, Hayden and Lopez was called in order for Hayden to investigate Plaintiffs allegations in her August 16 letter, *see* Hayden Aff., ¶ 5, and at that meeting, Hayden questioned both Plaintiff and Lopez to determine the veracity of Plaintiff's allegations. *See* Hare 110–111; Hare Dep., at 73–74. Plaintiff's subsequent grievance on August 21 alleged that Lopez mistreated her during the August 18 meeting, a claim for which there was no need for Hayden to investigate since he was present for the meeting and knew what had and had not occurred. *See* Hayden Aff., ¶ 8. Finally, there is no evidence to indicate that Hayden was "covering up" for Lopez, and the record indicates that Hayden reasonably found Plaintiff's complaints against Lopez to be meritless. Plaintiff's allegations of a cover up are conclusory and are insufficient to meet Plaintiff's burden for a retaliation claim at the summary judgment stage. *See Graham,* 89 F.3d at 79.

Even if the Court were persuaded that there was a causal connection between Plaintiff's complaints against Lopez and her dismissal for her position as Catholic clerk, Hayden had valid, non-discriminatory reasons for dismissing her. "A finding of sufficient permissible reasons to justify state action is 'readily drawn in the context of prison administration where ... prison officials have broad administrative and discretionary authority.' " *Graham,* 89 F.3d at 79 (quoting *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994)). Here, Hayden identified four legitimate reasons for Plaintiff's removal: (1) she failed to show up for work for 2 weeks [2]; (2) her behavior disrupted the overall provision of Catholic services at Bedford Hills; (3) her removal was recommended by all the other chaplains, including the part-time chaplain, Sister MaryAnn Collins; and (4) the inability of Plaintiff and Lopez to work together. Hayden Aff., ¶¶ 10–11.

Plaintiff's allegations that Lopez independently retaliated against her, by preventing her from returning to her program assignment, falsely reporting her absence from her job, and otherwise acting inappropriately toward her, are belied by Plaintiff's acknowledgement that Lopez never made any statement revealing that she engaged in any conduct with the intent to retaliate against Plaintiff for writing complaint letters or for any other act by Plaintiff. (Hare Dep. at 135). Plaintiff can only point to her conclusory assumptions of Lopez's motive and has failed to adequately substantiate her claims to survive this motion for summary judgment.

Furthermore, even if Plaintiff did establish that Lopez filed a false report in retaliation for her complaints, Plaintiff cannot establish that the adverse action of her dismissal from her position as Catholic clerk by Hayden arose from that allegedly false report. As discussed above, Hayden chose to dismiss Plaintiff for three other legitimate reasons and would have done so regardless of the report. Hayden Aff., ¶¶ 10–11. *See Graham,* 89 F.3d at 79 (quoting *Lowrance,* 20 F.3d at 535).

### *Plaintiff's Claim that Lopez Filed a False Misbehavior Report is Dismissed*

**\*6** To the extent that Plaintiff claims Lopez falsely reported her absence from work for two weeks, this allegation does not support a claim. "The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process...." [3] *Faison v. Janicki,* No. 03 Civ. 6475, 2007 WL 529310, at \*4 (W.D.N.Y. Feb. 14,

2007) (citing *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997)).*See also Moore v. Casselbeny,* 584 F.Supp.2d 580, 582 (W.D.N.Y.2008) ("There is no basis for a constitutional claim alleging the mere filing of a false report"); *Flemings v. Kinney,* No. 02 Civ. 9989, 2004 WL 1672448, at \*3 (S.D.N.Y. Jul. 27, 2004) ("[i]t is well settled that 'a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report' ") (quoting *Boddie,* 105 F.3d at 862). Furthermore, the record does not support Plaintiff's assertion that Lopez's report was false. Officers Ruiz and Magoo both affirm that they were never instructed by Lopez not to allow Plaintiff to enter the chapel. Ruiz Aff., ¶ 3; Magoo Aff., ¶ 3. Lopez denies having falsified the report.

### *Plaintiff's Claim that She was Unable to File a Grievance is Dismissed*

Plaintiff alleges that she was denied the right to file a grievance when Watson responded to Plaintiff's September 4, 2008 grievance, which requested that Lopez stop retaliating against her, by noting that Plaintiff no longer worked as a clerk and, thus, Reverend Lopez could not retaliate against her. *See* Hare 39–41. Watson claims to have sent this memorandum to Plaintiff in an attempt to informally resolve the grievance, which is part of Watson's responsibilities, Watson Aff. ¶ 3, but Plaintiff alleges she understood the memorandum to indicate that she was not allowed to file a grievance. Watson claims she would have formally filed the grievance if Plaintiff had contacted her and requested that it be formally filed. *Id.*

While there is a dispute of fact as to whether Plaintiff was allowed to file a grievance, Plaintiff has no constitutionally protected right to file a grievance, and thus does not have a cognizable § 1983 claim. *See Shell v. Brzezniak,* 365 F.Supp.2d 362, 370 (W.D.N.Y.2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim") (citing *Cancel v. Goord,* No. 00 Civ.2042, 2001 WL 303713, \*3 (S.D.N.Y. Mar. 29, 2001)); *Mastroianni v. Reilly,* 602 F.Supp.2d 425, 437 (E.D.N.Y.2009) ("[T]he grievance procedure or lack thereof cannot itself form the basis of a Section 1983 claim because there is no constitutional right to a grievance mechanism") (citing *Swift v. Tweddell,* 582 F.Supp.2d 437, 445–46 (W.D.N.Y.2008)). Notably, Defendants do not argue that Plaintiff has failed to exhaust her claim of retaliation because this grievance was not processed through the entire grievance system.

***Plaintiff's Claims of Verbal Abuse are Dismissed***

**\*7** Plaintiff accuses Lopez of approaching her on August 18, 2008 "in a menacing way, raising her hands toward plaintiff from behind in a motion as if to strangle plaintiff" (Pl. Opp. Aff. at 7) and asserts that Lopez "screamed" at her and called her a "liar" (Hare Dep. at 57) or otherwise spoke to her in an abusive manner. While Lopez denies Hare's allegations regarding her conduct, even when the evidence concerning them is viewed most favorably to Plaintiff, these allegations do not support an action pursuant to § 1983. The Eighth Amendment proscribes the " 'unnecessary and wanton infliction of pain' " on prisoners by prison officials. *Boddie,* 105 F.3d at 861 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). Hare does not claim that any actual physical harm was caused to her by Lopez, and she acknowledged in her deposition testimony that, on the occasion when she alleges Lopez approached her in a physically threatening manner, "[m]y back was to her" (Hare Dep. at 61), and "I didn't see her ...." (Hare Dep. at 58). According to Plaintiff, Officer Ruiz "stopped the whole incident" before any assault could take place. (Hare Dep. at 57).

It is undisputed that there was no actual assault, and Plaintiff's evidence, viewed most favorably to her, establishes nothing more than verbal abuse. As the Court held in *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y. 1998):

> [V]erbal harassment or profanity alone, "unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem," does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983. *Del Carpio v. Walker,* No. 95 Civ. 1502(RSP) (GJD), 1997 WL 642543, at * 6 (N.D.N.Y. Oct. 15, 1997) (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (per curiam); *Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997)); *see Ramirez v. Holmes,* 921 F.Supp. 204, 210 (S.D.N.Y.1996); *Alnutt v. Cleary,* 913 F.Supp. 160, 165–66 (W.D.N.Y.1996); *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995) ( "Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."); *Beal v. City of New York,* No. 92 Civ. 0718(KMW), 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994), *aff'd,*89 F.3d 826, 1995 WL 722263 (2d Cir.1995); *Hurdle v. Ackerhalt,* No. 92–CV–1673, 1993 WL 71370, at *1–2 (N.D.N.Y. Mar. 8, 1993) (allegations of threats

and harassment do not rise to the level of a Constitutional violation).

Plaintiff's claim fails because she does not allege that she suffered any physical injury. *See Bouknight v. Shaw,* No. 08 Civ. 5187, 2009 WL 969932, at *3 (S.D.N.Y. Apr. 6, 2009) ("Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.") (citing *Purcell,* 790 F.2d at 265).*See also Thompson v. Carter,* 284 F.3d 411, 418 (2d Cir.2002) ("We agree with the majority of our sister circuits that [42 U.S.C. § ] 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury.") Rather, Plaintiff contends that she suffered only "mental anguish" as a consequence of the Defendants' actions.

**\*8** "Under certain circumstances, the intentional infliction of psychological pain may constitute an Eighth Amendment violation, so long as the pain is not *de minimus.*"*Shabazz,* 994 F.Supp. at 475. Plaintiff stated in her deposition that she was affected by Lopez's conduct particularly because she was a domestic violence victim and because Lopez came from a position of trust. (Hare Dep. at 139). However, Plaintiff admitted during her deposition that, notwithstanding the availability of mental health services, she never sought such services, but attained sufficient relief from her distress by speaking about it with a chaplain. (Hare Dep. at 139–40). Based on Plaintiff's allegations and record, Plaintiff's mental pain was *de minimus. See Shabazz,* 994 F.Supp. at 475 (mental anguish caused by repeated use of racial slurs was *de minimus* ); *Jermosen v. Coughlin,* No. 87 Civ. 6267, 1993 WL 267357, at *6 (S.D.N.Y. July 9, 1993), *aff'd,*41 F.3d 1501 (2d Cir.1994) (de minimus psychological harm when correctional officers "approached plaintiff with their nightsticks raised in a threatening position" before conducting a strip frisk).

***Plaintiff's Claims for Infringement of Her Religious Rights are Dismissed***

### a. The Alleged Removal of Religious Objects from the Sacristy

Hare's complaint discusses at length the alleged removal of religious articles from the Catholic sacristy at BHCF, but she has acknowledges that she did not observe anyone removing those articles, and that she has no personal knowledge regarding who is responsible for any such conduct. (Hare Dep. at 137; Pl. Opp. Aff. at 7). Lopez, for her part, denies any

involvement in or knowledge of this occurrence. (Lopez Aff., ¶¶ 14–15). It appears that Plaintiff's only basis for claiming that Lopez had any involvement in the alleged removal of the articles in question is her assertion that she was told by Officer Magoo and through a grapevine of other inmates that Lopez had authorized other inmates to take this action. (Hare Dep. at 37; Pl. Opp. Aff. at 9). This hearsay claim is not corroborated by Officer Magoo; in fact, he has affirmed that he did not make such a statement to Hare. (Magoo Aff., ¶ 4). Likewise, Inmate Rose Ramsey, who allegedly told Lucy Tuttle, who allegedly told Plaintiff, about Lopez's role in the removal of articles for the Catholic service has not provided an affidavit corroborating Plaintiff's contention. Thus, Hare does not present admissible evidence to support her allegation that Lopez caused the removal of items from the Catholic sacristy. *See Finnegan v. Board of Educ. of Enlarged City School Dist. of Troy,* 30 F.3d 273, 274 (2d Cir.1994) (hearsay that would not be admissible at trial cannot be relied upon in opposition to a motion for summary judgment). Without establishing Lopez's involvement in the alleged removal of Catholic items, Plaintiff has not established a claim. As the Court of Appeals has recognized, "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)).

**\*9** Even if Plaintiff had established that Lopez bears responsibility for the removal of those articles from the sacristy, the conduct she alleges would not establish any violation of Hare's personal rights. She does not claim that any of the articles in question belonged to her, and, in the absence of specific criteria that Hare does not allege here, a plaintiff does not have standing to assert the constitutional rights of others. *Camacho v. Brandon,* 317 F.3d 153, 159 (2d Cir.2003) ("A plaintiff may assert the constitutional claims of a third party if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) 'some hindrance to the third party's ability to protect his or her own interests.'") (quoting *Campbell v. Louisiana,* 523 U.S. 392, 397 (1998)).*Cf. Hudson v. Palmer,* 468 U.S. 517, 547 n. 13 (1984) (Stevens J., conc. in part and diss. in part) ("A prisoner's possession of ... personal property relating to religious observance, such as a Bible or a crucifix, is surely protected by the Free Exercise Clause of the First

Amendment"). Thus, Hare's allegations regarding the alleged removal and desecration of objects from the Catholic sacristy does not give rise to any genuine dispute regarding facts that would be material to her § 1983 action against Lopez.

### b. The Alleged Denial of Plaintiff's Right to Practice Her Religion

Plaintiff alleges that Lopez impermissibly infringed upon her right to practice religion. She does not allege any involvement in this deprivation by Hayden or Watson, so this claim is dismissed as to them.

In her complaint, Plaintiff asserts denial of "the right to practice Freedom of Religion," but she does not specify how this alleged violation of her civil rights occurred. In her affirmation opposing the summary judgment motions [4], Plaintiff contends that Lopez prevented Plaintiff from continuing her Catholic video group and curtailed "all Catholic programs, which precluded plaintiff from participating in them, as they no longer were running."Pl. Opp. Aff. at 8. Also, referring to Lopez's alleged verbal abuse of Plaintiff on August 8, 2011, Plaintiff claims that "Lopez's actions effectively precluded any operations of religious programs for Catholic inmates."Pl. Opp. Aff. at 6. These assertions are insufficient to place into issue facts that, if resolved in Plaintiff's favor, would entitle her to relief pursuant to Section § 1983.

To establish a free exercise claim under the First Amendment, a plaintiff must demonstrate that state action substantially burdened her observation of a "central religious belief" without a "compelling government interest" justifying the burden. *Skoros v. City of New York,* 437 F.3d 1, 39 (2d Cir.2006) (quoting *Jimmy Swaggart Ministries v. Bd. of Equalization,* 493 U.S. 378, 384–85 (1990)). An inmate's right to the free exercise of religion is "subject to limitations that arise both as a consequence of being incarcerated and from 'valid penological objectives.' " *Harris v. Lord,* 957 F.Supp. 471, 474 (S.D.N.Y.1997) (quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987)).

**\*10** With regard to the alleged curtailment of programs such as the "Praise Dance" or the video activities that she sought to organize, Plaintiff does not claim that these programs were "central or important" to the practice of her religion, an essential component of a claim that her religious beliefs were "substantially burdened." *Ford v. McGinness,* 352 F.3d 582, 593–94 (2d Cir.2003).

Hare's claims regarding the "suspension" of Catholic programs appear to be linked with her role in leading such programs. Plaintiff's papers and testimony recognize, however, the Catholic Chaplain, Father O'Shea, retired in August of 2008. The subsequent temporary suspension of programs that he had supervised cannot be deemed an unreasonable infringement on Plaintiff's practice of her religion, but simply a consequence of the institution's temporary lack of a Catholic Chaplain. Plaintiff's claim appears to be premised on her assumption that, even in Father O'Shea's absence, she should have been permitted to continue running these programs. (*See* Hare Dep. at 105 ("Even if I was not a clerk, I should have been allowed to run the program")). However, as discussed above, inmates have no right to any particular position or assignment at a correctional institution. *See Gill*, 824 F.2d at 194.

Plaintiff's claim that Lopez prevented her from attending Catholic Mass and other religious programming, to the extent that she asserts it, is not supported by the record and does not survive summary judgment even when all reasonable inferences are made in her favor. At her deposition she testified as follows:

Q. In general, do you recall at any time when you were trying to go to Catholic mass where you were not allowed to go?

A. If [Lopez] knew I was in there, then I was harassed. If she told the officer this Sunday she found out, she would tell that officer. If that officer was there, then I would be harassed.

Q. How were you harassed?

A. Because I was told to leave, I'm not allowed to be there.

Q. How many times, to the best of your recollection, were you told that you had to leave the Catholic mass?

A. I would say a couple of times. Like I said, I got tired of being harassed, and I just stopped going.

...

Q. What about programming, were you allowed to go to Catholic programming?

A. No. Those were during the day. That's when she really got me. Then on Tuesday night she was there late. She was there until 8 o'clock at night. That was her late night. She

made sure that the officer knew I was not supposed to be there.

(Hare Dep. at 106–07).

Plaintiff does not identify the officers involved or specify the dates on which she was allegedly told to leave the chapel. Plaintiff also provides no basis for her claim that, when they allegedly told her to leave, the officers were acting at the direction of Lopez, and does not claim to have observed Lopez giving any officer such instructions. Officers Ruiz and Magoo, who were stationed outside the 112 Chapel during the period in question, have affirmed that they never received any such instruction from Lopez. Ruiz Aff. ¶ 3; Magoo Aff. ¶ 3. Thus, Plaintiff has not presented any admissible evidence that would support her claim that Lopez prevented her from attending Mass or other religious services, and the record suggests that she was not denied entry to Mass.

**\*11** Moreover, it is unclear whether being told to leave the chapel "a couple of times" (Hare Dep. at 107)—even when the evidence is viewed most favorably to Plaintiff— rises to the level of a "substantial burden" on Hare's religious freedom. It is undisputed that Hare's right to free exercise of religion includes the right to attend religious services. *O'Lone*, 482 U.S. 342, 348 (1987). However, that right is not unlimited or absolute, but is subject to limitations that arise both as a consequence of being incarcerated and from "valid penological objectives." *Id.* Because Plaintiff provides no particulars as to the dates and times when she was allegedly prevented from attending Mass, and does not identify the officers who allegedly prevented her from doing so, her claims are too vague to permit the Court to determine both that the alleged removal actually occurred and, if it did, whether it was justified by a compelling government interest. *See Skoros*, 437 F.3d at 39.

In view of all of these circumstances, the Court concludes that Hare's claim that her freedom of religion was infringed is not based on facts that would entitle her to relief pursuant to § 1983. *See Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir.1986) (summary judgment stage is appropriate juncture for *pro se* plaintiffs to make clear the facts that they believe support their claims, and for a court to grant summary judgment where the underlying facts are insufficient).

*Plaintiff's Reference to Additional Witnesses Does Not Merit a Denial of Summary Judgment*

Plaintiff claims that Defendants' motions for summary judgment should be denied on the grounds that two witnesses have yet to file affidavits. Four months have passed since Defendants filed their motions for summary judgment, and Plaintiff has not attempted to submit these additional affidavits. Furthermore, Plaintiffs' description of what their witnesses will say demonstrates that they would not rescue her claims.

Plaintiff contends that Inmate Lucy Tuttle observed Lopez verbally abuse and physically threaten her in the chapel on August 18, 2008 and in the subsequent meeting on that same day (to the extent that these are separate instances). As was discussed above, Lopez's alleged verbal abuse does not support a § 1983 claim for cruel and unusual punishment, as Plaintiff alleges.

Plaintiff also contends that Lieutenant Collins was Sergeant Collins at the time Lopez prevented Plaintiff from entering her work assignment as Catholic Chaplain's Clerk, again without specifying when this occurred. Lopez's alleged refusal to allow Plaintiff to work as Catholic clerk

is insufficient to support § 1983 claim, as Lopez holds no right to her prison assignment. To the extent that Collins's affidavit would support Plaintiff's allegation that Lopez falsely reported her absent from work in retaliation for the Plaintiff's complaints, Plaintiff has not established that her complaints motivated the allegedly false reporting. Furthermore, Plaintiff cannot establish that the adverse action of her removal from her position as Catholic clerk was caused by the allegedly false reports, as Hayden cited other valid reasons for his decision to remove her.

### Conclusion

*12 For the reasons stated above, Defendants' motions for summary judgment are granted.

It is so ordered.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 1453789

Footnotes

1    To the extent that Plaintiff's allegations of retaliation are not contained in her complaint, but come from her deposition testimony and other filings, they are dismissed on this independent ground. *Kearney v. County of Rockland,* 373 F.Supp.2d 434,440–41 (S.D.N.Y.2005) ("plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.")

2    Plaintiff contends that she did show up for work but was sent away by Lopez. This claim against Lopez is addressed, infra.Hayden's reliance on Lopez's absence report was reasonable and was a legitimate basis for Hayden's decision to dismiss Plaintiff.

3    A plaintiff does have a claim "where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights."*Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988). However, as discussed above, Plaintiff, to the extent she makes such a claim, fails to establish that Lopez was motivated by Plaintiff's complaints when she filed the allegedly false report.

4    As with her retaliation claims, to the extent that Plaintiff's allegations of infringement on her rights to practice her religions are not contained in her complaint, but come from her deposition testimony and other filings, they are dismissed on this independent ground. Kearney, 373 F.Supp.2d at 440–41.

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 5278543
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Hector LAPORTE, Plaintiff,
v.
Correction Sergeant FISHER and
Correction Officer Banks, Defendants.

No. 11 Civ. 9458(PKC)(HBP).
|
Oct. 24, 2012.

### *MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge.

**\*1** Plaintiff Hector Laporte, proceeding *pro se,* brings this action pursuant to 18 U.S.C. § 1983 against Correction Sergeant Fisher and Correction Officer Banks in their individual and official capacities. Plaintiff asserts that defendants used excessive force against him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Defendants Fisher and Banks move to dismiss the claims against them to the extent they are sued in their official capacities, as these claims are barred by the Eleventh Amendment. Defendant Banks further moves to dismiss all claims against him on the grounds of failure to state a claim upon which relief can be granted, qualified immunity, and failure to comply with the administrative exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e (the "PLRA"). For the reasons stated below, defendants' motion to dismiss all claims against them in their official capacities on the grounds of Eleventh Amendment immunity is granted. Defendant Banks' motion to dismiss on the grounds of failure to state a claim and qualified immunity is denied, and his motion to dismiss for failure to exhaust is converted into a motion for summary judgment, and denied.

### BACKGROUND

Plaintiff is an inmate at Sing Sing Correctional Facility ("Sing Sing"). (Compl.¶ I–A.) Plaintiff alleges that while incarcerated at Sing Sing, he was assaulted on April 24, 2011

by defendant Banks, and on July 4, 2011 by defendant Fisher. (*Id.* ¶ II–D.)

According to the Complaint, on April 24, 2011 plaintiff was attempting to go to the chapel when he was stopped by defendant Banks. (*Id.* ¶ II–D, Ex. B "Banks Grievance.") Defendant Banks allegedly accused plaintiff of "playing games with [defendant Banks] and the facility" by "using the chapel as a way just to come out of [plaintiff's] cell."(*Id.* Ex. B.) Defendant Banks then asked plaintiff for his identification card. Upon production of the identification card, plaintiff alleges that defendant Banks "became aggressive, and started pushing, shoving, and eventually punched [plaintiff] in the stomach."(*Id.*) The impact of the punch allegedly caused plaintiff to lose his breath. (*Id.*) Plaintiff asserts that defendant Banks continued to threaten and harass him for a period of time following this incident, such that plaintiff has been afraid to come out of his cell "for fear that CO. Banks will assault [plaintiff], set [plaintiff] up, or have [plaintiff] beaten by other officers."(*Id.*)

Plaintiff further alleges that he was assaulted by defendant Fisher on July 4, 2011. (*Id.* ¶ II–D, Ex. A "Fisher Grievance .") According to the Complaint, plaintiff approached defendant Fisher in his office regarding a problem with a disbursement form for plaintiff's legal mail. Upon bringing the problem to defendant Fisher's attention, plaintiff asserts that defendant Fisher became "very aggressive" and shouted expletives at plaintiff. (*Id.* Ex. A) As plaintiff attempted to leave defendant Fisher's office, Fisher allegedly pulled plaintiff back into the office and "repeatedly punched [plaintiff's] face until [plaintiff] was unconscious."(*Id.*) Plaintiff allegedly regained consciousness later in his cell "with swollend [sic] and bruised [sic] on [plaintiff's] face and body."(*Id.*) Plaintiff asserts that when he awoke, "Sergeant Fisher was shaking me awake and he spit on my face."(*Id.*) Defendant Fisher then allegedly handcuffed plaintiff and told plaintiff he was going to take him to the hospital. (*Id.*) Because plaintiff "couldn't barely walk at this point," plaintiff asserts that he "was literally dragged out the gallery," "thrown down the stairs," then dragged "down 32 flights of stairs on [plaintiff's] back," at which point defendant Fisher took plaintiff to the hospital. (*Id.* ¶ II–D, Ex. A.) In addition to a swollen and bruised face, plaintiff claims he suffered "cervical and lumbar spinal injuries" and "was hospitalized for one month." (*Id.* ¶ III.)

**\*2** Plaintiff filed this Complaint on December 21, 2011, alleging that defendants' assaults violated the

Eighth Amendment prohibition against cruel and unusual punishment. (Docket # 1.) Plaintiff seeks $2 million in compensatory and punitive damages. (Compl.¶ V.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). " 'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 555).

In considering a Rule 12(b)(6) motion to dismiss, all non-conclusory factual allegations are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *See In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (per curiam). Moreover, plaintiff's pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."*Boykin v. KeyCorp,* 521 F .3d 202, 214 (2d Cir.2008) (internal quotations omitted). The plaintiff's pleadings are thus given a liberal and generous construction and are read "to raise the strongest arguments that they suggest."*Triestman v. Fed–Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal citation omitted).

In assessing the complaint, a court may consider documents incorporated by reference or attached to the complaint as exhibits, documents the plaintiff knew of or possessed and relied upon in framing the complaint, and items of which judicial notice maybe taken. *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993). Here, plaintiff has attached relevant documents to the complaint, and these materials are properly considered on the motion.

## DISCUSSION

### I. *Defendants' Motion to Dismiss All Claims Against Them in Their Official Capacities is Granted.*

Plaintiff sues the defendants in both their official and individual capacities. Absent a waiver or valid congressional override, the Eleventh Amendment has been construed to bar an action for damages by a private plaintiff against the state. *Seminole Tribe v. Florida,* 517 U.S. 44, 54 (1996). This immunity extends to state officials acting in their official capacity. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985).Section 1983 does not abrogate Eleventh Amendment immunity. *See Edelman v. Jordan,* 415 U.S. 651, 675–77 (1974). Damages are thus not recoverable in a section 1983 action against state officials acting in their official capacities. *See, e.g., Davis v. New York,* 316 F.3d 93, 101–02 (2d Cir.2002).

**\*3** Since plaintiff exclusively seeks monetary damages, not prospective injunctive relief, *see Ex Parte Young,* 209 U.S. 123 (1908), defendants' motion to dismiss all claims against them in their official capacities is granted. Eleventh Amendment immunity has no bearing on claims asserted against defendants in their individual capacities.

### II. *Defendant Banks' Motion to Dismiss For Failure to State a Claim is Denied.*

Defendant Banks asserts that plaintiff has failed to state a claim for relief. There is no dispute that Banks was acting under color of state law at all times alleged in the complaint. Nor is it contested that the right to be free from excessive force is protected under the Eighth Amendment. *See Graham v. Connor,* 490 U.S. 386, 395 n. 10 (1989) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.'") (quoting *Whitley v. Albers,* 475 U.S. 312, 327 (1986)). Defendant Banks argues that plaintiff has failed to allege any injuries as a result of Banks' alleged conduct, and that plaintiff's allegations are thus insufficient to state an Eighth Amendment claim. Defendant Banks relies on *Johnson v. Glick* 481 F.2d 1028, 1033 (2d. Cir.1973), for the proposition that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ...," violates the Constitution, and *Wilkins v. Gaddy,* 130 S.Ct. 1175, 1178 (2010), for the proposition that "not every malevolent touch by a prison guard gives rise to a federal cause of action."

Defendant Banks' reliance on these cases is misplaced. Plaintiff does not assert that defendant Banks "pushed" or "shoved" him. Rather, plaintiff alleges that defendant Banks "punched [plaintiff] in the stomach," causing plaintiff to "los[e][his] breath." (Compl.¶ II–D, Ex. B.) More significantly, the Supreme Court was clear in *Wilkins* that in

assessing an Eighth Amendment claim, the " 'core judicial inquiry' ... was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Wilkins,* 130 S.Ct. at 1178 (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). As plaintiff alleges that the punch was not the result of "a good-faith effort to maintain or restore discipline," but rather a "willfully malicious" action, (Compl.¶ V), which resulted from defendant Banks "harrassing (sic)" him, (*Id.* ¶ II–D), the Court concludes that plaintiff has pled sufficient facts to state a claim of use of excessive force, for which Section 1983 provides a remedy. Defendant Banks' motion to dismiss on these grounds is therefore denied.

### III. *Defendant Banks' Motion to Dismiss on the Ground of Qualified Immunity is Denied.*

Defendant Banks asserts that he is protected by qualified immunity against any Section 1983 claims, because the alleged punch did not violate any clearly established federal law. Defendant Banks does not cite any relevant Eighth Amendment case law in support of this argument. Rather, he merely states that the alleged punch "caused no injuries and [was] de minimus," and thus "did not violate any clearly established federal law."(Def.Mem.7.)

 **\*4** "The right of an individual not to be subjected to excessive force has long been clearly established."*Calamia v. City of New York,* 879 F.2d 1025, 1036 (2d Cir.1989). As discussed in the preceding section, plaintiff does not allege de minimus use of force, and there is no indication from the pleadings that force was necessary to maintain or restore discipline. An objectively reasonable corrections officer would have understood that punching an inmate in the stomach, for no purpose other than to harass him, would constitute excessive force in violation of the Eighth Amendment. *See Wilkins,* 130 S.Ct. at 1178. Plaintiff has thus sufficiently pled a violation of a clearly established federal right, and defendant Banks is not entitled to qualified immunity.

### IV. *Defendant Banks' Motion to Dismiss For Failure to Exhaust Under the PLRA is Converted to a Motion for Summary Judgment, and Denied.*

Defendant Banks asserts that plaintiff has failed to administratively exhaust his claim, as is required by the PLRA. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title,

or any other Federal law, by a prisoner confined in any ... correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a)."[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Hill v. Curcione,* 657 F.3d 116, 124 (2d Cir.2011) (quoting *Porter v. Nussle,* 534 U.S. 516, 532 (2002))."There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."*Jones v. Bock,* 549 U.S. 199, 211 (2007).

In order to properly exhaust administrative remedies under the PLRA, inmates must complete the administrative review process in accordance with the rules of the particular institution which they are confined. *Jones,* 549 U.S. at 218. In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has established a three-step inmate grievance procedure. This procedure is set forth in N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(2010).

First, an inmate must submit a grievance complaint to the clerk within twenty-one calendar days of an alleged occurrence. Id at (a). The Inmate Grievance Resolution Committee ("IGRC") then has up to sixteen calendar days to resolve the issue informally. *Id.* at (b)(1). If there is no informal resolution, the IGRC shall conduct a hearing within sixteen calendar days of receipt of the grievance, and issue a written decision within two working days of the close of the hearing. *Id.* at (b)(2). Next, an inmate must appeal an adverse decision to the facility superintendent within seven calendar days after receipt of the IGRC's written decision. *Id.* at (c)(1). The superintendent then has twenty days to render a decision. *Id.* at (c)(3). Finally, the inmate must appeal to the Central Office Review Committee ("CORC") within seven calendar days after receipt of the superintendent's written response, *id.* at (d)(1), and the CORC must render its final decision on the grievance within thirty calendar days from the time the appeal was received, *id.* at (d)(2). Only after an inmate has exhausted all three steps of this grievance process may he commence suit in federal court. *See Porter,* 534 U.S. at 524.

### a. *Defendant Banks' Motion to Dismiss on Rule 12(b)(1) Grounds is Denied.*
 **\*5** Defendant Banks seeks dismissal pursuant to Rule 12(b)(1) and (6), but fails to specify the precise Rule 12(b) grounds under which he seeks dismissal for failure to exhaust. As the

PLRA's exhaustion requirement is not jurisdictional in nature, *Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003), the Court cannot dismiss plaintiff's action for lack of subject matter jurisdiction. Thus, to the extent that the motion at bar is brought pursuant to Rule 12(b)(1), it is denied.

**b. *Defendant Banks' Motion to Dismiss on Rule 12(b) (6) Grounds is Converted To a Motion for Summary Judgment.***

Defendant Banks also seeks dismissal for failure to exhaust pursuant to Rule 12(b)(6). Failure to exhaust is an affirmative defense under the PLRA and "inmates are not required to specially plead or demonstrate exhaustion in their complaints."*Jones,* 549 U.S. at 216. Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint. *See McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) (Chin, J.).

Here, plaintiff states in the Complaint that he filed a grievance with Sing Sing's grievance office, and that his claims were denied. (Compl.¶ IV.) Plaintiff further states he

> appealed to the superintendent Philip D. Heath and [his] appeal was denied. [He] then appealed to Albany N.Y. CORC and received a letter from them dated November 2nd 2011 claiming they would look into the matter. However as of today [he] ha[sn't] heard back from CORC.

(Compl.¶ IV–E(3).) Nonexhaustion is thus not apparent from the face of the complaint, and dismissal pursuant to Rule 12(b)(6) is inappropriate.

However, as then-District Court Judge Chin has noted,

> If nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted, pursuant to Rule 12(b) [now codified in relevant part as Rule 12(d) ], to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or

whether exhaustion might be, in very limited circumstances, excused.

*McCoy,* 255 F.Supp.2d at 251. Under Rule 12(d), Fed.R.Civ.P., if "matters outside the pleadings are presented to and not excluded by the court" on a motion under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56."Moreover, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."*Id.* Accordingly, "a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings," so long as "the court give [s] sufficient notice to an opposing party and an opportunity for that party to respond.' " *Hernandez v. Coffey,* 582 F.3d 303, 307 (2d Cir.2009) (quoting *Groden v. Random House, Inc.,* 61 F.3d 1045, 1052 (2d Cir.1995)).

**\*6** In *Hernandez v. Coffey,* the Second Circuit expounded on the notice requirement with regards to *pro se* parties. *Hernandez,* 582 F.3d at 307–09. The court began by noting that formal notice is not ordinarily required "where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.' " *Id.* at 307 (alteration in original) (quoting *Villante v. Dep't of Corrections of City of New York,* 786 F.2d 516, 521 (2d Cir.1986)). However, in the case of a pro se party, " '[n]otice is particularly important' because the *pro se* litigant 'may be unaware of the consequences of his failure to offer evidence bearing on triable issues.' " *Id.* (alteration in original) (quoting *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983)). Accordingly, the court ruled that "absent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 ... he or she must be so informed by the movant in the notice of motion or, failing that, by the district court." Id at 308 (citing *McPherson v. Coombe,* 174 F.3d 276 (2d Cir.1999)).

Here, defendant Banks provided to plaintiff precisely the kind of notice required by *Hernandez.*In accordance with S.D.N.Y. Civil Rules 12.1 and 56.2, defendant Banks served plaintiff with notice that the motion to dismiss might be converted to a summary judgment motion, explaining to plaintiff what he had to do to oppose summary judgment. ("Notice to Pro Se Litigants Opposing Motion to Dismiss or Motion for Summary Judgment," dated March 26, 2012, Docket # 19.) *See Hernandez,* 582 F.3d at 309 n. 2 (in reversing the district court, noting that two cases relied

upon by the district court were "inapposite because the defendants in each case provided notice pursuant to S.D.N.Y. Civil Rule 12.1 explaining that their motions to dismiss might be converted into motions for summary judgment for purposes of determining exhaustion, and, further, explaining what the plaintiff had to do to oppose summary judgment". Accordingly, the Court concludes that converting the motion to dismiss to a motion for summary judgment is appropriate.

### c. *Defenant Banks' Motion for Summary Judgment is Denied.*

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.,* 687 F.3d 554, 558 (2d Cir.2012).

"[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Svcs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d. Cir.1994). In response, the nonmovant bears only a "limited burden of production," *Powell v Nat'l Bd. of Medical Examiners,* 364 F.3d 79, 84 (2d Cir.2004), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought," *Gallo,* 22 F.3d at 1223. Moreover, the Second Circuit has "long recognized that summary judgment is a drastic device," *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n. Inc.,* 182 F.3d 157, 160 (2d Cir.1999), and "should not be granted when there are major factual contentions in dispute," *National Life Ins. Co. v. Solomon,* 529 F.2d 59, 61 (2d Cir.1975). "This is particularly so when, as here, one party has yet to exercise its opportunities for pretrial discovery." *Id.*

*7 Nonetheless, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (internal quotations omitted). If the evidence produced by the nonmovant "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

Here, there is a disputed issue of material fact as to whether plaintiff administratively exhausted his remedies. Defendant Banks has submitted evidence concerning the CORC computer database, which allegedly "contains a great deal of historical data with respect to appeals to CORC." (Bellamy Decl. ¶ 4, annexed to Harben Decl.) Defendant Banks submits that this database reveals that CORC never received any grievance appeals from plaintiff with respect to the incident at issue. However, plaintiff has declared under penalty of perjury: that he filed a grievance against defendant Banks, and that Sing Sing's Inmate Grievance Committee failed to respond; that he then appealed his grievance to the superintendent, and that the superintendent similarly failed to respond; and that he appealed to CORC, and was told that there was no record of his grievance. ("Opposition in Response to Defendants Motion to Dismiss" ¶ 1, Docket # 24; "Affidavit of Hector Laporte," Docket # 27.) This evidence, viewed in the light most favorable to the nonmoving party, raises a genuine dispute of material fact. Therefore, and particularly in light of the fact that plaintiff has "yet to exercise [his] opportunit[y] for pretrial discovery," *Solomon,* 529 F.2d at 61, summary judgment is denied. Defendant Banks is free to renew his motion for summary judgment at the close of discovery. If after a full and fair opportunity to conduct discovery, all that plaintiff is able to present is a conclusory assertion, unsupported by documentary evidence (where one would expect documentary support to exist), the defense of lack of exhaustion may look quite different.

### CONCLUSION

For the foregoing reasons and to the extent stated above, the defendants' motion to dismiss is GRANTED in part and DENIED in part. All claims against defendants Banks and Fisher in their official capacities are dismissed. All other claims, including all claims against the defendants in their individual capacities, remain pending.

The defendants shall provide to the plaintiff copies of all unreported cases cited herein. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 5278543

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1294606
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Marc LEWIS, Plaintiff,

v.

HAVERNACK, Sergeant, Mt. McGregor
Correctional Facility, et al., Defendants.

Civil Action No. 9:12–CV–0031 (GLS/DEP).
|
March 28, 2013.

**Attorneys and Law Firms**

Marc Lewis, Moravia, NY, pro se.

Hon. Eric T. Schneiderman, Office of the Attorney General,
State of New York, Department of Law, The Capitol, Gregory
J. Rodriguez, Esq., Assistant Attorney General, of Counsel,
Albany, NY, for Defendants.

### REPORT AND RECOMMENDATION

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Marc Lewis, a New York State prison
inmate with considerable prior litigation experience, has
commenced this action against five corrections officers
employed at the prison facility in which he was confined at
the relevant times, pursuant to 42 U.S.C. § 1983, alleging
deprivation of his civil rights. [1] In his complaint, plaintiff
alleges that he was assaulted by one of the defendants and
denied medical attention for his injuries arising from the
alleged assault, and that the defendants later conspired to
conceal the alleged assault. As relief, plaintiff's complaint
seeks recovery of $3 million in damages.

Currently pending before the court is a motion brought by the
defendants seeking dismissal of plaintiff's complaint based on
his failure to exhaust administrative remedies, and for failure
to state a claim as it relates to all of plaintiff's causes of
action with the exception of his Eighth Amendment excessive
force claim. For the reasons set forth below, I recommend
that defendants' motion to dismiss for failure to exhaust be
denied as premature, without prejudice, but that their motion
otherwise be granted.

## I. BACKGROUND [2]

Plaintiff is a New York State prison inmate currently being
held in the custody of the New York State Department
of Corrections and Community Supervision ("DOCCS"). *See
generally* Complaint (Dkt. No. 1). While he is now
incarcerated elsewhere, at the times relevant to his claims
in this action, plaintiff was confined in the Mt. McGregor
Correctional Facility ("Mt.McGregor"), located in Wilton,
New York. *Id.*

During the week of February 19, 2009, plaintiff filed
a complaint with Mt. McGregor Superintendent William
T. Hagget, accusing corrections officers of stealing and
consuming state food products. Complaint (Dkt. No. 1)
at 6. Plaintiff was interviewed by a corrections lieutenant
on February 14, 2009, concerning the complaint, and was
advised that the matter would be addressed. *Id.*

On February 15, 2009, plaintiff was subjected to an
unauthorized search of his prison cell by several corrections
officers, all of whom threatened him. Complaint (Dkt.
No. 1) at 7. Plaintiff attributes the search and threats
to his complaint to Superintendent Hagget concerning the
conduct of corrections officers. *Id.* In the morning of
February 16, 2009, plaintiff mailed another written complaint
regarding corrections officers stealing and consuming state
food products to Mt. McGregor Superintendent Hagget and
DOCCS Commissioner Brian Fischer. *Id.* at 9.

On February 20, 2009, plaintiff was asked to voluntarily
meet with defendant Havernack, a corrections sergeant, to
discuss his complaints. Complaint (Dkt. No. 1) at 9. Believing
the meeting to be a "set up," plaintiff refused to attend and
retreated to his cell. *Id.* After returning to his cell, defendant
Havernack and two other unidentified officers arrived at
plaintiff's cell, placed him in handcuffs, and escorted him to
the basement of Mt. McGregor's administration building. *Id.*
at 10.Upon arriving, and while still in handcuffs, plaintiff was
placed in a chair in front of a desk, behind which defendant
Sheridan, a corrections lieutenant, was sitting. *Id.* At some
point during the meeting defendant Sheridan stood up, walked
behind plaintiff, and struck plaintiff on the right side of
the face with a closed fist, rendering Lewis unconscious
and knocking him out of his chair. *Id.* at 12.As a result of
the incident, Lewis experienced injuries to his right upper
facial cheek and lower eyelid, as well as his left upper facial

cheek. *Id.* Upon returning to consciousness, plaintiff's several requests for medical attention were denied. *Id.* at 13–14.

**\*2** Shortly following the incident, defendants Imfeld and Johnson, together with an unidentified corrections sergeant, escorted plaintiff to a waiting van, where he was transported out of Mt. McGregor. Complaint (Dkt. No. 1) at 15.As the van left the facility, plaintiff continued to complain of his injuries and request medical attention. *Id.* at ¶ 31.Those requests were denied.*Id.* Eventually, after plaintiff threatened to cause an accident if he was not provided medical attention, defendants Imfeld and Johnson returned the van to Mt. McGregor, where plaintiff was taken to the prison infirmary, and ultimately seen by medical personnel. *Id.* at 15–16.

## II. *PROCEDURAL HISTORY*

Plaintiff's complaint in this action was filed on January 9, 2012. Complaint (Dkt. No. 1). That complaint names Corrections Sergeant Havernack, Corrections Lieutenant Sheridan, and Corrections Officers Chapman, Johnson and Imfeld, all of whom were stationed at Mt. McGregor at the relevant times, as defendants, and sets forth five causes of action, including excessive force and deliberate indifference claims under the Eighth Amendment, a claim for conspiracy to violate his Eighth Amendment rights, and claims that are based upon alleged threats by defendants and the issuance of a false misbehavior report. *Id.*

In answer to plaintiff's complaint, defendants moved for its dismissal on July 3, 2012, arguing that plaintiff's claims are precluded based upon his failure to exhaust available administrative remedies, and additionally that all of his claims, except the excessive force claim, fail to state a claim upon which relief may be granted. Dkt. No. 30.Plaintiff has since responded in opposition to defendants' dismissal motion. Dkt. No. 42.In addition, plaintiff seeks leave, by motion filed on September 21, 2012, to file an amended complaint in the action. Dkt. No. 46.Plaintiff's motion for leave to amend has been opposed by defendants on the basis of futility. Dkt. No. 47.

The parties' cross-motions, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to [28 U.S.C. 636(b)(1)(B)](#) and Northern District of New York Local Rule 72.3(c).*See*[Fed.R.Civ.P. 72(b)](#).

## III. *DISCUSSION*

### A. *Dismissal Standard*
A motion to dismiss a complaint, brought pursuant to [Rule 12(b) (6) of the Federal Rules of Civil Procedure](#) calls upon a court to gauge the facial sufficiency of that pleading using a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *[Ashcroft v. Iqbal,](#)* [556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)](#) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007)). Under [Rule 8(a)(2) of the Federal Rules of Civil Procedure](#), "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal,* 556 U.S. 677–78 (quoting [Fed.R.Civ.P. 8(a)(2)](#)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id* . at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

**\*3** In deciding a [Rule 12(b)(6)](#) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *[Erickson v. Pardus,](#)* [551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)](#) (citing *[Twombly,](#)* [550 U.S. at 555–56](#));*see also [Cooper v. Pate,](#)* [378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)](#); *[Miller v. Wolpoff & Abramson, L.L.P.,](#)* [321 F.3d 292, 300 (2d Cir.2003)](#); *[Burke v. Gregory,](#)* [356 F.Supp.2d 179, 182 (N.D.N.Y.2005)](#) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *[Iqbal,](#)* [556 U.S. at 678.](#)

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *[Iqbal,](#)* [556 U.S. at 678](#) (quoting *[Twombly,](#)* [550 U.S. at 570](#));*see also [Ruotolo v. City of New York,](#)* [514 F.3d 184, 188 (2d Cir.2008)](#). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *[In re Elevator Antitrust Litig.,](#)* [502 F.3d 47, 50 (2d Cir.2007)](#) (quoting *[Twombly,](#)* [550 U.S. at 570](#)) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *[Erickson,](#)* [551 U.S. at 94](#) (" '[A] *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) ("[W]hen a plaintiff proceeds *pro se,* a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.,* 804 F.Supp.2d 100, 104 (N.D.N.Y.2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

**B.** *Exhaustion of Remedies*
The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ( "Exhaustion is ... mandatory. Prisoners must now exhaust all 'available' remedies[.]"); *Hargrove v. Riley,* No. 04–CV–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan.31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). [3] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

***4** The failure of a prisoner to satisfy the PLRA's exhaustion requirement is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Block,* 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). In the event the defendant establishes that the inmate plaintiff failed "to fully complete[ ] the administrative review process" prior to commencing the action, the plaintiff's complaint is subject to dismissal. *Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl [ying]

with the system's critical procedural rules." *Woodford,* 548 U.S. at 95; *see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ).

Here, defendants argue that plaintiff's claims are barred based upon plaintiff's alleged failure to comply with the exhaustion requirement pursuant to the PLRA. Defs.'s Memo. of Law (Dkt. No. 30, Attach.1) at 5–7. In support, defendants have filed a declaration from Jeffrey Hale, the Assistant Director of the Inmate Grievance Program with DOCCS, who avers that, based on an examination of DOCCS's records, plaintiff "did not pursue a grievance appeal to CORC regarding an incident date of February 15, 2009[,] or February 20, 2009, including the issues presented in this complaint[.]" Hale Decl. (Dkt. No. 30, Attach.3) at ¶ 4. In response, plaintiff concedes that he did not file a grievance with regard to the alleged assault on February 20, 2009, because he argued these issues, instead, "at his multiple hearing proceedings," including "Superintendent hearing proceedings"—which I have presumed to be a reference to a disciplinary hearing —and his administrative appeal to the Commissioner. Plf.'s Memo. of Law (Dkt. No. 42) at 9–10.

The exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred. *See, e.g., Laporte v. Fisher,* No. 11–CV–9458, 2012 WL 5278543, at *5 (S.D.N.Y. Oct.24, 2012) ("Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint."(citing *McCoy v. Goord,* 255 F.Supp.2d 233, 251, (S.D.N.Y.2003)). In this instance, plaintiff's complaint alleges that he filed more than one grievance related to the facts in his complaint, and that his grievance was denied. Complaint (Dkt. No. 1) at 4. Plaintiff's complaint also alleges that he filed complaints to the DOCCS Commissioner, as well as the Superintendent at Mt. McGregor. *Id.* Considering these allegations, which are contained in the four corners of plaintiff's complaint, I conclude that there is sufficient doubt as to whether plaintiff exhausted his administrative remedies to deny defendants' motion to dismiss on this ground. *See Laporte,* 2012 WL 5278543, at *5 (holding that, absent a clear indication from the face of the complaint that a plaintiff has failed to exhaust, dismissal pursuant to Rule 12(b) (6) is not appropriate).

***5** While defendants have submitted extrinsic evidence, including the Hale declaration, calling into question plaintiff's representation that exhaustion has been accomplished, such

extrinsic materials are not properly considered on a motion to dismiss. It is true that one potential course would be to convert the motion into one for summary judgment, pursuant to Rule 12(d), so that the extrinsic materials would then properly be considered. *See McCoy,* 255 F.Supp.2d at 251 ("If nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted ... to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused."). I recommend against conversion, however, since the plaintiff has not been put on notice that such a conversion was a possibility, or of the possible consequences of such a conversion. *See Hernandez v. Coffey,* 582 F.3d 303, 308 (2d Cir.2009) ("[A]bsent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 [governing motions for summary judgment] ... he or she must be so informed by the movant in the notice or, failing that, by the district court.").

Moreover, although plaintiff has apparently conceded that he did not "proper [ly] exhaust[ ]" his claims, *Woodford,* 548 U.S. at 95, relating to the February 20, 2009 incident, he argues that he satisfied his exhaustion obligation by making his arguments during "multiple hearing proceedings," including "Superintendent hearing proceedings" and on appeal after he was found guilty. Plf.'s Memo. of Law (Dkt. No. 42) at 9. I note that "under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding."*Murray v. Palmer,* No. 03–CV–1010, 2010 WL 1235591, at *3 (Mar. 31, 2010) (Suddaby, J.) (emphasis omitted), *accord, Barksdale v. Frenya,* No. 10–CV–0831, 2012 WL 4107805, at *8 (N.D.N.Y. Sept. 19, 2012) (Peebles, M.J.), *adopted in its entirety by* 2012 WL 4107801 (D'Agostino, J.); *but see LaBounty v. Johnson,* 253 F.Supp.2d 496, 501–02 (W.D.N.Y.2003) ("An appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for a [constitutional] claim, even if the hearing is based on the same set of facts underlying the grievance."(citing *McNair v. Sgt. Jones,* No. 01–CV–3253, 2002 WL 31082948, at *7 (S .D.N.Y. Sept. 18, 2002)). Because the reasons for plaintiff's choice to pursue his complaints through a disciplinary proceeding are far from clear at this early stage of the action, I am unable to make a determination as to whether plaintiff may be excused from properly exhausting his administrative remedies.

For all of these reasons, I recommend that defendants' motion to dismiss on the basis of plaintiff's alleged failure to exhaust be denied, without prejudice to defendants' right to raise the defense at a point when it can be analyzed based upon a more fully developed record.

### C. *Eleventh Amendment*

**\*6** Plaintiff's complaint alleges that, at the relevant times, the named defendants were acting both in their individuals and official capacities in violating the plaintiff's constitutional rights. Complaint (Dkt. No. 1) at 1. In their motion to dismiss, defendants argue that, to the extent they are sued in their official capacities, plaintiff's claims are precluded under the Eleventh Amendment. Defs.' Memo. of Law (Dkt. No. 30) at 7–8.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.*Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. [4] *See, e.g., Daisernia v. State of New York,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official."(quoting *Edelman,* 415 U.S. at 663)); *see also Richards v. State of New York App. Div., Second Dep't,* 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing, *inter alia, Cory v. White,* 457 U.S. 85, 89–91, 102 S.Ct. 2325, 72 L.Ed.2d 694, (1982))."To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." [5] *Ying Jing Gan,* 996 F.2d at 529;*see also Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff's damage claims in this action against the named-defendants in their official capacities are, in reality, claims against the State of New York. *Daisernia,* 582 F.Supp. at

798–99. They are therefore subject to dismissal. Accordingly, I recommend that, to the extent that any of the claims asserted in plaintiff's complaint are asserted against any of the named-defendants in their official capacities, those claims be dismissed with prejudice.

### D. *Deliberate Medical Indifference*

Plaintiff's complaint alleges that he requested and was denied immediate medical treatment by various correctional officers, including defendants Imfeld and Johnson, after he was allegedly punched and rendered unconscious by defendant Sheridan on February 20, 2009. Complaint (Dkt. No. 1) at 13–14. Plaintiff's complaint also alleges that he was not provided medical assistance until, while being transferred out of Mt. McGregor and into another facility, he threatened to cause an accident on the highway if defendants Imfeld and Johnson did not return him to the Mt. McGregor infirmary. *Id.* at 15–16. Defendants argue that the nature of plaintiff's alleged injuries and the modest delay in providing plaintiff medical treatment do not give rise to a plausible claim for medical indifference. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 8–10.

**\*7** The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society [,]' or which 'involve the unnecessary and wanton infliction of pain [.]' " *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 100–01, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) and *Gregg v. Georgia,* 428 U.S. 153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (internal citations omitted)). While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle,* 429 U.S. at 103. Failure to provide inmates with medical care, "[i]n the worst cases, ... may actually produce physical torture or lingering death, [and] ... [i]n less serious cases, ... may result in pain and suffering no one suggests would serve any penological purpose." *Id.*

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by inflicting cruel and unusual punishment must satisfy both objective and subjective requirements. *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009); *Price v. Reilly,* 697 F.Supp.2d 344, 356 (E.D.N.Y.2010). To satisfy the objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable medical care .... Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.

*Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006) (internal citations omitted).

The second inquiry of the objective test requires a court to look at the seriousness of the inmate's medical condition if the plaintiff alleges a complete failure to provide treatment. *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin,* 467 F.3d at 280 (internal quotation marks and alterations omitted).

If, on the other hand, a plaintiff's complaint alleges that treatment was provided but was inadequate, the second inquiry of the objective test is narrowly confined to that specific alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *Salahuddin,* 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, [the focus of the] inquiry [is] on the challenged delay or interruption in treatment, rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith,* 316 F.3d at 185) (internal quotations marks omitted).

**\*8** To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' " *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999). "In medical-treatment cases ..., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin,* 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citing *Farmer,* 511 U.S. at 837);*see also Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Farmer* ); *Waldo v. Goord,* No. 97–CV–1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin,* 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839–40).

Applying this legal framework to this action, I conclude that plaintiff's complaint fails to allege facts that plausibly satisfy either the objective or subjective requirements. First, although plaintiff's complaint alleges that defendants Imfeld and Johnson denied him medical care shortly after he regained consciousness, it does not provide a time frame indicating how long they denied plaintiff medical care. *See generally* Complaint (Dkt. No. 1) at 13–16.Plaintiff's complaint does show that, at some point after, and on the same day, the alleged assault by defendant Sheridan, he was treated at the Mt. McGregor infirmary for his injuries. *Id.* at 16.Accordingly, I am unable to determine whether the facts alleged plausibly suggest that defendants Imfeld and Johnson acted unreasonably under the circumstances as it relates to how quickly they provided plaintiff with medical treatment. *See Salahuddin,* 467 F.3d at 279–80 ("Thus, prison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishment Clause[.]" (internal quotation marks and alterations omitted)); *see also Herbert v. NYC Dep't of Corrs.,* No. 10–CV–8799, 2012 WL 3834660, at *4 (S.D.N.Y. Aug.21, 2012) (finding that the plaintiff's complaint failed to state a claim for deliberate indifference where the plaintiff "concede[d] ... that he ultimately did receive medical treatment on the same days that he alerted Captains Williams and Brown to his condition"); *Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y. May 21, 2001) (finding that the plaintiff's

complaint failed to state a claim for deliberate indifference where the plaintiff suffered an injury to his finger and waited for three and one-half hours for treatment).

**\*9** In addition, and more persuasively, plaintiff's complaint fails to allege facts plausibly suggesting that the alleged denial of medical care was "sufficiently serious." *See Salahuddin,* 467 F.3d at 280 (requiring, when conducting the objective test, to determine, at the second inquiry, whether "the inadequacy of medical care is sufficiently serious"). To make this determination when a plaintiff, as in this case, alleges a "failure to provide any treatment," the court "examine[s] whether the inmate's medical condition is sufficiently serious."*Id.* (citing *Smith,* 316 F.3d at 185–86). Plaintiff's complaint alleges only that he suffered injuries to his "upper facial cheek and lower eyelid, as well as [his] left upper cheek" after being punched just once. Complaint (Dkt. No. 1) at 12.These allegations regarding his injuries do not plausibly suggest that plaintiff's daily activities were "significantly affect[ed]," or that his condition "cause[d] chronic or substantial pain."*See Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (listing that some of the factors relevant to determining the seriousness of a medical condition include "the presence of a medical condition that significantly affects an individual's activities[,] or the existence of a chronic and substantial pain"). In addition, these allegations suggest plaintiff suffered only minor injuries, which are not sufficiently serious to state a deliberate indifference claim under the Eighth Amendment. *See, e.g., Harris v. Morton,* No. 05–CV–1049, 2008 WL 596891, at *3, n. 2 (N.D.N.Y. Feb. 29, 2008) (Kahn, J. and Treece, M.J.) (noting that, although plaintiff stated he suffered from a "snapped" neck, he had not indicated that he suffered from anything other than a generic neck injury); *Bennett v. Hunter,* No. 02–CV–1365, 2006 WL 1174309, *3 (N.D.N.Y. May 1, 2006) (Scullin, S.J. and Lowe, M.J.) (finding that a pinched nerve in one's wrist is not a serious medical need); *Jones v. Furman,* No. 02–CV–939F, 2007 WL 894218, at *10 (W.D.N.Y. Mar.21, 2007) (finding that soreness, pain in, and a lump behind, his right ear, lump on the back of his head, small abrasions on his nose and knuckle, and bruising to his back, ribs, and legs, do not constitute the requisite serious medical need) (citing *Hemmings v. Gorczyk,* 134 F.3d 104, 109 (2d Cir.1998)); *Tapp v. Tougas,* No. 05–CV–0149, 2008 WL 4371766, at *9 (N.D.N.Y. Aug.11, 2008) (Peebles, M.J.), *Report and Recommendation Adopted in Part and Rejected in Part,*2008 WL 4371762 (N.D.N.Y. Sept.18, 2008) (Mordue, C.J.), (noting that a "dull pain" in plaintiff's back and kidney area and persistent rash on plaintiff's foot did not raise a

constitutional issue) (citing *Peterson v. Miller,* No. 04–CV–0797, 2007 WL 2071743, at *7 (N.D.N.Y. July 13, 2007) (Hurd, J. and Peebles, M.J.); *Salaam v. Adams,* No. 03–CV–0517, 2006 WL 2827687, *10 (N.D.N.Y. Sept. 29, 2006) (Kahn, J. and Lowe, M.J.) (finding that plaintiff's injuries did not constitute a serious medical condition where plaintiff suffered from intermittent back pain requiring pain relievers and physical therapy, a gastrointestinal problem with stomach pains, and a psychological problem requiring Wellbutrin and/or Neurontin); *see also Ford v. Phillips,* No. 05–CV–6646, 2007 WL 946703, at *12 & n. 70 (S.D.N.Y. Mar. 27, 2007) (finding that plaintiff's allegations of bruises, abrasions, slight bleeding, and scratches, did not constitute a sufficiently serious condition giving rise to a medical indifference claim); *Sonds,* 151 F.Supp.2d at 311 (holding that a cut finger, even where the skin had "ripped off" was insufficiently serious); *Bonner v. New York City Police Dep't,* No. 99–CV–3207, 2000 WL 1171150, at *4 (S.D.N.Y. Aug. 17, 2000) (holding that the inability to "close" a finger due to swelling in one's hand is insufficiently serious to constitute Eighth Amendment violation); *Gomez v. Zwillinger,* 1998 U.S. Dist. LEXIS 17713, at *16 (S.D.N.Y. November 6, 1998) (holding that back pain and discomfort were not sufficiently serious); *Jones v. New York City Health & Hosp. Corp.,* No. 84–CV–5372, 1984 WL 1280 at *1 (S.D.N.Y. November 28, 1984) (dismissing claim for deliberate medical indifference where plaintiff challenged treatment for bruises on head and body). Even construing his complaint in the light most favorable to plaintiff, I am unable to conclude that the allegations meet the objective test for a deliberate indifference claim. [6]

**\*10** Finally, even if I were to find that the allegations in plaintiff's complaint satisfy the objective test, they would not meet the subjective test. There are simply no allegations in plaintiff's complaint to plausibly suggest that, in denying plaintiff's requests for medical care, defendants Imfeld and Johnson acted with "deliberate indifference." *Salahuddin,* 467 F.3d at 280. The complaint, in contrast, alleges only that defendants Imfeld and Johnson denied plaintiff's request for medical care "after seeing [plaintiff's] injuries." Complaint (Dkt. No. 1) at 14.Bearing in mind that plaintiff's complaint provides little details as to the nature of his injuries, and only alleges that Lewis sustained an injury to his cheeks and an eyelid, I cannot conclude that, even assuming that defendants Imfeld and Johnson did deny plaintiff's medical care, that they were "actually aware of a substantial risk" to plaintiff's health in so doing. *See Salahuddin,* 467 F.3d at 280 (holding that deliberate indifference "requires that the charged official

act ... while actually aware of a substantial risk that serious inmate harm will result").

For all of these reasons, I recommend that defendants' motion to dismiss for failure to state a claim be granted as to plaintiff's deliberate indifference claim against defendants Imfeld and Johnson.

### E. *Plaintiff's Claims of Threats and Harassment*

Plaintiff's complaint alleges that, on February 15, 2009, as a prelude to the assault by defendant Sheridan, he was threatened and harassed by corrections officers, including defendant Havernack. Complaint (Dkt. No. 1) at 7. In their motion, defendants also seek dismissal of any claims that may be asserted by those allegations. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 10–11.

It is well recognized that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003); *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Thus, "[v]erbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation." *Carpio v. Walker,* No. 95–CV–1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct.15, 1997) (Pooler, J. and DiBianco, M.J.) (citing *Purcell,* 790 F.2d at 165 (holding that name-calling is insufficient to allege a constitutional violation); *see also Moncrieffe v. Witbeck,* No. 97–CV–253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (finding allegations that the defendants laughed at the plaintiff while he showered did not give rise to liability under section 1983); *Alnutt v. Cleary,* 913 F.Supp. 160, 165 (W.D.N.Y. Jan.8, 1996) ("It is well established that[ ] mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.").

In this instance, because plaintiff's allegations of threats are insufficient to support a claim under section 1983, I recommend that defendants' motion to dismiss as it relates to plaintiff's claims of verbal threats against defendant Havernack be granted.

### F. *Conspiracy*

**\*11** Plaintiff's complaint alleges the existence of a conspiracy among the defendants and other prison officials to cover-up the events giving rise to this action and falsify official documents in order to suggest that plaintiff's

injuries were self-inflicted. Complaint (Dkt. No. 1) at 13, 16.Specifically, plaintiff alleges that defendants Chapman and Imfeld conspired to violate his constitutional rights when they allegedly drafted a false misbehavior report accusing Lewis of self-inflicting the injuries, which plaintiff alleges, resulted from defendant Sheridan's assault. *Id.* at 16.Plaintiff also alleges that defendant Sheridan and Havernack conspired to conceal defendant Sheridan's alleged assault on plaintiff by moving plaintiff into a different room after the alleged assault, and refusing to provide plaintiff with immediate medical care. *Id.* at 13.Defendants seek dismissal of these claims, arguing that plaintiff's complaint fails to allege facts plausibly suggesting a conspiracy, and, in any event, the claims are barred by the intra-agency conspiracy doctrine. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 11–12.

"To prove a [section] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."*Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999); *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)."A complaint containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."*Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983).

As it relates to plaintiff's claim of conspiracy against defendants Chapman and Imfeld, "a prison inmate has no general right to be free from being falsely accused in a misbehavior report."*Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *see also Applewhite v. Sheahan,* No. 08–CV– 6045, 2013 WL 144957, at *10 (W.D.N.Y. Jan.11, 2013) (dismissing the plaintiff's claim arising from allegations that the defendant filed a false misbehavior report against the plaintiff to disguise the fact that the defendant stole the plaintiff's legal books)."There must be more, such as retaliation against the prisoner for exercising a constitutional right."*Boddie,* 105 F.3d at 862. Where an alleged false misbehavior report is filed against a prisoner, his "due process rights are protected if he is granted a hearing on the charges and given an opportunity to rebut them[.]"*Jones v. Coughlin,* 45 F.3d 677, 679 (2d Cir.1995).

Here, the allegation that defendants Chapman and Imfeld conspired to file a false misbehavior report against plaintiff is not cognizable under [section] 1983 because plaintiff has no general constitutional right to be free from being falsely

accused in a misbehavior report. *See Boddie,* 105 F.3d at 862 (dismissing the plaintiff's conspiracy claim arising from allegations that the defendants conspired to retaliate against him by filing a false misbehavior report). For this reason, I recommend defendants' motion to dismiss be granted as it relates to plaintiff's conspiracy claim asserted against defendants Chapman and Imfeld.

**\*12** As it relates to the conspiracy claim against defendants Sheridan and Havernack, I likewise find that plaintiff has failed to state a claim because there is no constitutional right to be free from the cover-up of a past constitutional violation. Generally, the case law that addresses allegations that a defendant conspired to conceal a violation of a plaintiff's constitutional rights assess whether the allegations are sufficient to state a claim of conspiracy for denying the plaintiff's constitutional right to access the courts. *See, e.g., McGarty v. Town of Carmel,* 997 F.Supp. 435, 437 (S.D.N.Y.1998) (finding that, "for purposes of a motion to amend, plaintiff has made an adequate showing of deprivation of access to courts, and plaintiff's assertions are sufficient to state a [section] 1983 conspiracy claim" where the pleadings alleged that the defendants conspired to conceal evidence that they used excessive force). Here, however, plaintiff has failed to allege any facts that plausibly suggest that his right to access the courts has been denied. Indeed, plaintiff's complaint fails to allege any facts that plausibly suggest that any of plaintiff's constitutional rights have been violated as a result of the alleged conspiracy between defendants Sheridan and Havernack to conceal defendant Sheridan's alleged assault. For this reason, I recommend that defendants' motion to dismiss plaintiff's conspiracy claim as against defendants Sheridan and Havernack be granted.

For the sake of completeness, I will also briefly address whether plaintiff's conspiracy claims are barred, as argued by defendants, by the intracorporate conspiracy doctrine. That doctrine provides that "there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation, acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."*See, e.g., Hermann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978); *see also Hartline v. Gallo,* 546 F.3d 95, 99 n. 3 (2d Cir.2008). While the Second Circuit has applied this doctrine in the context of claims arising under 42 U.S.C. § 1985, *see, e.g., Hermann,* 576 F .2d at 459; *Girard v. 94th and Fifth Ave. Corp.,* 530 F.2d 66, 72 (2d Cir.1976), it has not considered the doctrine's applicability to conspiracy claims arising under [section] 1983. *See Alvarez v. City of New*

*York,* No. 11–CV5464, 2012 WL 6212612, at *3 and n. 21 (S.D.N.Y. Dec. 12, 2012) (finding that the Second Circuit has "applied the intracorporate conspiracy doctrine to Section 1985 claims[, b]ut it has not considered its applicability to conspiracy claims brought under Section 1983"); *see also Appel v. Spiridon,* No. 06–CV1177, 2011 WL 3651353, at *19 (D.Conn. Aug. 18, 2011) (same). Because several district courts within this circuit have applied the doctrine to section 1983 claims, [7] and I have not found any controlling authority to the contrary, I find that the intracorporate conspiracy doctrine applies to the conspiracy claims against defendants Chapman and Imfeld arising under section 1983.

**\*13** As it relates to the conspiracy claims against defendants Sheridan and Havernack, however, I find that the "personal stake" exception to the intracorporate conspiracy doctrine precludes its applicability. Under this exception, the doctrine does not apply "to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity."*Bond v. Bd. of Educ. of the City of New York,* No. 97–CV–1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar.17, 1999). For the exception to apply, "[t]he plaintiff must ... allege that [the defendants] acted other than in the normal course of their corporate duties."*Girard,* 530 F.2d at 72 (internal quotation marks omitted). Here, plaintiff's complaint clearly alleges that defendants Sheridan and Havernack allegedly moved plaintiff from the location where he was allegedly assaulted while he was still unconscious and refused him immediate medical care in an attempt to conceal defendant Sheridan's alleged assault on plaintiff. Complaint (Dkt. No. 1) at 13.These allegations plausibly suggest that defendants Sheridan and Havernack acted in their own personal interest, not in the interest of DOCCS, in covering up defendant Sheridan's alleged excessive force. *See Hill v. City of New York,* 2005 WL 3591719, at *6 (E.D.N.Y. Dec.30, 2005) (finding that the plaintiff's allegations that the defendants conspired to cover-up one of the defendant's alleged use of excessive force was sufficient to apply the "personal stake" exception to the intracorporate conspiracy doctrine); *Alvarez,* 2012 WL 6212612, at *3 (same). I therefore recommend a finding that the intracorporate conspiracy doctrine does not apply to plaintiff's conspiracy claims against defendants Sheridan and Havernack.

## G. *Plaintiff's Motion for Leave to Amend*

In response to defendants' motion, plaintiff has requested leave to amend to his complaint. Dkt. No. 46.In his

proposed amended complaint, plaintiff eliminates the claims of threats and conspiracy. *See generally*Dkt. No. 46, Attach. 2. However, the proposed amended complaint retains a medical indifference claim against defendants Sheridan, Chapman, Imfeld, and Johnson.*Id.* at 13.Defendants oppose plaintiff's motion for leave to amend, arguing that the claims set forth in his proposed amended complaint are futile in light of his failure to exhaust administrative remedies, and that the allegations set forth in that pleading do not cure the deficiencies as it relates to the medical indifference cause of action. Dkt. No. 47 at 4–11.

Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure which provides, in pertinent part, that unless amendment as a matter of right is permitted—circumstance that is not applicable here—a party may amend its pleading "only with the opposing party's written consent or the court's leave. Fed. Riv. Civ. P. 15(a)(2)."The court should freely give leave when justice so requires."*Id.* Under Rule 15(a), leave to amend ordinarily should be liberally granted absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Elma RT v. Landesmann Int'l Mktg. Corp.,* No. 98–CV–3662, 2000 WL 297197, at *3 (S.D.N.Y. Mar.22, 2000) (citing *Foman* ).

**\*14** Notwithstanding the familiar and well accepted principle that leave to amend should be granted freely, if a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion, then permitting amendment would be an act of futility that should not be sanctioned. *See, e.g., Saxholm AS v. Dynal, Inc.,* 938 F.Supp. 120, 124 (E.D.N.Y.1996); *In re Boesky Sec. Litig.,* 882 F.Supp. 1371, 1379 (S.D.N.Y.1995). If, on the other hand, a "proposed claim sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny amendment."*Saxholm,* 938 F.Supp. at 124 (citing *Allstate Ins. v. Administratia Asigurarilor De Stat,* 875 F.Supp. 1022, 1029 (S.D.N.Y.1995)).

As is the case with respect to his original complaint, plaintiff's proposed amended complaint sets forth a plausible cause of action for the use of excessive force as against defendant Sheridan. [8] Dkt. No. 46, Attach. 2 at 6. Moreover, plaintiff's proposed amended complaint, like his original complaint, alleges that plaintiff fulfilled his obligation to exhaust administrative remedies before filing suit. Dkt. No. 46,

Attach. 2 at 3–4. The proposed amended complaint similarly asserts a medical indifference claim, as does its predecessor, but does not cure the deficiencies identified in this report and recommendation. For example, plaintiff's proposed amended complaint fails to allege facts plausibly suggesting that his injuries were "sufficiently serious." *See Salahuddin, 467 F.3d at 280* (finding that, to determine whether "the inadequacy of medical care is sufficiently serious" when a plaintiff alleges "failure to provide any treatment," the court "examine[s] whether the inmate's medical condition is sufficiently serious."). Instead, plaintiff's proposed amended complaint alleges only that his face "swelled up ... with his right eye shut closed" and that he experienced pain as a result of his injuries. Dkt. No. 46, Attach. 2 at 8. As a result, I find that it would be futile to permit plaintiff to file his proposed amended complaint, and therefore recommend that his motion for leave to amend be denied.

## H. *Whether to Permit Further Amendment*

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."*Branum v. Clark, 927 F.2d 698, 704–05 (2d Cir.1991); see also*Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Given the procedural history of this action, I must next determine whether to recommend that plaintiff be afforded the benefit of this general rule.

**\*15** As plaintiff seemingly recognizes, and as is reflected in his proposed amended complaint, the claims arising from allegations of the issuance of false misbehavior reports, harassment, threatening conduct, and conspiracy are not plausibly stated, nor are they likely to be in any future amended complaint. *See generally*Dkt. No. 46, Attach. 2. In contrast, while I also have significant reservations as to plaintiff's ability to state facts demonstrating the existence of a cognizable medical indifference claim for the reasons set forth above, I nonetheless recommend that he be granted leave to amend in order to attempt to plead facts that would support such a claim.

In formulating a new, amended complaint, plaintiff is advised that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless

they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (McAvoy, J.) (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)); *Pourzandvakil v. Humphry,* No. 94–CV–1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J.). In his amended complaint, plaintiff therefore must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should specifically allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986)

## IV. *SUMMARY AND RECOMMENDATION*

Plaintiff's complaint in this action states a plausible claim for use of excessive force against defendant Sheridan. However, his complaint fails to state a cognizable claim for medical indifference, filing a false misbehavior report, threats and harassment, and conspiracy against any of defendants. [9] I therefore recommend dismissal of those claims, with leave to file a proposed amended complaint, in accordance with the local rules of practice for this court, with respect to the plaintiff's medical indifference claim only.

Turning to defendants' argument that plaintiff's complaint should be dismissed on the basis of plaintiff's alleged failure to exhaust his administrative remedies, I conclude that the issue cannot be determined at this early stage of the litigation. As a result, I recommend that this portion of defendants' motion be denied, without prejudice to renewal upon a more robust record, either on motion for summary judgment or at trial.

Based upon the foregoing it is therefore hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 30) be GRANTED, and that all of plaintiff's claims, except those based upon defendant Sheridan's alleged assault of plaintiff, asserted against defendants in their individual and official capacities be DISMISSED; and it is further

**\*16** RECOMMENDED that plaintiff be given leave to replead only with respect to his deliberate medical indifference cause of action; and it is further

RECOMMENDED that plaintiff's motion for leave to amend (Dkt. No. 46) be DENIED, without prejudice to his right to submit an amended complaint to the court that cures the deficiencies identified in this report and recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1294606

Footnotes

1    In his complaint Lewis acknowledges having brought several other actions in this court, as well as the Western and Southern districts. See Complaint (Dkt. No. 1) at 4–5.A search of the Public Access to Court Electronic Records reveals that plaintiff has filed seven other actions, with varying results, including (1) Lewis v. Martin et al., No. 1:94–CV6873– SHS (S.D.N.Y., filed Sept. 21, 1994) (settled); (2) Lewis v. DeShore et al., No. 1:94–CV7574–SHS (S.D.N.Y., filed Oct. 19, 1994) (settled); (3) Lewis v. Rodriguez, et al., No. 1:95–CV–3572–TPG (S.D.N.Y. filed May 18, 1995) (dismissed pursuant to 28 U.S.C. § 1915(d)); (4) Lewis v. Irvin, et al., No. 1:97–CV–0789–JTE (W.D.N.Y., filed Oct. 8 1997) (summary judgment granted to the defendants); (5) Lewis v. Johnson, et al., No. 9:08–CV–0482–ATB (N.D.N.Y. filed May 12, 2008) (partial verdict in favor of plaintiff after trial); (6) Lewis, et al. v. Patterson, et al., No. 1:08–CV–1130–LEK–DRH (N.D.N.Y. filed Oct. 20, 2008) (dismissed, and subsequent appeal dismissed); and (7) Lewis v. Murphy, et al., No. 9:12–CV–0268– NAM–CFH (N.D.N.Y., filed Feb. 12, 2012) (pending).

2    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see also Cooper v. Pate, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

3    Copies of all unreported decisions cited in this document have been appended for the convenience of the pro se plaintiff.

4    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. Northern Ins. Co. of New York v. Chatham Cnty., 547 U.S. 189, 193, 126 S.Ct. 1689, 164 L.Ed.2d 367 (2006).

5    By contrast, the Eleventh Amendment does not preclude lawsuits seeking to impose individual or personal liability on state officials under section 1983. Hafer v. Melo, 502 U.S. 21, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

6    While not considered in making a recommendation concerning defendants' dismissal motion, the medical records submitted by plaintiff in opposition to the pending motion substantiate defendants' contention that, as a result of the alleged assault, Lewis did not suffer a "sufficiently serious" medical condition. See Plaintiff's Response (Dkt. No. 46) at 40–42;see also Donhauser v. Goord, 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.) ("[I]n cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider matters outside of the complaint to the extent they 'are consistent with the allegations in the complaint.' "). Those records reveal that, as a result of defendant Sheridan's alleged actions, Lewis suffered from only moderate swelling to his cheek and eyelid, with no other evidence of injury or trauma. Plf.'s Response (Dkt. No. 46) at 41.They also note that, during the examination, plaintiff was argumentative and refused ice offered to address his swelling. Id. at 40.

7    See Anemone v. Metro. Transp. Auth., 419 F.Supp.2d 602, 603–04 (S.D.N.Y.2006) ("In the absence of controlling contrary authority, this court will continue to apply the intracorporate conspiracy doctrine to Section 1983 claims because the doctrine's logic is sound."); Jackson v. New York State, 381 F.Supp.2d 80, 90 (N.D.N.Y.2005) (Munson, J.); Kamara v. City of New York, No. 03–CV–0337, 2005 WL 3113423, at *7 (E.D.N.Y Nov. 21, 2005); Nat'l Congress for Puerto Rican Rights v. City of New York, 75 F.Supp.2d 154, 168–69 (S.D.N.Y.1999).

**8**    The amended complaint also alleges the failure on the part of other corrections officers to intervene and protect him from the assault. A corrections officer who did not participate in an assault upon an inmate, but was present while it occurred, may nonetheless bear responsibility for any resulting constitutional deprivation. *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). A law enforcement official is under an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers. *See Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be used."); *Anderson,* 17 F.3d at 557; *Mowry v. Noone,* No. 02–CV–6257, 2004 WL 2202645, at *4 (W.D.N.Y. Sept. 30, 2004). In order to establish liability on the part of a defendant under this theory, the plaintiff must adduce evidence establishing that (1) the officer had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene. *Henry v. Dinelle,* No. 9:10–CV–0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov.29, 2011) (Suddaby, J.) (citing *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008). Mere inattention or inadvertence, it should be noted, does not rise to a level of deliberate indifference sufficient to support liability for failure to intervene. *Cf., Schultz v. Amick,* 955 F.Supp. 1087, 1096 (N.D.Iowa 1997) (finding that "liability in a [section] 1983 'excessive force' action cannot be founded on mere negligence") (citing, *inter alia, Daniels v. Williams,* 474 U.S. 327, 335–36, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986)).

**9**    In their motion, defendants also address a potential due process claim arising from plaintiff's allegation that he was issued a false misbehavior report by corrections officials during the relevant time. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 12–13. As discussed above in connection with plaintiff's conspiracy claim against defendants Chapman and Imfeld, the mere allegation that a false misbehavior report has been filed against an inmate does not implicate constitutional conduct. *Boddie,* 105 F.3d at 862; *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *see also Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). In this instance, none of the allegations contained in plaintiff's complaint plausibly suggest that the alleged misbehavior report was issued to further a violation of plaintiff's constitutional rights. As a result, I recommend that this claim, to the extent it is asserted in plaintiff's complaint, be dismissed.

---

**End of Document**        © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 1772305
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Christopher McCLOUD, Plaintiff,

v.

C. TUREGLIO, Correctional Officer,
Greene Correctional Facility, Defendant.

No. 9:07-CV-0650.
|
April 15, 2008.

**Attorneys and Law Firms**

Christopher McCloud, Wallkill, NY, Pro Se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, Charles J. Quackenbush, Esq. Assistant Attorney
General, of Counsel, New York, NY, for Defendant.

### *ORDER*

NORMAN A. MORDUE, Chief Judge.

 **\*1** The above matter comes to me following a Report-
Recommendation by Magistrate Judge George H. Lowe, duly
filed on the 17th day of March 2008. Following ten days from
the service thereof, the Clerk has sent me the file, including
any and all objections filed by the parties herein.

After careful review of all of the papers herein, including
the Magistrate Judge's Report-Recommendation, and no
objections submitted thereto, it is

ORDERED, that:

1. The Report-Recommendation is hereby adopted in its
entirety.

2. The Defendant's motion to dismiss for failure to state a
claim (Dkt. No. 11) [1] is granted.

3. The Court certifies that any appeal of this order would not
be taken in good faith. See 28 U.S.C. § 1915(a)(3).

4. The Clerk of the Court shall serve a copy of this Order upon
all parties and the Magistrate Judge assigned to this case.

IT IS SO ORDERED.

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to
42 U.S.C. § 1983, has been referred to me for Report and
Recommendation by the Honorable Norman A. Mordue,
Chief United States District Judge, pursuant to 28 U.S.C.
§ 636(b) and Local Rule 72.3(c) of the Local Rules
of Practice for this Court. In his Complaint, Christopher
McCloud ("Plaintiff") alleges that, on May 31, 2007, at Green
Correctional Facility ("Green C.F."), Correctional Officer C.
Turriglio ("Defendant") physically assaulted and threatened
Plaintiff in violation of his constitutional rights. (Dkt. No. 1,
¶ 6 [Plf.'s Compl.].) Currently before the Court is Defendant's
motion to dismiss Plaintiff's Complaint for failure to
state a claim upon which relief might be granted, pursuant to
Fed.R.Civ.P. 12(b)(6). (Dkt. No. 11.) For the reasons set forth
below, I recommend that the Court grant Defendants' motion
to dismiss.

### I. BACKGROUND

**A. Summary of Plaintiff's Complaint**
On June 20, 2007, Plaintiff filed his Complaint in this action.
(Dkt. No. 1 [Plf.'s Compl.].) The factual allegations giving
rise to Plaintiff's (unspecified) constitutional claim against
Defendant Turriglio are as follows:

> On May 31, [20]07 I came to my
> program late[.] [My program] ... is
> Mess [H]all [during the] P.M. and late
> eve[ning shift]. [F]or coming in late
> I was placed in the pot room[.] [M]y
> regular job title is 2 ser[v]er on the
> C-side line[.][W]hile I was in the pot
> room I was making noise and Officer
> Tureglio [sic] came into the pot room
> and started banging pots and curs[ ]ing
> at me [,] telling me to shut up[.] [A]fter
> that he told me to stop eye balling him
> or he'll pull my eyes from my skull[.]
> [A]t 2:30 P.M. [it] is count time and

all inmates must report to the din[ ]ing
are[a] for count[.] [A]fter count he
called me to his office and took me to
the back of the Mess [H]all out of plain
view and placed me o[n] the wall and
started to slap me [o]n the back of the
head[.] [A]fter his as[sa]ult he placed
his pocket knife to his face and told
me he'll cut hi[m]self and say I did it
[in order to] let the other inmates know
he's not play[ing around].

 *2 (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) As a result of
this alleged misconduct, Plaintiff is requesting three forms
of relief: (1) a court order "secur[ing] [Plaintiff's] safety
and mak[ing] sure there will be [ ]no [ ] retaliation from
coworkers or staff"; (2) a court order directing that a search
be performed of Defendant's "file to see if [a]ny complaints
or grievances [have] been filed against him in the past
concerning brutality"; and (3) "$1,000,000 for mental anguish
and distress."(*Id.* at ¶¶ 7, 9.)

It is important to note that, in his form Complaint, Plaintiff
provided some information regarding his efforts to exhaust
his available administrative remedies before filing this action.
Specifically, in response to a question reading "Is there
a prisoner grievance procedure at this facility?"Plaintiff
checked the box reading "Yes." (*Id.* at ¶ 4[a].) In response to
a question reading "If your answer to 4(a) is YES, did you
present the facts relating to your complaint in this grievance
program?"Plaintiff checked the box reading "No." (*Id.* at ¶
4[b].) In response to a question reading "If your answer to 4(b)
is NO: Why did you choose to not present the facts relating to
your complaint in the prison's grievance program?"Plaintiff
stated, "Because I fear retaliation from officers and the officer
[I]'m fil[ ]ing against brag[s] about the grievance system not
working and he claims his uncle is a superintendent." (*Id.*)
Finally, in elaboration on this last assertion, Plaintiff stated
later on in the Complaint that "[t]he officer [I]'m fil[ ]ing [this
action] againsts uncle [sic] is a Superintendent here at Green
Corr." (*Id.* at ¶ 4[c].)

## B. Plaintiff's Abandoned Efforts to File an Amended Complaint and a Supplemental Complaint
On June 22, 2007, Plaintiff filed a letter to the Clerk of the
Court. (Dkt. No. 6.) The stated purpose of the letter was
to serve "as evidence in [Plaintiff's] case." (*Id.*) The letter
requested that his Complaint be amended to reflect that the
correct spelling of Defendant's name was "C. Turriglio," not

"Tureglio." (*Id.*) (The Court subsequently directed that the
docket be so amended.) In addition, the letter requested that
a claim be "add [ed] to [Plaintiff's complaint...." (*Id.*)The
factual allegation giving rise to this claim was as follows:

> On June 18, 2007 Officer Turriglio
> made intimidating comments [to]
> me [and] taunt[ed] me[,] saying
> [']McCloud knows I doesn't [sic]
> play[.] Let them know [.'] [By 'them'
> he was] talking about new Mess [H]all
> workers. I assumed he was back
> from vacation time or answering a
> grievance because he [was] brag[g]in'
> about laying on the beach when some
> inmates here at the facility filed a
> grievance against him.

(*Id.*)

On July 5, 2007, I directed the Clerk to strike Plaintiff's
submission from the docket for two reasons: (1) to the
extent that Plaintiff was requesting court permission for leave
to amend his Complaint, such permission was unnecessary
under Fed.R.Civ.P. 15(a) since Defendant had not yet filed a
responsive pleading; and (2) to the extent that Plaintiff was
requesting that his (one-page, single-spaced) letter serve as
his amended pleading, such an amendment was prohibited by
Local Rule 7.1(a), which required that amended pleadings be
complete pleadings that superseded the original pleadings in
all respects. (Dkt. No. 7.)

 *3 However, Plaintiff did not subsequently file an Amended
Complaint. Rather, on August 8, 2007, Plaintiff filed another
letter with the Court. (Dkt. No. 12.)The stated purpose of
the letter was to again request "the court[']s permission to
amend [Plaintiff's] complaint." (*Id.*) Although Plaintiff used
the word "amend," it was clear that what he was intending
was a "supplemental" complaint. *See*Fed.R.Civ.P. 15(d). This
is because the factual allegations he asserted in the letter arose
from incidents occurring *after* the filing of his Complaint
on June 20, 2007. (Dkt. No. 12.)In pertinent part, Plaintiff
alleged as follows:

> On July 14, [20]07 the very next day [after speaking to
> a prison psychologist and Iman about the anxiety I was
> suffering due to my experience with Officer Turriglio] I
> was approached by [O]fficer Turriglio once I arrived ... [at
> my] program. Officer Turriglio told me [']I want to talk to
> you.['] After program assi[ ]g[n]ments ... [were] completed

[O]fficer Turriglio pulled me to the side away from other inmate[ ] mess hall workers on the B side in the din[ ]ing area; [O]fficer Turriglio['s] exact words ... [were] 'I spok[e] to the Imam [about] what[']s going on[.] [Y]ou can talk to me man to man. I must admit I was nervous when [O]fficer Turriglio approached me. I started studdering [sic] when I spoke and made up a lie.... After that [O]fficer Turriglio walked away.

(*Id.* at 1.) In addition, Plaintiff attempted to assert a claim against various (unidentified) nonparties. In pertinent part, Plaintiff alleged as follows:

> On July 24, [20]07 I was called to the sergeant[']s office[ ] and forced to write a statement [about what had taken place between Plaintiff and Officer Turriglio] that is false.... When I arrived at the sergeant[']s office[,] three sergeants or lieutenants ... [were] there[.] [O]ne left and the other two stayed[.] [O]ne of them asked what happen[ed] between me and Turriglio. [The] [I]nspector [G]eneral's [O]ffice [had] informed them of what [had] happen[ed]. One of the sergeant[']s or lieutenants told me what to write. I tried to write what really took place between me and [O]fficer Turriglio. I was told 'T]hat [']s not good enough.['] I informed the sergeant or lieutenants that I[had] filed a federal complaint against [O]fficer Turriglio. I was still told what to write[.][W]hen I refused that[']s when threats ... [were] made and I was called a nigger. I was told [I']m not leaving the sergeant[']s office intell [sic] I give them what th[e]y want [sic].... I repeat [that] my statement was false and forced and I took no oath[;] it was given out of fear for my safety.... I can [']t identify [the two sergeants or lieutenants] by name because th[e]y were not wearing badges or name tags.... I [would] like to add [as defendants in my action] Green Cor. Fac.[,] D.O.C. as a while[,] [and the] New Yo[r]k State employees here at Greene [Correctional Facility] ....

**\*4** (*Id.* at 2.)

On August 13, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to supplement his Complaint, such permission was unnecessary under Fed.R.Civ.P. 15(a) since Defendant had not yet filed a responsive pleading; and (2) to the extent that Plaintiff was requesting that his (two-page, single-spaced) letter serve as his supplemental pleading, such a supplemental pleading was not in conformity with Fed.R.Civ.P. 10(b), Local Rule 10. 1, and Local Rule 7.1(a)(4) in that the document was not double spaced, the text was not broken down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs contained in the original pleading. (Dkt. No. 14.)

However, Plaintiff did not subsequently file a Supplemental Complaint. Rather, on August 29, 2007, Plaintiff filed another letter with the Court. (Dkt. No. 15.)In the letter, Plaintiff requested "the court[']s permission to make a formal complaint, 'not to amend my complaint.' " (*Id.* at 1.) The claim that Plaintiff wished to assert arose from events occurring on August 21, 2007, at Greene C.F., involving the delayed arrival of a piece of his legal mail.(*Id.* at 1-2.)More specifically, Plaintiff alleged that (1) at approximately 3:30 p.m. in Plaintiff's housing unit, Correctional Officer Forbes handed Plaintiff a piece of legal mail (a time-sensitive court order issued by the U.S. District Court for the Southern District of New York on May 31, 2007) unaccompanied by the addressed envelope in which it had arrived at the prison, and (2) that same day, while signing for legal mail (from the New York State Court of Claims) in front of Officer Turriglio at the law library, Plaintiff was led to "fear [that] Officer Turriglio has tampered with my mail ... [because he was] the officer who had access to all inmate[']s legal mail."(*Id.*) As a form of relief, Plaintiff requested that the Court "issue a[n] order to have the Defendant Officer Turriglio removed from the law library intell [sic] this matter is resolved."(*Id.* at 2.)

On September 6, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for the exact two reasons given in my Order of August 13, 2007 (i.e., that Plaintiff need not request permission to file a Supplemental Complaint since he had the right to do so without permission under the circumstances, and that his two-page, single-spaced letter could not serve as his supplemental pleading since the document was not double spaced, the text was not broken down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs contained in the original

pleading), as well as for the additional reason that Plaintiff had failed to indicate that he had served his submission on opposing counsel, as required by Local Rule 5.1(a). (Dkt. No. 16.)

However, again, Plaintiff did not subsequently file a Supplemental Complaint.

## C. Defendant's Motion to Dismiss and Plaintiff's Response

**\*5** On August 2, 2007, Defendant filed a motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 11.)Defendant's motion is premised on two independent grounds: (1) that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the PLRA since that statute requires that any inmate claiming damages related to mental and emotional distress, as is Plaintiff, must make a prior showing of physical injury, which Plaintiff has not made. (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].)

In response to Defendant's first argument (i.e., regarding Plaintiff's failure to exhaust his available administrative remedies), Plaintiff argues that (1) Defendant's own actions inhibited Plaintiff's exhaustion of administrative remedies so as to estop Defendant from asserting Plaintiff's failure to exhaust as a defense, and/or (2) under the circumstances, special circumstances existed justifying his failure to exhaust his administrative remedies. (Dkt. No. 18, Plf.'s Memo. of Law, "Point I.") In response to Defendant's second argument (i.e., regarding Plaintiff's failure to make a prior showing of physical injury), Plaintiff essentially argues that the "continuous injuries" inflicted on Plaintiff by Defendant constitute the showing of physical injury required by the PLRA. (Dkt. No. 18, Plf.'s Memo. of Law, "Point II.")

## II. RECENTLY CLARIFIED LEGAL STANDARD FOR MOTIONS TO DISMISS

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of

the pleading" under Rule 8(a)(2); [1] or (2) a challenge to the legal cognizability of the claim. [2]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [3] The purpose of this rule is to "facilitate a proper decision on the merits." [4] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [5]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [6] However, it is well established that even this liberal notice pleading standard "has its limits." [7] As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard. [8]

**\*6** Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."127 S.Ct. 1955, 1968-69 (2007). [9] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-74.More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."*Id.; see also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,'

which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*") [emphasis in original].

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [10] Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" [11] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra* degree of liberality. Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [12] In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [13]

However, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [14] Moreover, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [15]

**\*7** Finally, it should be remembered that Fed.R.Civ.P. 12(b) (6) motions to dismiss are limited to the facts alleged in the complaint and must be converted into a Fed.R.Civ.P. 56 motion for summary judgment if the court considers materials outside the pleadings. [16] However, of course, the court may, without converting the motion to dismiss into a motion for summary judgment, consider any documents provided by the plaintiff in opposition to defendants' motion to dismiss, *to the extent those documents are consistent with the allegations in the complaint.* [17]

## III. ANALYSIS

As stated above in Part I.C. of this Report-Recommendation, Defendant's motion is premised on two independent grounds: (1) that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the PLRA since that statute requires that any inmate claiming damages related to mental and emotional distress, as is Plaintiff, must make

a prior showing of physical injury, which Plaintiff has not made. (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].) Because I conclude that Defendant's lack-of-physical-injury argument for dismissal is somewhat stronger than is his failure-to-exhaust argument, I address the lack-of-physical-injury argument first.

### A. Requirement of Physical Injury

The Prison Litigation Reform Act of 1995 ("PLRA") provides, in pertinent part, as follows: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."42 U.S.C.1997e(e).

Here, Plaintiff alleges that, on May 31, 2007, Defendant (1) "bang[ed] pots" in the prison's "pot room," (2) "curs[ed]" at Plaintiff, (3) told Plaintiff "to shut up," (4) told Plaintiff to stop "eye balling him" or he would "pull [Plaintiff's] eyes from [his] skull, (5) "placed [Plaintiff] o[n] the wall and started to slap me [o]n the back of the head," and (6) "placed his pocket knife to his [own] face and told [Plaintiff] he'll cut hi[m]self and say I did it [in order to] let the other inmates know he's not play[ing around]." (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) As a result of this misconduct, Plaintiff alleges that he suffered "mental anguish and distress." (*Id.* at ¶¶ 7, 9.)

These factual allegations do not plausibly suggest that Plaintiff suffered any *physical injury* as a result of Defendant's alleged misconduct. Generally, some slaps on the back of the head do not constitute a cognizable *physical injury* under the PLRA. *See Jackson v. Johnson,* 04-CV-0110, 2005 U.S. Dist. LEXIS 21720, at \*18-19, 32 (M.D. Ga. June 17, 2005) (no physical injury under PLRA occurred where corrections officer, *inter alia,* "slapp[ed] [prisoner] in the face immediately [after shouting derogatory remark to him]"). This is especially true where, as here, there is no allegation that the slaps resulted in any observable or diagnosable medical condition requiring treatment by a medical care professional. *See Jarriett v. Wilson,* 162 Fed. App'x 394, 400-01 (6th Cir.2005) (mild swelling of left toe with some pain but no need for medical treatment was not cognizable physical injury under PLRA); *Dixon v. Toole,* 225 Fed. App'x 797, 799 (11th Cir.2007) ("mere bruising from the application of restraints [resulting in welts]" was not cognizable physical injury under PLRA); *Silgar v. Hightower,* 112 F.3d 191, 193-94 (5th Cir.1997) (prisoner's "sore, bruised ear lasting for three days" was not cognizable physical injury under PLRA); *cf. Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1998) (citing

*Silgar v. Hightower* for the point of law that the physical injury under the PLRA must be more than "de miminis"), *accord, Voorhees v. Goord,* 05-CV-1407, 2006 WL 1888638, at *10, n. 2 (S.D.N.Y. Feb. 24, 2006) (same), *Leon v. Johnson,* 96 F.Supp.2d 244, 248 (W.D.N.Y.2000) (same). [18]

**\*8** I note that *repeated punches* by correctional officials (while, of course, deplorable if unprovoked) have been specifically held by district courts in this Circuit to not constitute *physical injury* under the PLRA, where they resulted in only superficial and temporary irritations or abrasions. *See Espinal v. Goord,* 00-CV-2242, 2001 WL 476070, at *3-4, 12-13 (S.D.N.Y. May 7, 2001) ("red face" suffered by inmate after correctional officer "struck [him] a couple times," "punch[ing][him] in the head and face," did not constitute physical injury cognizable under PLRA); *Warren v. Westchester County Jail,* 106 F.Supp.2d 559, 563, 569 (S.D.N.Y.2000) (minor scratches suffered by jail inmate as a result of two to three punches by guard, including two scratches to inmate's face, and very small cut inside mouth, did not constitute physical injury cognizable under PLRA); *cf. Abreu v. Nicholls,* 04-CV-7778, 2007 WL 2111086, at *5 (S.D.N.Y. July 24, 2007) [collecting cases in which minor blows to inmates' faces and heads were not actionable under the Eighth Amendment]. [19]

Furthermore, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents assert any allegations plausibly suggesting that Plaintiff suffered any physical injury as a result of Defendant's alleged misconduct on May 31, 2007. (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf .'s Opposition Papers].)

Plaintiff alleges, in his letter to the Court of June 22, 2007, that, on June 18, 2007, Officer Turriglio made "intimidating comments" to Plaintiff, and "taunt[ed]" him, by saying to other Mess Hall workers, "McCloud knows I doesn't [sic] play."(Dkt. No. 6.) He alleges, in his letter to the Court of August 8, 2007, that, on July 14, 2007, during a conversation with Defendant, Plaintiff became "nervous" and "started studdering [sic] when [he] spoke" to Defendant. (Dkt. No. 12, at 1.) He alleges, in his letter to the Court of August 29, 2007, that, on August 21, 2007, he "fear[ed] [that] Officer Turriglio ha[d] tampered with [his] mail ... [because

Officer Turriglio was] the officer who had access to all inmate[']s legal mail." (Dkt. No. 15, at 1-2.)None of these three documents contains any allegation that Plaintiff suffered any physical injury at all. Furthermore, none of the three documents sufficiently connects any of the emotional distress described therein to the incident on May 31, 2007; rather, the documents all allege facts plausibly suggesting that the cause of the emotional distress described in the documents was contact between Plaintiff and Defendant occurring more than two weeks after May 31, 2007.

**\*9** The closest Plaintiff comes to alleging facts plausibly suggesting that he suffered a "physical injury" as a result of the incident on May 31, 2007, is when he alleges, in his letter to the Court of August 8, 2007, that, on July 14, 2007, a prison psychologist diagnosed Plaintiff with "anxiety." (Dkt. No. 12, at 1.) However, this allegation of "anxiety" is insufficient for two reasons. First, Plaintiff does not allege that the diagnosis of "anxiety" on July 14, 2007, was caused by the incident on May 31, 2007-as opposed to being caused by the incident on June 18, 2007 (which is not at issue in this action), or some sort of pre-existing emotional disorder. Second, and much more importantly, numerous courts have held-correctly, I believe-that physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not "physical injuries" for purposes of the PLRA. [20] This is especially true where, as here, the plaintiff does not allege an extensive list of physical manifestations but only one, i.e., "anxiety."

Finally, for reasons similar to those articulated above, I find that the affidavit submitted by Plaintiff in opposition to Defendant's motion alleges no facts plausibly suggesting that he suffered a *physical injury* as a result of the incident on May 31, 2007 (or even any physical injury as a result of subsequent incidents). (Dkt. No. 18, Plf.'s Affid., ¶¶ 4, 5[A]-[H].)

For all of these reasons, I recommend that the Court dismiss Plaintiff's Complaint for failing to allege facts plausibly suggesting that he experienced any *physical injury* as a result of Defendant's alleged misconduct.

**B. Exhaustion of Available Administrative Remedies**
In addition, the PLRA requires, in pertinent part, that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §

1983... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [21] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [22] The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program. [23]

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure. [24] *First,* an inmate must file a complaint with the facility's IGP clerk within fourteen (14) calendar days of the alleged occurrence. A representative of the facility's inmate grievance resolution committee ("IGRC") has seven working days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within seven (7) working days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. *Second,* a grievant may appeal the IGRC decision to the facility's superintendent within four (4) working days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within ten (10) working days of receipt of the grievant's appeal. *Third,* a grievant may appeal to the central office review committee ("CORC") within four (4) working days of receipt of the superintendent's written decision. CORC is to render a written decision within twenty (20) working days of receipt of the appeal.

**\*10** It is important to emphasize that any failure by the IGRC or the superintendent to adequately respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. [25] It is also important to emphasize that DOCS provides for an expedited procedure for the review of grievances alleging employee harassment. [26] While this procedure provides for review of the grievance directly by the facility superintendent, it still requires the filing of a grievance by the inmate. [27] Furthermore, the superintendent's decision must be appealed to CORC in order for the inmate to complete the grievance process. [28]

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [29] However, the Second

Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. [30] *First,* "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." [31] *Second,* if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." [32] *Third,* if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." [33]

Before I proceed to an analysis of the above-referenced three-part inquiry established by the Second Circuit, I should briefly discuss the appropriateness (or inappropriateness) of a failure-to-exhaust argument during a motion to dismiss for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Fed.R.Civ.P. 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12[b][1] ) established by the PLRA. *See, e.g., Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit ..., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *Snider v. Melindez,* 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available. Snider's answers [on a form complaint] cannot establish that.").

**\*11** Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. *See Jones v. Block*, 127 S.Ct. 910, 914-915, 918-923 (2007). A prisoner has no independent *duty* to plead facts plausibly suggesting that he exhausted his available administrative remedies, in order to state an actionable claim under 42 U.S.C. § 1983. *Block*, 127 S.Ct. at 919-21. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim."*Id.* at 921.If a prisoner *chooses* to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his Complaint may be dismissed for failure to state a claim. *Id.* at 920-21.Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a Fed.R.Civ.P. 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes. This is what has happened here, according to Defendants.

### 1. Availability of Administrative Remedies

With regard to the first inquiry (i.e., whether the administrative remedies not pursued by Plaintiff were in fact available to Plaintiff), I answer this question in the affirmative, based on even the most liberal of constructions of Plaintiff's Complaint. More specifically, I find that Plaintiff has not alleged any facts plausibly suggesting that administrative remedies were not available to prisoners at Greene C.F. during the time in question (i .e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). Indeed, Plaintiff quite expressly alleges that there was a prisoner grievance procedure at Greene C.F. (Dkt. No. 1, ¶ 4[a] [Plf.'s Compl.].)

Furthermore, even if (out of special solicitude to Plaintiff I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents assert any allegations plausibly suggesting that administrative remedies were not available to prisoners (and Plaintiff in particular) at Greene C.F. during the time in question. (*See*Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf .'s Letter filed 8/8/07];

Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

### 2. Estoppel

With regard to the second inquiry (i.e., whether Defendant's own actions inhibited Plaintiff's exhaustion of remedies so as to estop Defendant from raising Plaintiff's failure to exhaust as a defense), I answer this question in the negative, based on even the most liberal of constructions of Plaintiff's Complaint. In his Complaint, Plaintiff alleges no facts plausibly suggesting that Defendant took any actions whatsoever that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). Rather, Plaintiff alleges that he chose to not present the facts relating to his Complaint in the prison's grievance program "[b]ecause I fear retaliation from officers and the officer [I]'m fil [ ]ing against brag[s] about the grievance system not working and he claims his uncle is a superintendent [at Greene C.F.]." (*Id.*)Plaintiff's feeling of fear of "retaliation from [unidentified] officers" is completely unexplained and wholly conclusory. Furthermore, Defendant's action of "brag[ing] about the grievance system not working" and claiming that his uncle was a superintendent at Greene C.F. in no way constitutes an *action* by Defendant that inhibited Plaintiff from filing a grievance at Greene C.F. about the events giving rise to his claims in this action. At best, these statements by Defendant constituted an indication that Plaintiff might be *unsuccessful* in the grievance process before any appeal reached to the final level of review, by DOCS' Central Office Review Committee ("CORC"). Notifying an inmate of the *prospect* of *initial* failure (due to alleged antipathy for inmates or even sympathy for correctional officers, held by various *other* officials, participating in the grievance process) is hardly the sort of adverse *action* that is required to estop a correctional officer from asserting the legal defense of non-exhaustion.

**\*12** Nor do the other factual allegations of Plaintiff's Complaint plausibly suggest that Defendant took any actions that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. so as to estop Defendant from raising Plaintiff's failure to exhaust as a defense. Plaintiff alleges, on May 31, 2007, Defendant (1) told Plaintiff to "stop eye balling him" or he would "pull [Plaintiff's] eyes from [his] skull," (2) "slap[ped] [Plaintiff] on the side of his head," and (3) placed a pocket knife to

his own face and threatened to cut *his own face* and blame it on Plaintiff in order to let the other inmates know he was not "play[ing]" around. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) The problem with these allegations (at least from Plaintiff's perspective) is that they have absolutely nothing to do with the filing of any grievance, or even the making of any verbal complaint, by Plaintiff. Simply stated, while the alleged conduct is (of course) deplorable, it did not (as alleged) have either the design or effect of preventing Plaintiff from exhausting his administrative remedies.

Moreover, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question. (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

In particular, Plaintiff's letter to the Court of June 22, 2007, alleges that, on June 18, 2007, Defendant "intimidat[ed]" and "taunt[ed]" Plaintiff by saying to other inmates, "McCloud knows I [don't] play" around. (Dkt. No. 6.) This allegation fails for the same reason as the allegation about Defendant's earlier comments to Plaintiff fails: it had absolutely nothing to do with the filing of any grievance, or the making of any complaint, by Plaintiff. Moreover, Defendant's utterance of these words occurred on June 22, 2007, more than a *week* after Plaintiff had decided not to exhaust his available administrative remedies. (The deadline by which Plaintiff had to file a grievance regarding the incident on May 31, 2007, expired on or about June 14, 2007.) [34] Thus, it could not have possibly inhibited Plaintiff from exhausting his available administrative remedies.

Plaintiff's letter to the Court of August 8, 2007, alleges that, on July 14, 2007, Defendant said to Plaintiff, "I spok[e] to the Imam [about] what[']s going on[.] [Y]ou can talk to me man to man." (Dkt. No. 12.) An attempt to informally resolve a dispute (which is encouraged in DOCS' grievance process) is not an act inhibiting an inmate from exhausting his available administrative remedies. Plaintiff's letter of August 8, 2007, further alleges that on July 24, 2007, persons *other than Defendant* coerced Plaintiff into making a false statement about what had taken place between Plaintiff and Defendant.

(*Id.*) Plaintiff alleges no action by *Defendant* on July 24, 2007. Nor does Plaintiff explain how the false statement on *July* 14, 2007-whatever that false statement may have been-in any way caused his decision by *June* 14, 2007, not to exhaust his available administrative remedies.

**\*13** Plaintiff's letter to the Court of August 29, 2007, alleges that Plaintiff obtained reason to "fear" that Defendant was responsible for the delayed arrival of a piece of his legal mail on August 21, 2007. (Dkt. No. 15.)However, the sole reason for this fear was the (alleged) fact that Defendant "had access to all inmate['] s legal mail." (Dkt. No. 15.)Moreover, this fear occurred on August 21, 2007, which was more than *two months* after Plaintiff had decided to not exhaust his available administrative remedies by June 14, 2007.

In an affidavit submitted in opposition to Defendant's motion, Plaintiff swears that, before the incident on May 31, 2007, a fellow inmate, Saheithe Pigford, filed both a federal court action and a grievance against Officer Turriglio and was "beaten on several occasions, threaten[ed] and had his personal area searched during late evening or at predawn hours."(Dkt. No. 18, Plf.'s Affid., ¶ 4.) Plaintiff also swears that, on May 31, 2007, "Plaintiff was aware of what had happened to ... [Inmate] Shakeith Pigford as a result of filing his grievance [against Officer Turriglio]" since the "Pigford ... incident[ ] occurred prior to that of the plaintiffs' [sic]."(*Id.* at ¶ 5[A].)

For the sake of argument, I will assume that Plaintiff is swearing that Mr. Pigford was beaten *by Officer Turriglio* (since actions *by third-persons* can hardly estop Officer Turriglio from asserting Plaintiff's failure to exhaust as a legal defense). The problem with Plaintiff's sworn assertion is that it is so patently false as to be implausible (if not sanctionable). I take judicial notice of the fact that Inmate Pigford did not file the action to which Plaintiff is referring (which is the only federal court action that has been filed by Shakeith Pigford, according to the Federal Judiciary's PACER service) until nearly *a month after* the incident giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio,* 07-CV-0687, Complaint (N.D.N.Y. filed June 29, 2007, and dated June 25, 2007). Furthermore, I take judicial notice of the fact that the event giving rise to Inmate Pigford's action against Officer Turriglio did not occur until *three days after* the event giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio,* 07-CV-0687, Complaint, ¶ 6 (N.D.N.Y.). No mention is made in Inmate Pigford's Complaint as to when he filed his grievance and was

assaulted. *Id.* at ¶¶ 4(b), 6. However, given the clear factual inaccuracies of Plaintiff's other sworn statements regarding Inmate Pigford's experience, I find that Plaintiff's allegation that Inmate Pigford's experience dissuaded Plaintiff from filing a grievance in this action (from May 31, 2007, to June 14, 2007) to be wholly *implausible.*

Furthermore, because I find that the absence of this factual allegation (regarding Inmate Pigford's having been assaulted for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance) to be conspicuous, I find that this late-blossoming factual allegation to be *inconsistent* with the factual allegations of Plaintiff's Complaint. Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See, supra,* note 17 of this Report-Recommendation [citing cases].)

**\*14** In his affidavit, Plaintiff also swears that, before the incident on May 31, 2007, a fellow inmate, Mohammed Montalvo, filed a grievance against Officer Turriglio for "brandish[ing] a knife" and was "threaten[ed] thereafter with bodily harm until he agreed to sign-off [sic] on the grievance...." (Dkt. No. 18, Plf.'s Affid., ¶ 4.) For the sake of brevity, I will set aside the fact that Plaintiff does not assert precisely *when* Inmate Montalvo was so threatened. I will also set aside incredulity with which I view this late-blossoming, self-serving sworn statement, given Plaintiff's other misrepresentations to the Court-discussed above, and below. (*See, infra,* Part III.C. of this Report-Recommendation.) The more important fact is that Plaintiff does not allege that it was *Officer Turriglio* who threatened Inmate Montalvo with bodily harm. Again, actions *by third-persons* cannot estop Officer Turriglio from asserting Plaintiff's failure to exhaust as a legal defense. Moreover, because of the conspicuous absence of this factual allegation (regarding Inmate Montalvo's having been threatened for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance), I find that this factual allegation to be *inconsistent* with the factual allegations of Plaintiff's Complaint. Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See, supra,* note 17 of this Report-Recommendation [citing cases].)

Finally, in his affidavit, Plaintiff swears that he experienced several other adverse actions following the incident in

question on May 31, 2007. As an initial matter, the vast majority of this asserted misconduct was committed by correctional officers at Greene C.F. other than Defendant. More importantly, all of this misconduct occurred between July 24, 2007, and October 9, 2007-*well after* the expiration of the June 14, 2007, deadline by which he had to file a grievance regarding the incident giving rise to this action. (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[D]-[H].) Thus, it is impossible for this misconduct to have been the reason that Plaintiff chose not to file a grievance against Defendant between May 31, 2007, and June 14, 2007.

### 3. "Special Circumstances" Justifying Failure to Exhaust

With regard to the third inquiry (i.e., whether Plaintiff has plausibly alleged *special circumstances* justifying his failure to comply with the administrative procedural requirements), I answer this question in the negative, also based on even the most liberal of constructions of Plaintiff's Complaint. Plaintiff has not alleged that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to complain. Indeed, he has not even alleged, in his Complaint, that he *attempted* to complain, for example, by sending a letter of complaint directly to CORC, the DOCS' Commissioner, or a Deputy Commissioner (which prisoners occasionally do in analogous circumstances).

**\*15** Morever, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents allege facts plausibly suggesting the existence of any special circumstances justifying Plaintiff's failure to pursue (and exhaust) his administrative remedies during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf .'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].) I note that Plaintiff swears that, between June 3, 2007, and June 5, 2007, he wrote letters of complaint to both the New York State Inspector General's Office, and the Superintendent of Greene C.F., regarding the incident on May 31, 2007. (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[B]-[C].) However, Plaintiff does not explain why the "letter of complaint" that he sent to the

superintendent was not in the form of a grievance filed with the Greene C.F. IGRC, as required by 7 N.Y.C.R.R. § 701.2. Nor does Plaintiff explain why he failed to write to CORC, following whatever action the superintendent did or did not take with respect to the "letter of complaint." Nor does Plaintiff allege that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to file a formal grievance with the Greene C.F. IGRC, or at least write a letter of complaint to CORC.

For all of these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint for alleging facts plausibly suggesting that he failed to exhaust his available administrative remedies following the incident on May 31, 2007.

## C. Second Alternative Ground for Dismissal: Misrepresentations to Court

As stated above in this Report-Recommendation, Plaintiff has, in a sworn statement, falsely stated to the Court that, when the incident in question occurred on May 31, 2007, Plaintiff was aware that a fellow inmate (Shakeith Pigford) had been retaliated against for having filed a grievance against Officer Turiglio-a temporal impossibility since the event giving rise to Inmate Pigford's grievance had not even yet occurred as of May 31, 2007. (*See, supra,* Part III.B.2. of this Report-Recommendation.) This is not the only misrepresentation that Plaintiff has made to the Court.

As of the date he filed this action on June 16, 2007, Plaintiff had acquired two "strikes" for purposes of 28 U.S.C. § 1915's so-called "three strikes rule." *See McCloud v. D.O. C.,* 06-CV-14278 (S.D.N.Y.) (prisoner civil rights case filed by an inmate bearing New York City Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06); *McCloud v. D.O.C.,* 06-CV-14279 (S.D.N.Y.) (prisoner civil rights case by an inmate bearing New York City Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06).

**\*16** Plaintiff failed to disclose these two cases in Paragraph 5 of his sworn Complaint, where he checked the box labeled "Yes" next to the question "Have you ever filed any other lawsuits in any state or federal court relating to his imprisonment?" but then listed only one such lawsuit

(i.e., *McCloud v. Buckhalter,* 07-CV-4576 [S.D.N.Y.] ) in response to the form complaint's directive: "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page."(Dkt. No. 1, ¶ 5 [Plf.'s Compl.].)

While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a form complaint calling for such information, and *swore* to the truthfulness of his answer. There is simply no excuse for making such a sworn misrepresentation to the Court. District Judges from this Court have indicated a willingness to sanction *pro se* litigants for making such misrepresentations. *See, e.g., Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *13-14 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *6 & n. 32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases]. I have considered less drastic sanctions and have found them to be inadequate to curb this particular intentional and egregious litigation abuse.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte,* under Fed.R.Civ.P. 11, as a sanction for making multiple sworn misrepresentations to the Court.

## D. Third Alternative Ground for Dismissal: Unavailability of Relief Requested

As stated above in Part I.A. of this Report-Recommendation, as a result of the misconduct alleged in this action, Plaintiff is requesting three forms of relief: (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no[ ] retaliation from coworkers or staff"; (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality"; and (3) "$1,000,000 for mental anguish and distress."(Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

I find that the first two forms of relief are able to be, and should be, denied on the alternative ground that Plaintiff

has alleged no facts plausibly suggesting his entitlement to either form of relief. The first form of relief, which is essentially an injunction or temporary restraining order, must be supported by documents showing cause for the granting of the requested relief-which Plaintiff's Complaint does not do. See Fed.R.Civ.P. 65; N.D.N.Y. L.R. 65.1, 65.2, 7.1(f), 7.1(b) (2), 7.1(e). The second form of relief is merely a vehicle by which Plaintiff may embark on a fishing expedition to obtain facts that would enable him to assert an actionable legal claim against Defendant. Rule 8 of the Federal Rules of Civil Procedure-which requires that a plaintiff must assert enough facts in his complaint (and thus be in possession of such basic facts *before* he files the complaint) to give a defendant *fair notice* of the claim against him-does not permit such a "bootstrap" pleading. [35] Nor does Plaintiff even provide cause in support of what is essentially a request for discovery.

**\*17** For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte,* under 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b), [36] to the extent that the Complaint requests, as relief for the constitutional violation(s) alleged, (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no[ ] retaliation from coworkers or staff," and (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality."(Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

**ACCORDINGLY,** for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 42) be ***GRANTED;*** and it is further

**RECOMMENDED** that, when dismissing Plaintiff's Complaint (Dkt. No. 1), the Court state that the dismissal constitutes a "strike" for purposes of 28 U.S.C. § 1915(g); and it is further

**RECOMMENDED** that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec 'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1772305

Footnotes

1    The Magistrate Judge's Report-Recommendation inadvertently refers to Defendant's motion to dismiss as Dkt. No. 42 on page 35. The correct Dkt. No. is 11 as referred to throughout the Report-Recommendation.

1    See 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

2    See *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12 [b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although

Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b]6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-02 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

3   *Dura Pharm., Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 [1957] );*see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) (quoting *Conley,* 355 U.S. at 47).

4   *See Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48).

5   *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,*113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

6   *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (characterizing Fed.R.Civ.P. 8[a][2]'s pleading standard as "simplified").

7   *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

8   *See, e.g., Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a]2]'s liberal requirement), *accord, Dura Pharm.,* 125 S.Ct. at 1634-35, *Christopher v. Harbury,* 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-35 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-09 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a] [2] ). Although these decisions are not themselves precedential authority, *see*Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2).*See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

9   The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint....*Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."*Twombly,* 127 S.Ct. at 1969.

10  *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

11  *Hernandez,* 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

12  *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

13  *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also*Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

14  *Stinson v. Sheriff's Dep't of Sullivan County,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz,* 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins,* 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

15  *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

16  *See* Fed.R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

17  "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004).

18  *See also Harris v. Garner,* 190 F.3d 1279, 1287 (11th Cir.1999) (prisoner's claim that corrections officers forced him to "dry shave" during prison "shakedown," causing him to experience bleeding, irritation, and pain, alleged only *de minimis* injury and not the kind of physical injury cognizable under the PLRA) [citation omitted], *opinion reinstated in part on rehearing,* 216 F.3d 970 (11th Cir .2000); *Russell v. Johnson,* 07-CV-0008, 2008 WL 480020, at *2 (M.D.Ga. Feb. 19, 2008) (detainee's claim that, during a traffic stop, his foot was caught in police officer's automotive transmission, which resulted only in pain, was not cognizable physical injury under PLRA).

19  *See also Borroto v. McDonald,* 04-CV-0165, 2006 WL 2789152, at *1 (N.D.Fla. Sept. 26, 2006) (prisoner's claim that he was "repeatedly punched" by correctional officers, alone, did not allege the kind of *physical injury* that is cognizable under PLRA); *cf. Barker v. Lehrer,* 02-CV-0085, 2004 WL 292142, at *4-5 (N.D.Tex. Jan. 30, 2004) (fact that prisoner was "hit ... with a closed fist on the left side of his forehead," resulting in "a lump on his forehead after the assault," did not constitute *physical injury* under PLRA).

20  *See, e.g., Davis v. District of Columbia,* 158 F.3d 1342, 1349 (D.C.Cir.1998) (weight loss, appetite loss, and insomnia caused by emotional distress not "physical injury" for purposes of PLRA); *Cooksey v. Hennessey,* 07-CV-3829, 2007 WL 2790365, at *1 (N.D.Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].") [internal quotation marks]; *Johnson v. Georgia,* 06-CV-0099, 2007 WL 2684985, at *3 (M.D.Ga. Sept. 7, 2007) (stress and "a mental disorder" not "physical injury" for purposes of PLRA); *Brown v. Porter,* 01-CV-20957, 2006 WL 2092032, at *2 (N.D.Cal. July 26, 2006) (migraines, dry mouth, and loss of appetite caused by mental health problems not "physical injury" for purposes of PLRA); *Watkins v. Trinity Serv. Group, Inc.,* 05-CV-1142, 2006 WL 3408176, at *4 (M.D.Fla. Nov. 27, 2007) (diarrhea, vomiting, cramps, nausea, and headaches from eating spoiled food on one day not "physical injury" for purposes of PLRA); *Hill v. Williams,* 03-CV-0192, 2005 WL 5993338, at *4 (N.D.Fla. Oct. 14, 2005) (thirty-minute episode of hyperventilation, accompanied by shortness of breath, swollen tongue, pounding heart, and headache, not "physical injury" for purposes of PLRA); *Mitchell v. Newryder,* 245 F.Supp.2d 200, 203, 205 (D.Me.2003) ("permanent traumatization" not "physical injury" for purposes of PLRA); *Todd v. Graves,* 217 F.Supp.2d 958, 960 (S.D.Iowa 2002) (stress, hypertension, insomnia, dizziness, and loss of appetite not "physical injury" for purposes of PLRA); *Ashann-Ra v. Virginia,* 112 F.Supp.2d 559, 566 (W.D.Va.2000) (psychosomatic conditions, including sexual dysfunction, caused by emotional distress not "physical injury" for purposes of PLRA); *McGrath v. Johnson,* 67 F.Supp.2d 499, 508 (E.D.Pa.1999) (inflamation of pre-existing skin condition caused by emotional trauma not "physical injury" for purposes of PLRA); *Cain v. Virginia,* 982 F.Supp. 1132, 1135 & n. 3 (E.D.Va.1997) (depression and painful headaches caused by emotional distress not "physical injury" for purposes of PLRA); *Pinkston-Bey v. DeTella,* 96-CV-4823, 1997 WL 158343, at *3 (N.D.Ill. March 31, 1997) (severe headaches caused by emotional distress not "physical injury" for purposes of PLRA).

21  42 U.S.C. § 1997e.

22  *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

23  7 N.Y.C.R.R. § 701.7.

24  7 N.Y.C.R.R. § 701.7; *see also White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

25    7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g .,* *Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

26    7 N.Y.C.R.R. § 701.2.

27    *Id.*

28    *Id.*

29    *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

30    *See Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).

31    *Hemphill,* 380 F.3d at 686 (citation omitted).

32    *Id.* [citations omitted].

33    *Id.* [citations and internal quotations omitted].

34    As described above, an inmate must file a complaint with the facility's IGP clerk within 14 calendar days of the alleged occurrence.

35    *See Balliett v. Heydt,* 95-CV-5184, 1997 U.S. Dist. LEXIS 14913, at *3-9, 29 (E.D.Pa. Sept. 25, 1997) (referring to a similar attempt to state a claim-based on information generated in 1997, several years after the filing of the complaint in 1995-as a "means of circular pleading and bootstrapping"); *Hill v. Austin,* 89-CV-7790, 1997 U.S. Dist. LEXIS 11737, at *10 (N.D.Ill. Sept. 6, 1990) ("Hill cannot bootstrap his [untimely and therefore non-actionable] complaints dealing with the years 1976 through 1982 through his timely filing of the complaint on the 1985 involuntary detail."); *cf. City of New York v. Permanent Mission of India to the U.N.,* 446 F.3d 365, 377 (2d Cir.2006) (referring to an analogous attempt to state a claim as a "use [of] creative pleading to 'bootstrap' claims" that were otherwise unavailable to the plaintiff); *Scott v. Johnson,* 95-CV-0403, 1995 U.S. Dist. LEXIS 22445, at *6 (W.D.Mich. July 28, 1995) ("A prison inmate cannot bootstrap his complaints with conclusory allegations of retaliation ....") [citation omitted].

36    *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis]* at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted [,] ... or ... seeks monetary relief against a defendant who is immune from such relief"); 28 U.S.C. § 1915A(b) ("On review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted....").

---

**End of Document**            © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, David L. Cochran, Esq., of Counsel, New York,
NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* civil rights action, brought pursuant
to 42 U.S.C. § 1983, was referred to the Hon. George
H. Lowe, United States Magistrate Judge, for a Report-
Recommendation pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c).

The Report-Recommendation dated September 12, 2008
recommended that Defendants motion to dismiss be
granted in part and denied in part. Specifically, Judge
Lowe recommended that Plaintiff's Fourteenth Amendment
procedural due process claim against Defendant Varkiar
regarding his disciplinary hearing be dismissed if, within
thirty (30) days from the filing of this Final Order, Plaintiff
does not file an Amended Complaint that successfully states a
Fourteenth Amendment procedural due process claim. It was
recommended that Plaintiff's remaining claims be dismissed
with prejudice.

Plaintiff filed objections to the Report-Recommendation,
essentially raising the same arguments presented to the
Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a *"de novo*
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made."*See* 28 U.S.C. § 636(b)(1). After such a review, the
Court may "accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge.
The judge may also receive further evidence or recommit the
matter to the magistrate judge with instructions."*Id.*

Having reviewed the record *de novo* and having considered
the issues raised in the Plaintiff's objections, this Court
has determined to accept and adopt the recommendation of
Magistrate Judge Lowe for the reasons stated in the Report-
Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be
**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

**REPORT-RECOMMENDATION**

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant
to 42 U.S.C. § 1983, has been referred to me by the Honorable
Thomas J. McAvoy, Senior United States District Judge, for
Report and Recommendation with regard to any dispositive
motions filed, pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c). Generally, in his Complaint, Raymond Robles
("Plaintiff") alleges that three employees of the New York
State Department of Correctional Services ("DOCS"), as
well as DOCS itself, violated his rights under the Eighth
and Fourteenth Amendments when they (1) required him to
submit to a random urinalysis test when they knew he was
taking a medication that would prevent him from providing a
urine sample, and (2) charged, convicted, and punished him
with eighty-seven days in a Special Housing Unit for refusing
to provide a urine sample. (*See generally*Dkt. No. 1 [Plf.'s
Compl.].) Currently pending before the Court is Defendants'
motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.)For the reasons that

follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

 **\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.; [2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing; [3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes; [4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate; [5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff; [6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample; [7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937; [8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample; [9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample; [10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back"; [11]

 **\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.; [12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U."); [13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample; [14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

### B. Summary of Grounds in Support of Defendants' Motion

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal

requirement.[31] However, it is well established that even this liberal notice pleading standard "has its limits."[32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief,"Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."*Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ).[35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2).*Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality .[40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[43] Of course, an opportunity to amend is not required where "the problem

with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [49]

## III. ANALYSIS

### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any "*person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws .... " [51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

**\*7** For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally*Dkt. No 1, 17.)

### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2).*See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted. [55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [56] that simply cannot be overlooked.

### C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine

**Sample Given Their Knowledge of His Medications and/or Medical Condition**

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control."(Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.*Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety. [57] Here, Plaintiff himself alleges that the three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation. [58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.*Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." [59] Finally, because the defect with this detailed claim is substantive

rather than merely formal, I find that better pleading will not cure it. [60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

**D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report**

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."*Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ). [61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right."*Boddie,* 105 F.3d at 862;*accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at \*26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

**E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction**

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth

Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully).*See, supra,* Part I.A. of this Report-Recommendation.

*10 Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ....“ 42 U.S.C. § 1983 [emphasis added]. The term “the Constitution and laws” refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is “merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion,” which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way “issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint”-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be **GRANTED in part** and **DENIED in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary

hearing be **DISMISSED** if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be **DISMISSED** with prejudice, and without condition.

**ANY OBJECTIONS** to this Report-Recommendation **must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

---

Footnotes

30    *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at \*2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at \*1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1     *See, infra,* note 41 of this Report-Recommendation (citing cases).

2     (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

4     (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

8     (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9     (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10    (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11    (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

15    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17    (*Id.*)

18    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19    (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

21    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22    (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27    *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6),

that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12[b](6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,*331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28 *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29 *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48);*see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31 *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32 *2 Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

33 *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see*Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2).*See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

34 The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint....*Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."*Twombly,* 127 S.Ct. at 1969.

35 *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.")* [emphasis in original].

36　*See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

37　For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200.While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200.In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

38　*Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

39　*Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

40　*Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

41　"Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."*Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,*317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

42　*Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43　*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also*Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45    *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46    *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691] [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

48    *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50    *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

51    42 U.S.C. § 1983 [emphasis added].

52    *See, supra,* note 4 of this Report-Recommendation.

53    *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he

is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

54    *See, infra,* note 41 of this Report-Recommendation (citing cases).

55    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

56    As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57    *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58    In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59    *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60    *See, supra,* note 44 of this Report-Recommendation.

61    *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19,

2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62    *See, supra,* note 44 of this Report-Recommendation.

63    *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64    *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65    *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States.")* (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws'*of the United States.")* [emphasis added].

66    *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67    *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68    *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

69    *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

---

**End of Document**                              © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2834828
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Thomas M. ROLAND, III, Plaintiff,
v.
Frank WENZ, T.A.,[1] Defendant.

Civil Action No. 9:10–CV–0089 (GLS/DEP).
|
May 24, 2010.

**Attorneys and Law Firms**

Thomas M. Roland, III, Alden, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Roger W. Kinsey, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendant.

### REPORT AND RECOMMENDATION

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** Plaintiff Thomas M. Roland, III, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983 claiming deprivation of his civil rights. In his complaint, plaintiff maintains that during the period of his confinement he was assaulted by the defendant and forced to submit to a drug injection after informing medical personnel at the facility of his desire to ingest the medication being administered orally, claiming both a denial of due process as guaranteed by the Fourteenth Amendment and exposure to cruel and unusual punishment prohibited under the Eighth Amendment. As relief, plaintiff's complaint seeks compensatory and punitive damages.

In response to plaintiff's complaint the defendant has moved for its dismissal, alleging that plaintiff's claims are procedurally barred by virtue of his failure to exhaust available administrative remedies before commencing suit.[2] Defendant's motion is premised principally upon information set forth in plaintiff's complaint, in which Roland states that no internal grievance procedure exists at the facility where he was housed at the relevant times and that he therefore did not pursue a grievance with regard to the matters

set forth in his complaint, and invites the court to find, based upon a decision in a prior action issued in a distinctly different procedural setting, that a grievance procedure does in fact exist at the facility.

In opposition to defendant's motion, plaintiff has submitted additional materials in which he now claims that he did file a grievance complaining of the conduct forming the basis for his claims in this action. In light of plaintiff's additional submission and my reluctance to recommend dismissal of plaintiff's complaint on the scant and equivocal record now before the court, and particularly given the complexity of the exhaustion analysis in light of controlling authority in this circuit, I am recommending that defendant's motion be denied without prejudice.

### I. *BACKGROUND*[3]

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").*See generally* Complaint (Dkt. No. 1). While plaintiff is currently designated to the Wende Correctional Facility, located in Alden, New York, it appears that at the times relevant to his claims, though still serving a prison sentence, he was a patient at the Central New York Psychiatric Center ("CNYPC" or "Center"), a facility operated by the New York State Office of Mental Health and located in Marcy, New York. *Id.; see Decker v. Hogan,* No. 9:09–CV–0239, 2009 WL 3165830, at \* 1 (N.D.N.Y. Sept.28, 2009) (McAvoy, S.J.).[4]

On January 1, 2010, while confined at the Center, plaintiff became involved in an altercation with another patient. Complaint (Dkt. No. 1) § 6. Following the incident plaintiff was placed in a room and asked by defendant Wenz whether he preferred to take a psychotropic drug, which was going to be administered, orally or by injection. *Id.* After informing Wenz that he desired to take the medication orally, he was assaulted by the defendant in the presence of other workers at the facility, suffering injuries to his back, face, head, and right shoulder. *Id.* During the course of the incident the plaintiff was forcibly injected with the prescribed medication. *Id.*

### II. *PROCEDURAL HISTORY*

**\*2** Plaintiff commenced this action on January 26, 2010. Dkt. No. 1. In his complaint, which names only Frank Wenz as a defendant, plaintiff asserts two causes of action, one alleging deprivation of due process as guaranteed under

the Fourteenth Amendment based upon the forced injection of medicine over his objection, and the second asserting a claim of cruel and unusual punishment in violation of the Eighth Amendment stemming from defendant's alleged assault. *Id* ., § 7. As relief, plaintiff's complaint seeks recovery of compensatory damages of $100,000, and an additional award of punitive damages in a like sum. *Id.*

On March 25, 2010, defendant responded to plaintiff's complaint by moving for its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 13.In his motion, defendant asserts that plaintiff's claims in the action are barred by virtue of his failure to exhaust available administrative remedies at the CNYPC before commencing suit. *Id.* Plaintiff has since responded to defendant's motion through submission of an affirmation and attached exhibit. [5] Dkt. No. 17.

Defendant's motion, which is now fully briefed and ripe for determination, [6] has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).*See also*Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

#### A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.*Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, ——, (2007)).Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2).*Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."*Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face.*Ruotolo v. City of New York,*

514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974).

**\*3** In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,*540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b) (6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995)) (citations and quotations omitted).

#### B. *Exhaustion of Remedies*

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a); *see* *Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at \*5–6 (E.D.N.Y. Jan.31, 2007)."[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002) (citation omitted). Plaintiff's claims, which include denial of due process and excessive use of force, both qualify under the PLRA as the type of claims requiring exhaustion as a prerequisite to asserting them in the context of a federal civil rights action. [7] *Porter,* 534 U.S. at 532, 122 S.Ct. at 992;

*Davis v. Barrett,* 576 F.3d 129, 132 (2d Cir.2009) (quoting *Porter,* 534 U.S. at 532, 122 S.Ct. at 992).

In his motion, defendant points out that plaintiff's complaint asserts there is no grievance procedure at the Center and that he therefore did not pursue a grievance with regard to the claims now raised. Complaint (Dkt. No. 1) § 4. At this stage in the proceedings these are allegations that the court is ordinarily bound to accept as true. *Miller,* 321 F.3d at 300. Citing a recent decision from this district, defendant nonetheless asserts that the court should take judicial notice of the existence of a grievance procedure at the CNYPC and, based upon plaintiff's concession that he did not file a grievance in accordance with that procedure, should grant the desired dismissal. [8]

**\*4** Failure to exhaust is an affirmative defense which may or may not be asserted by a defendant. *Petty v. Goord,* No. 00 CIV 803, 2007 WL 724648, \*4 (S.D.N.Y. Mar.5, 2007) (citing *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004)) (other citations omitted). Accordingly, a prisoner is not obligated to plead facts plausibly suggesting that he exhausted his available administrative remedies to state a claim. *Wheeler v. Pataki,* 2009 WL 674152, at \*10 (N.D.N.Y. Mar.11, 2009) (McAvoy, S.J. & Lowe, M.J.) (citations omitted). An inmate may, however, gratuitously address exhaustion in a complaint in a such a way as to destine his or her claims to certain dismissal; "[i]f a prisoner chooses to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust available administrative remedies, then his complaint may be dismissed for failure to state a claim." *Id.*

Significantly, even if plaintiff failed to exhaust available administrative remedies before commencing suit, that failure might be excusable. In this circuit, district courts must engage in a three-part test to determine whether an inmate's failure to exhaust should be excused. *See Johnson v. Testiman,* 380 F.3d 691 (2d Cir.2004); *Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004); *Giano,* 380 F.3d 680; *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004); *see also Macias v. Zenk,* 495 F.3d 37 (2007). [9] Obviously at this formative stage in the proceedings, plaintiff has not been afforded an opportunity to offer evidence which could potentially support one or more of the recognized exceptions. This circumstance counsels against dismissal of plaintiff's complaint under Rule 12(b)(6).

It should be noted, moreover, that plaintiff commenced this action utilizing a form civil rights complaint. In response to questions regarding whether there is a *prison* grievance procedure at the facility and whether he presented facts relating to the complaint to the grievance program, plaintiff checked "no".*See* Complaint (Dkt. No. 1). Plaintiff similarly responded "no" to the question, "did you complain to *prison* authorities about the facts alleged in your complaint?"(Emphasis added). In opposition to defendant's motion to dismiss, however, plaintiff submitted a document labeled "objections", which although not sworn is construed by the court as an affirmation, stating that both he and Prisoner Legal Services, on his behalf, wrote letters complaining of the incident to Dr. Donald Sawyer, who never responded. Dkt. No. 17 at p. 2 (unnumbered). Plaintiff also attaches what appears to be one page of a copy of an undated letter addressed to Donald Sawyer, Ph. D. notifying him of the assault. *Id.* at p. 4 (unnumbered).

While at first blush plaintiff's recent submission in opposition to defendant's motion to dismiss may seem to contradict the statements made in his complaint, viewing these allegations in a light most favorable to him, it is possible that plaintiff understood the questions in the complaint to be directed solely to a prison facility, as opposed to the CNYPC. Put another way, plaintiff may have thought that the questions applied to the prison facility in which he was housed when he filed the complaint and not the CNYPC.

**\*5** Where a court is considering a motion to dismiss the claims of a *pro se* litigant, it is bound to construe the pleadings liberally, particularly when the plaintiff asserts a civil rights violation. *Rodney v. Goord,* No. 00 Civ. 3724, 2003 WL 21108353, at \* (S.D.N.Y. May 15, 2003) (citing *Weinstein v. Albright,* 261 F.3d 127, 132 (2d Cir.2001)) (reading a supplemental affidavit that apparently contradicted the allegations in his complaint regarding exhaustion to "raise the strongest argument that they suggest, as befits a motion to dismiss opposed by a *pro se* plaintiff."). Notwithstanding the apparent inconsistency between the statements made in plaintiff's complaint and those in his recent submission, liberally construing these documents and affording plaintiff the benefit of every favorable inference, I conclude that plaintiff's claim that he exhausted administrative remedies should be fully probed before his complaint can be dismissed. *See Gayle v. Benware,* No. 08 Civ. 8017, 2009 WL 2223910, at \* 5–6 (S.D.N.Y. Jul.27, 2009) (denying motion to dismiss based upon exhaustion where plaintiff conceded in his complaint that he had not filed a grievance but in response

to defendant's motion alleged for the first time that he had attempted to file a grievance, but staff prevented him from doing so).

#### IV. *SUMMARY AND CONCLUSION*

Defendant's motion, when considered solely in the context of plaintiff's complaint and accepting as true each of the allegations contained within it, would likely be subject to denial since plaintiff has asserted that there is no grievance procedure in place at the CNYPC and as a result he did not file and pursue a grievance regarding the matters giving rise to his complaint. Defendant, however, has asked the court to rely upon an earlier judicial decision and find the existence of a grievance procedure at the Center. Plaintiff, for his part, has submitted materials in response to defendant's motion which suggest that a grievance may in fact have been lodged.

In light of these equivocal circumstances and the available grounds which plaintiff could potentially assert for excusing a failure to exhaust, in my view the court is not well-positioned at this juncture to conclude that a failure to exhaust defense under the PLRA is "readily apparent" or "unambiguously established in the record" sufficiently to grant defendant's motion. *Torrence v. Pesanti,* 239 F.Supp.2d 230, 231–32 (D.Conn.2003). Instead, I find that the more prudent course of action would be to permit the issue to be fully explored through discovery and allow the defendant, if deemed appropriate, to raise the issue of exhaustion by way

of a motion for summary judgment, when it can be addressed upon a more robust and fully developed record. [10]

Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 13) be DENIED, without prejudice.

**\*6** NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk is respectfully requested to modify the official court records in this case to reflect the correct spelling of the defendant's name as Frank Wenz; and it is further

ORDERED THAT the clerk is also serve a copy of the Report and Recommendation upon the parties in accordance with this court's local rules.

#### All Citations

Not Reported in F.Supp.2d, 2010 WL 2834828

---

#### Footnotes

1    In plaintiff's complaint the defendant is identified as "Frank Wench". Defendant's moving papers, however, reflect that the correct spelling of the defendant's last name is "Wenz". The clerk will therefore respectfully be requested to adjust the official court records in this case to reflect the correct spelling of the defendant's name.

2    In his motion defendant also asserts that to the extent the plaintiff may be suing him for damages in his official capacity, such claims are subject to dismissal. Plaintiff's complaint, though perhaps modestly ambiguous in this regard, does not appear to suggest his intention to name Wenz as a defendant in his official capacity. Any such claim, of course, would be precluded under the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *see also Daisernia v. State of New York,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.).

3    In light of the present procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964).

4    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

5    In his opposition papers plaintiff has requested that the court order the production of documents, photographs, and information regarding the incident which forms the basis for his complaint. Dkt. No. 17.Because issue has not yet been joined, nor has the court issued its standard Rule 16 order in the action, that request is premature.

6    Despite having been afforded the opportunity to submit reply papers, defendant has not done so, and the deadline for filing a reply has now passed.

7    Although the plaintiff was, at all relevant times, an inmate in the primary care and custody of the DOCS, the conduct giving rise to his claims occurred at the CNYPC, a facility operated by the OMH. Based upon that circumstance, plaintiff could potentially argue that his claims are not subject to the PLRA because they do not involve "prison life". While the court's research has not identified a case in this circuit squarely addressing the issue, it appears that even though confined to CNYPC at the time in question, plaintiff would still qualify as a prisoner subject to the requirements of the PLRA. *See, e.g., Page v. Torrey,* 201 F.3d 1136, 1140 (9th Cir.2000) ("[W]e hold that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offense are 'prisoners' within the definition of 42 U.S.C. § 1997e...."); *Kalinowski v. Bond,* 358 F.3d 978 (7th Cir.) ("As used in this section, the term 'prisoner' means any person incarcerated or detained at any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, [or] probation ....") (quoting 28 U.S.C. § 1915(h)), *cert. denied,*542 U.S. 907, 124 S.Ct. 2843, 159 L.Ed.2d 273 (2004).

8    Judicial documents and official court records associated with those proceedings, as publically available documents, are properly considered by the court and entitled to judicial notice in connection with this lawsuit. *See*Federal Rules of Evidence 201 and 1005; *see also, Wilson v. Limited Brands, Inc.,* 08 CV 3431, 2009 WL 1069165 at *1 n. 1 (S.D.N.Y. April 17, 2009). Defendant is not requesting that the court take judicial notice of any publicly filed document, but instead urges the court to take judicial notice of facts established in *Brown v. Hogan,* No. 9:07–CV–842, 2009 WL 3756595, at *4 (N.D.N.Y. Nov.6, 2009) (Hurd, D.J. & DiBianco, M.J.) ("[P]laintiff is factually incorrect in his claim that CNYPC does not have a policy in place to address institutional complaints."). Under the circumstances of this case, however, even if it were appropriate to take judicial notice of the fact that CNYPC had a complaint procedure in place at the time of the incident in question, and I am not convinced that it is, as will be seen that fact is no longer pivotal to this motion.

9    Under the prescribed protocol, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise and preserve it or whether, through their own actions preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense.*Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686.

10    In papers received by the court plaintiff has intimated a desire to add additional defendants in the case, including Dr. Donald Sawyer, the Executive Director at the Center. Such applications are governed by Rules 15(a) and 21 of the Federal Rules of Civil Procedure. Since more than twenty-one days have elapsed since the filing of defendant's Rule 12(b) motion, and the joinder of parties is sought, plaintiff will be required to seek and obtain court leave in order to join additional parties. Plaintiff is advised that when any such application is made, he must include a proposed amended complaint which is fully integrated—that is, which names all of the defendants being sued and contains all of the claims which he intends to pursue, and is intended to supersede and take the place of the original complaint. *See* N.D.N.Y.L.R. 7.1(a)(4). In the event such a motion is granted the clerk will be directed to issue supplemental summonses for the new parties, and the matter can then be forwarded to the United States Marshal for service upon the newly-added defendants.

End of Document    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 624081
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason R. WHITE, Plaintiff,
v.
Brian FISCHER, Commissioner, Dept.
of Correctional Services; Theresa A.
Knapp–David, Director, Classification and
Movement; and R. Woods, Superintendent,
Upstate Correctional Facility, Defendants.

No. 9:09–CV–240.
|
Feb. 18, 2010.

**Attorneys and Law Firms**

Jason R. White, Elmira, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Brian J. O'Donnell, Esq., Asst. Attorney General,
of Counsel, Albany, NY, for Defendants.

### DECISION and ORDER

DAVID N. HURD, District Judge.

 *1 Plaintiff, Jason R. White, commenced this civil rights
action in February 2009, pursuant to 42 U.S.C. § 1983.
By Report–Recommendation dated January 25, 2009, the
Honorable David E. Peebles, United States Magistrate Judge,
recommended that defendant's motion to dismiss (Dkt. No.
10) be granted, and that plaintiff's complaint in this action
be dismissed without leave to replead. No objections to the
Report–Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of Magistrate Judge Peebles, the Report–
Recommendation is accepted and adopted in all respects.
See 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 10) is GRANTED;

2. Plaintiff's complaint in this action is DISMISSED without
leave to replead; and

3. The Clerk is directed to file judgment accordingly and close
the file.

IT IS SO ORDERED.

JASON R. WHITE,

Plaintiff,

-v.-

BRIAN FISCHER, THERESA A. KNAPP–DAVID, and R.
WOODS,

Defendants.

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Jason R. White, a New York State prison inmate who
is proceeding *pro se* and *in forma pauperis,* has commenced
this action pursuant to 42 U.S.C. § 1983, alleging deprivation
of his civil rights. In his complaint, plaintiff asserts that
his transfer into special housing unit ("SHU") disciplinary
confinement at the Upstate Correctional Facility, to serve
what was originally intended to be a three-month disciplinary
sentence of less restrictive keeplock confinement imposed
while at another facility, represented a deprivation of a liberty
interest without the requisite procedural due process. As relief
for the violation, plaintiff's complaint seeks an award of
compensatory damages in the amount of $25,000.

In response to plaintiff's complaint, defendants have moved
seeking its dismissal for failure to state a cause of action
upon which relief may be granted. In their motion, defendants
argue that plaintiff's allegations do not demonstrate the
existence of a meritorious due process claim since, at best,
it implicates a failure of prison officials to comply with
governing regulations regarding transfers into an SHU unit,
a matter not of constitutional concern, noting further that
plaintiff has no constitutional right to be designated to
a particular correctional facility or to a desired security
classification. Defendants also seek dismissal of plaintiff's
claims against them based upon lack of personal involvement,

and additionally assert their entitlement to qualified immunity from suit as a basis for their dismissal motion.

For the reasons set forth below, I find that White's complaint fails to set forth a plausible due process violation and that defendant Fischer is also entitled to dismissal of the claims against him based upon the lack of allegations showing of his personal involvement in the conduct allegedly giving rise to plaintiff's claims. I further recommend a finding that, even if plaintiff were able to plead a cognizable due process cause of action, defendants Knapp–David and Woods nonetheless should be granted qualified immunity from suit in this instance.

## I. *BACKGROUND* [1]

 **\*2** Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").*See generally* Complaint (Dkt. No. 1). At the times relevant to his claims plaintiff was designated first to the Auburn Correctional Facility ("Auburn"), located in Auburn, New York, and later to the Upstate Correctional Facility ("Upstate"), located in Malone, New York. *Id.,* § 6.

On March 28, 2007, while confined at Auburn, plaintiff was found guilty following a Tier I II disciplinary hearing of engaging in violent conduct and refusing a direct order, in violation of disciplinary rules 104.11 and 106.10, respectively. [2] *See* Plaintiff's Memorandum (Dkt. No. 1–1) Exh. A. [3] As a result of that determination plaintiff was sentenced to serve three months of keeplock confinement, with a corresponding loss of package, commissary, and telephone privileges. *See id.*

On April 11, 2007, while serving his keeplock sentence at Auburn, White was processed out of that facility and, following completion of an inter-prison transfer process which included a stop at another facility, was transferred into Upstate on or about April 13, 2007. Complaint (Dkt. No. 1) § 6. At Upstate, plaintiff was assigned to a two-person cell in the facility's SHU to serve the balance of his disciplinary confinement sentence. [4] *Id.*

On April 23, 2007 plaintiff filed a grievance with prison authorities, arguing that his transfer into the SHU at Upstate was not authorized by DOCS directives. Complaint (Dkt. No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. C. The grievance was denied by the facility's Inmate Grievance Review Committee ("IGRC"). Complaint (Dkt.

No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff appealed the denial to defendant Woods, the Superintendent at Upstate, who upheld the IGRC's unfavorable determination by decision dated May 15, 2007. Complaint (Dkt. No. 1) § 6 at p. 4B.Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff's further appeal of the matter to the DOCS Central Office Review Committee ("CORC") was likewise unsuccessful. *Id.* Exh. E.

Also on April 23, 2007, plaintiff sent a letter to the DOCS Commissioner Brian Fischer, complaining of the SHU designation. Plaintiff's Memorandum (Dkt. No. 1–1) Exh. F. That letter was referred by Commissioner Fischer to defendant Theresa A. Knapp–David, the DOCS Director of Classification and Movement. Complaint (Dkt. No. 1) § 6 at pp. 4B–4C.In response, defendant Knapp–David wrote to the plaintiff on May 7, 2007, advising that his SHU assignment was in accordance with established DOCS procedures. Plaintiff's Memorandum at (Dkt. No. 1.1) Exh. G.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on February 27, 2009, and was thereafter granted leave to proceed *in forma pauperis.*Dkt. Nos. 1, 4. Named as defendants in plaintiff's complaint are Commissioner Fischer; Director Knapp–David; and Upstate Superintendent R. Woods. Complaint (Dkt. No. 1) § 3. Plaintiff's complaint asserts a single cause of action for deprivation of procedural due process. *Id.,* § 7.

 **\*3** Following service, in lieu of answering plaintiff's complaint, defendants filed a motion to dismiss asserting a variety of grounds for the relief sought. Dkt. No. 10.In their motion defendants argue, *inter alia,* that plaintiff's complaint 1) does not implicate a cognizable due process violation, 2) plaintiff's complaint fails to establish their personal involvement in the deprivation alleged; and 3) in any event they are entitled to qualified immunity. [5] Plaintiff has since responded in opposition to defendants' motion, Dkt. No. 13, which is now fully briefed and ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).*See also*Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). *Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* –––U.S. ––––, 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570 127 S.Ct. at 1974). When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)).

## B. *Procedural Due Process*

**\*4** In their motion, defendants assert that because plaintiff's due process claim rests on alleged violations of DOCS regulations, his complaint in fact fails to assert a cognizable due process claim.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 260 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). Inmates' liberty interests may arise out of the Due Process Clause of the Fourteenth Amendment, or state statute or regulation. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)).

Recognizing that lawful imprisonment necessarily restricts the rights and privileges of inmates, the Supreme Court has narrowly circumscribed the scope of liberty interests arising out of the Due Process clause to protect only the most basic liberty interests of prisoners. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869 (1983). Accordingly, the Due Process Clause does not guard against every change in the conditions of confinement having a substantial adverse impact on inmates, but only those conditions or restraints that "exceed[ ] the sentence in ... an unexpected manner." *Arce,* 139 F.3d at 333 (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995)).

In this instance plaintiff does not claim that he was denied procedural due process in connection with the disciplinary hearing that led to the imposition of a three-month period of keeplock confinement as a sanction. Instead, he argues that his due process rights were abridged after the sanction was imposed when, in violation of DOCS Directive No. 4933, [6] he was transferred from keeplock confinement at Auburn to an SHU cell at Upstate, and as a result required to endure a more restrictive confinement. Unfortunately for plaintiff, neither the Due Process Clause nor state statute or regulation give rise to a liberty interest in these circumstances.

Preliminarily, it is well recognized that an inmate has no constitutional right to be incarcerated at a particular correctional facility, "and transfers among facilities do not need to be proceeded by any particular due process procedure." *Halloway v. Goord,* No. 9:03–CV01524, 2007 WL 2789499, at \* 5 (N.D.N.Y. Sept. 24, 2007) (Kahn, J. and Treece, J.) [7] (citing *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005)) (other citation omitted); *see also, Johnson v. Rowley,* 569 F.3d 40, 43 (2d Cir.2009) (per curiam); *Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998). As a result, the constitution did not present any impediment to plaintiff's transfer to Upstate.

**\*5** Additionally, it is equally well established, as defendants now argue, that state regulations, including DOCS Directives, do not ordinarily confer constitutional rights sufficient to give rise to a due process claim. *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citing *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)); *Cusamano v. Sobek,* 604 F.Supp.2d 416, 482 (N.D.N.Y.2009). A state can, however, by statute or regulation confer a liberty interest which cannot be abridged without due process. *Black v. Lansberg,* No. 9:06–CV–1243, 2009 WL 3181111, at \*3 (Sept. 29, 2009) (Suddaby, J., adopting Report and Recommendation of Lowe, M.J.). Nonetheless, contrary to plaintiff's contention, DOCS Directive No. 4933 does not give rise to a cognizable liberty interest.

It should be noted that on at least four separate occasions, addressing the same issues raised by the plaintiff in this case, this court has held that an inmate's transfer from keeplock to SHU after being sentenced to serve time in keeplock does not implicate a cognizable liberty interest. *McEachin v. Goord,* No. 9:06–CV–1192, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J. and Treece, M.J.) (dismissing complaint alleging that plaintiff was unlawfully transferred from keeplock to SHU while serving disciplinary sentence); *Halloway,* 2007 WL 2789499 (granting summary judgment dismissing claim that plaintiff should have received hearing before transfer to Upstate after sentenced to keeplock at Elmira Correctional Facility); *Carlisle v. Goord,* No. 9:03–CV–296, 2007 WL 2769566, at \*2 n. 1 (N.D.N.Y. Sept. 21, 2007) (Scullin, S.J., adopting Report and Recommendation of Lowe, M.J.) (granting summary judgment finding that "an inmate has no liberty interest in not having his sentence of keeplock confinement at one prison converted to a sentence of SHU confinement at another facility without receiving a hearing regarding the conversion."); and, *Chavis v. Kienert,* 9:03–CV–0039, 2005 WL 2452150, at \*9–10 (N.D.N.Y. Sept. 30, 2005) (Scullin, C.J.) (finding that transfer from keeplock at Coxsackie Correctional Facility to SHU at Upstate did not implicate a liberty interest).*See also, Holmes v. Grant,* No. 03–Civ. 3426, 2006 WL 851753, at \*18–19 (S.D.N.Y. mar. 31, 2006 (dismissing claim plaintiff's claim that disciplinary sentence was improperly converted from keeplock sentence to SHU). These decisions are premised upon the court's conclusion that a transfer from keeplock in one facility to SHU in another does not implicate a constitutionally protected liberty interest and that "New York has not created, by regulation or statute, any liberty interest in remaining in one particular prison[,]" noting that "the DOCS ... possesses sole discretion to determine 'where

a [state] inmate will be housed.' " *Halloway,* 2007 WL 2789499, at \*5 (quoting *Grullon v. Reid,* No. 97 CIV. 7616, 1999 WL 436457, at \*10 (S.D.N.Y. Jun. 24, 1999)) (other citations omitted). These cases are indistinguishable from the case presently before the court.

**\*6** Moreover, contrary to the interpretation offered by the plaintiff, the court has read section 301.6 of DOCS Directive No. 4933 as "explicitly permitt[ing] keeplock sentences to be served in SHU and subject to the same restrictions and amenities ...." *McEachin,* 2008 WL 1788440, at \*4;*see also, Halloway,* 2007 WL 278499, at \* 5 ("[N]ot only do New York State Regulations permit keeplock sentences to be served in SHU, but further contemplate that assignments to SHU will be subject to the same ... limitations.") and *Holmes,* 2006 WL 851753, at \* 19 ("Section 301.6... relat[es] to keeplock admissions and authorizes placement of inmates in SHU 'at a medium or minimum security correctional facility or *Upstate Correctional Facility*... for confinement pursuant to disposition of a disciplinary (Tier II) or superintendent's (Tier II hearing.' ") (emphasis in original).

In view of the foregoing, it is clear that plaintiff's transfer from Auburn, where he was keeplocked, to SHU confinement at Upstate does not implicate a liberty interest arising out of either Due Process Clause, or state statute or regulation. According to plaintiff's complaint, he was sentenced to keeplock after a Tier III disciplinary hearing; he does not allege that he was denied due process in connection with that hearing. The Tier II I hearing that he was provided was all that was required by the constitution before he was sentenced to disciplinary confinement. *Holmes,* 2006 WL 851753, at \*19. Plaintiff was entitled to no further procedure at the time of transfer to Upstate, and therefore cannot show that he was deprived of a protected liberty interest without due process of law. [8] *Id.* Accordingly, I recommend that plaintiff's complaint be dismissed for failure to state a cause of action.

### C. *Personal Involvement*

In their motion, defendants also challenge the sufficiency of plaintiff's allegations regarding their personal involvement in the constitutional deprivations alleged. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,*434 U.S. 1087, 98 S.Ct. 1282

(1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

Two of the three defendants, Brian Fischer and Robert Woods, appear to be named as defendants in their supervisory capacities, based solely upon their positions as the DOCS Commissioner and the Superintendent at Upstate, respectively. As supervisors, neither of those individuals can be liable for damages under section 1983 solely by virtue of their respective positions as supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v.. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds, sub nom., Ashcroft v. Iqbal,* ——U.S. ——, 129 S.Ct. 1937.; *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

### 1. *Commissioner Fischer*

**\*7** Aside from allegations centering upon his role as the DOCS Commissioner, which are clearly insufficient in and of themselves to establish his liability, plaintiff's claims against defendant Fischer appear to revolve around the letter written by him to the Commissioner on or about April 23, 2007, complaining of his SHU confinement at Upstate. That letter, it appears from the limited materials now before the court, was referred to defendant Knapp–David for

response. It is well established that when the Commissioner receives a letter and forwards it on to another individual for investigation and a response, his or her involvement in the constitutional violation cannot be predicated solely upon those circumstances. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Rivera v. Fischer,* No. 08–CV–6505L, 2009 WL 2981876, at \*2 (W.D.N.Y. Sept. 18, 2009). I therefore recommend dismissal of plaintiff's claims against Commissioner Fischer on the basis of lack of his personal involvement.

### 2. *Superintendent Woods*

Plaintiff's claims against Superintendent Woods stand on slightly different footing. It is alleged that Superintendent Woods processed and affirmed the determination of the Upstate IGRC denying plaintiff's grievance regarding the relevant occurrences. His review of plaintiff's grievance arguably placed Superintendent Woods on notice of a constitutional violation, which was ongoing, at a time when he was potentially positioned to end the violation. On that basis I conclude that plaintiff has sufficiently alleged Superintendent Woods' personal involvement in the violation alleged to withstand defendants' dismissal motion. *See Charles v. New York State Dept. of Corr. Services,* No. 9:07–CV–1274, 2009 WL 890548, at \*5–9 (N.D.N.Y. Mar. 21, 2009) (Hurd, J. and DiBianco, M.J.).

### 3. *Director Knapp–David*

Plaintiff's complaint alleges that in her position as the DOCS Director of Classification and Movement, defendant Knapp–David would have reviewed and approved his transfer from Auburn into Upstate. That allegation is buttressed by both her position with the DOCS and the fact that plaintiff's letter regarding the matter was referred to defendant Knapp–David for response explaining why the transfer was proper under DOCS regulations. On this basis, I conclude that plaintiff has stated a plausible claim against defendant Knapp–David and her personal involvement in the constitutional deprivations alleged.

### D. *Qualified Immunity*

In their motion, defendants also assert entitlement to qualified immunity from suit. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,*

457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982) (citations omitted). "In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information the officer[ ] possessed.'" *Kelsey v. County of Schoharie,* 567 F.3d 54, 61 (2d Cir.2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. ——, 129 S.Ct. 808, 815 (2009).

**\*8** In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims." *Pearson,* 555 U.S. ——, 129 S.Ct. at 816. The first step required the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right,[9] *Kelsey,* 567 F.3d at 61, "the second step being whether the right is clearly established", *Okin v. Village of Cornwall–On–Hudson Police Dept.,* 577 F.3d 415, 430 n. 9 (citing *Saucier* ).[10] Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently concluded in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."[11] *Pearson,* 555 U.S. ——, 129 S.Ct. at 818, 821. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so." *Kelsey,* 567 F.3d at 61 (citing *Pearson,* 129 S.Ct. at 821) (emphasis in original).

For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs ... should be addressed in light of the circumstances in the particular case at hand.' " *Okin,* 577 F.3d 430 n. 9 (quoting *Pearson* ). "The [*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts

do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all .' " *Kelsey,* 567 F.3d at 61 (quoting *Pearson,* 129 S.Ct. at 818).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156 (citation omitted). When deciding whether a right was clearly established at the relevant time, a court should consider

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*9** *Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994) (quoting *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993)). The objective reasonableness test will be met, and qualified immunity enjoyed, where government officers of reasonable competence could disagree as to whether by his or her alleged conduct the defendant would be violating the plaintiff's rights. *Okin,* 577 F.3d at 433 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)). "If, on the other hand, no officer of reasonable competence would conclude that the conduct in question is lawful, there is no immunity." *Okin,* 577 F.3d at 433 (citing *Lennon v.. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995)).

Applying the *Saucier* two-step inquiry here, I have already determined that plaintiff has failed to state a plausible constitutional violation. Moreover, even if plaintiff were able to distinguish the existing precedent in this district and allege a protected liberty interest that required that plaintiff be provided with additional due process before his transfer to Upstate, I conclude that any such right was far from a clearly established and that a reasonable person in the circumstances of defendant Woods and defendant Knapp–David would not have appreciated that the transfer of plaintiff into SHU confinement at Upstate represented a potential deprivation of plaintiff's procedural due process rights beyond those addressed by the hearing officer. Accordingly, as

an additional basis for dismissal, I recommend that both defendants Woods and Knapp–David be granted qualified immunity from suit.

## IV. *SUMMARY AND RECOMMENDATION*

At the heart of plaintiff's complaint in this action is his contention that his due process rights and DOCS regulations were violated when he was transferred from keeplock confinement at Auburn into an SHU cell at Upstate. Since such a claim, is well established in this district, is not constitutionally cognizable, White has therefore failed to state a claim upon which relief may be granted. While plaintiff has failed to establish personal involvement on the part of Commissioner Fischer in an alleged deprivation and the claims against him should be dismissed on this additional basis, plaintiff has sufficiently alleged personal involvement on the part of defendant Knapp–David and R. Woods. Nonetheless, I find that those two defendants are entitled to qualified immunity from suit, providing an additional basis for dismissal of plaintiff's claims against them. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 10) be GRANTED, and that plaintiff's complaint in this action be DISMISSED, without leave to replead; and it is further

ORDERED that pending a final determination on defendants' dismissal motion, discovery in this action be and hereby is STAYED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

 **\*10** It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

## All Citations

Not Reported in F.Supp.2d, 2010 WL 624081

Footnotes

1    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964). I have also considered the exhibits attached to plaintiff's memorandum, which accompanied his complaint, to the extent that they are consistent with the allegations of his complaint. *See Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.).

2    The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,*525 U.S. 907, 119 S.Ct. 246 (1998).

3    Plaintiff filed what he labeled as a "memorandum of law", with exhibits attached, in conjunction with his complaint. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his ... memorandum."*Rivera v. Selsky,* No. 9:05–CV–0967, 2007 WL 956998, at \*1 n. 2 (N.D.N.Y. Jan. 5, 2007) (quoting *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, at \*1 n. 2 (S.D.N.Y. Nov. 17, 1997)).

4    Upstate is a maximum security prison comprised exclusively of SHU cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. *See Samuels v. Selsky,* No. 01 CIV. 8235, 2002 WL 31040370, at \*4 n. 11 (S.D.N.Y. Sept. 12, 2002).

5    Defendant's also seek a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery in this matter pending final determination of their dismissal motion. Discerning no basis to conclude that plaintiff would be unduly prejudiced by such a stay, that application will be granted.

6    Section 301.6(a) of DOCS Directive No. 4933 permits an inmate confined in a medium or minimum security facility, or at Upstate, to be admitted into an SHU for various reasons, which can include confinement pursuant to a Tier II or III hearing

disposition. Plaintiff asserts that because he was transferred from Auburn, a maximum security facility, into an SHU unit, that section does not apply. Interestingly, a prior version of DOCS Directive No. 4933 provided, in relevant part, that

[a]n inmate who is assigned to keeplock status and who is transferred to a maximum security facility shall not be assigned to the special housing unit at the receiving facility. Such inmate shall be assigned to keeplock within general population and shall have the same rights and responsibilities as other keeplock inmate in that facility.

*Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998) (quoting prior version of 7 NYCRR § 301.6(h)).

7    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Appended decisions deleted for Westlaw purposes.]

8    Plaintiff alleges a litany of differences between the conditions experienced while in keeplock at Auburn and those in SHU at Upstate asserting, for example, that with regard to visits, he was required to travel to and from them in handcuffs, had to remain in handcuffs if he needed to use the restroom, and was not permitted to take photographs, and also that he did not have the same opportunities for social interaction with other prisoners and had to sleep with a light on. Plaintiff's Memorandum (Dkt.1–1) at pp. 11–12.As a matter of law, these alleged conditions can hardly be characterized as "exceed[ing] his sentence in an unexpected manner" or as imposing an "atypical and substantial hardship upon the [plaintiff] in relation to the ordinary incidents of prison life".*Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. "[T]act that 'life in one prison is much more disagreeable than another does not itself signify that a Fourteenth Amendment liberty interest is implicated...."*Halloway,* 2007 WL 2789499, at * 7 (quoting *Meachum v. Fano,* 427 U.S. 215, 225 (1976). Moreover, even if a liberty interest were alleged, plaintiff was afforded all the process he was due, by way of a disciplinary proceeding, before the alleged deprivation. *Carlisle,* 2007 WL 2769566, at * 3.

9    If no constitutional right would have been violated were the allegations established, no further inquiry regarding qualified immunity is necessary. *Kelsey,* 567 F.3d at 61 (quoting *Saucier* ).

10   In *Okin,* the Second Circuit clarified that the " 'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful."*Okin,* 577 F.3d at 433 n. 11 (citation omitted).

11   Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability ...", *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806 (1985), the Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."*Pearson,* —— U.S. ——, 129 S.Ct. at 815 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 524 (1991) (per curiam)).

---

**End of Document**                                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.